**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMANDA ADAMKAVICIUS, JOYCE MEHRER,
KEVIN MEHRER, ALAN MEHRER, SEAN DURGIN,
PAULITA PEÑA, WENDY MAHOLIC, ANDREW
MAHOLIC, MICHAEL MAHOLIC, NICHOLLE
MCLOCHLIN, DARBY MCLOCHLIN, CONNOR
MCLOCHLIN, KENNEDY MCLOCHLIN,
BETHANEY BEACH, KATRINA NAJERA, KAYLA
LANE, ALLYSON RAFFERTY, DAVID
HIERHOLZER, JAMES WHITE SR., HUGH
HVOLBOLL, SHELDON PAUL, LISA DEGHAND,
EMMA DEGHAND, JAMI DEGHAND, THERESA
TETUAN, SANDRA SHORT, CHERYL DEUSER,
RAYMOND DEGHAND JR., CRAIG THURBER,
CATHY CHAY, WENDY SLOAN, EMORY SLOAN,
JAMES SLOAN, VIRGINIA JONES, MARY
HARRISON, JOSHUA HARRISON, JENNIFER
ALLGAIER, NATALIE ALLGAIER, GINA
ALLGAIER, JOANNA ALLGAIER, TORRIN
JOHNSON, JOHN HALL, EDWARD GATHERCOLE,
NOAH GARCIA, BROOKE TONER, REBECCA
TONER, FRANCIS TONER III, AMANDA TONER,
SHARON TONER, JOHN TONER, SPRING LEE,
REBECCA HARIO, JAMES HARIO, MARK HARIO,
JESSICA MCCLOSKEY, K.M. by and through her next
friend Jessica McCloskey, C.M. by and through his next
friend Jessica McCloskey, CHERYL TIPTON,
RUSSELL HERCULES SR., ANN JONES,
CHRISTOPHER SMITH, LOGAN SMITH, DORA
ARNOLD, AARON HAND, JEANNE BEACHNAW,
JAMIE BOURQUIN, CRYSTAL TURBETT, HELEN
BOUDREAU, MARLAYNA CURRIER, DILAN
CURRIER, KEVIN BOUDREAU SR., KEVIN
BOUDREAU JR., EMILY BIRCHFIELD, WILLIAM
STULTZ JR., DELIA GELIG, TIM GELIG,
JACKLYNN MARTINEZ, WILLIAM ROSS III,
KRYSTAL BRUNKHORST, K.B. by and through her
next friend Krystal Brunkhorst, STEVEN HALL,
ROBYNN HARRISON, TRISTYN HARRIS, EILEEN
DALY, AMY KUBIK, GAYLE PIEPER, ELAINE
SCHMIEDESHOFF, CORY BARTON, ROY
SCHMIEDESHOFF, BRYAN SCHMIEDESHOFF,
TRISHA STOCKHOFF, KEVIN RANKEL, DONALD
STOCKHOFF JR., NATHAN STOCKHOFF, LOGAN

Case No. _____

REDDING, LINDSAY PLUNK, K.P. by and through
his next friend Lindsay Plunk, NOAH FISHER,
VALERIE SILLECK, JAMES COCHRAN, ALICIA
CASTILLO, RICHARD KRAMER, JENNIFER
CAMPBELL, C.C. by and through his next friend
Jennifer Campbell, SAMANTHA HARKINS,
TIFFANY PARKER, JERALD BROST, CHERYL
NANCE, KATHRYN MARTIN, KAYLA WALLACE,
RICHARD NANCE JR., LIANA BROEHM,
NORMAN WARRINER III, MONICA SMITH,
DANNY JARVIS, EDWARD JARVIS, WILMA
JAMES, CHELSEA MCLAIN, PATTI SHANNON,
BYRAM STAGGS, EMILY STAGGS, SARAH
STAGGS, BOBBY STAGGS, DONALD KING JR.,
AMY MOORE, PATRICK MOORE, PATRICK
MOORE II, STEVEN SALMON SR., STEVEN
SALMON JR., AISHA DEYOUNG, M.D. by and
through her next friend Aisha DeYoung, KATHERINE
MAYS, K.M. by and through her next friend Katherine
Mays, C.M. by and through her next friend Katherine
Mays, GLORIA MICKLER, TRINA MOORE,
DOMINIC ANDERSON, JANIS ANDERSON,
GLORIA A. MICKLER, DANIELLE MICKLER,
JACQUELINE GIRE, NICHOLAS GIRE, R.G. by and
through her next friend Jacqueline Gire, PAUL GIRE
III, CAROLANNE ROWE, DONNA WALKER,
MATTHEW WALKER, KENNETH NEKOTANI,
ANDREA KALBRUNNER, MELISSA JARBOE,
ANDREW JARBOE, SARAH ADKINS, GARRHETT
ADKINS, G.A. by and through his next friend Sarah
Adkins, GABRIELLA ADKINS, MAKAYLA
ADKINS, MACKENZIE ADKINS, AMANDA
JUSTICE-PETERSEN, C.J. by and through her next
friend Amanda Justice-Petersen, LINDA AMBARD,
TIMOTHY AMBARD, ALEXANDER AMBARD,
JOSHUA SHORT, PATRICK SHORT, EMILY
SHORT, ROBERT KIRTON, VICKI DRYER, JOHN
JOHNSON, NICKOLLE JOHNSON, JAMES
HARVEY, TINA BANCES, PAUL BERNIER,
CHRISTOPHER BERNIER, BRADLEY BERNIER,
ISMAEL NUNCIO, TERRA PETERSON, D.P. by and
through his next friend Terra Peterson, GARTH
PETERSON, L.B. by and through his next friend Kara
Dulhanty, BRIANNA BENSON, ELIZABETH
STRANGE, KAREN VAUGHN, BILLY VAUGHN
JR., TARA BALDWIN, ANA POOLER, KATIE

TOBIN, LEE ANN SMITH, NICHOLAS TOBIN JR.,
PAUL DIETRICH, DANIEL QUINTANA, DONALD
BLEYL, ANTHONY TRIMBLE, DEBORAH
TRIMBLE, MELISSA NOWLAND, VICTORIA
LEWIS, JERRY NOWLAND SR., DIANA BRISEÑO,
ISAURA DARROUGH, JUSTIN DARROUGH,
JARED DARROUGH, JULIANNA DARROUGH,
JENNA FALBE, VALERIE DIENER, CARLOS
VAQUERANO, TRACI WISE, ALIESHA GLIDDEN,
JACQUELINE CARSON, RANDALL CARSON,
DEBORAH SCOTT, HANNAH MCNULTY, E.M. by
and through her next friend Hannah McNulty, NANCY
MORGADO, KIMBERLY LALLIER, GARY
LALLIER, JORDAN LALLIER, JESSICA WATTS-
MESSICK, PAMELA GRIFFIN, KYLIE GRIFFIN,
PATRICK GRIFFIN, DAVID WARSEN, AARON
WARSEN, RYAN WARSEN, KYLE WARSEN,
DUSTIN ATWELL, KAYLA SAVARD, MARIE
SAVARD, GARETT SAVARD, KATIE
MONDRAGON, B.M. by and through her next friend
Katie Mondragon, D.C. by and through her next friend
Clarissa Martinez, M.C. by and through her next friend
Clarissa Martinez, BARRY WELCH for the estate of
NICKOLAS WELCH, MARTHA SMITH for the estate
of JAMES WICKLIFF CHACIN, SHEILA LONG,
SANDRA HACKENBERG, JENNIFER MABUS,
KAPRIEL WILSON, MARA WILSON, MICHAEL
DONIOS, LINDA MUNDALE, JURLEY POMEROY-
TORIAN, ELIJAH TORIAN, A.T. by and through his
next friend Jurley Pomeroy-Torian, L.T. by and through
her next friend Jurley Pomeroy-Torian, DIANE
DANYLUK, JOSEPH JONES JR., SAMANTHA
ULRICH, LETHA DODGE, RONNIE DODGE,
TAMMY BOWDEN, HOLLIE TOWLE, RONNIE
DODGE JR., CONNOR LARSON, SHIRLEY LEMM,
RACHEL THOMPSON, MARISSA BROWN,
BRITTANY HARRIS, SUSAN KOLEAN, DEANNA
SARTOR, G.S. by and through his next friend Deanna
Sartor, G.S. by and through her next friend Deanna
Sartor, STRYDER SARTOR, MARY PRYOR-
PATTERSON, JAMES SARTOR, CRISTA
BROONER, SHAE SARTOR, MARK FRERICHS,
RICHARD HERRERA, MARK SCHMITZ, SUZANNE
SCHMITZ, JACLYN SCHMITZ, E.S. by and through
her next friend Mark Schmitz, A.S. by and through her
next friend Mark Schmitz, CAMERON SCHMITZ,

TRAVIS AVENVILI-FRKOVIC, SAFIULAH RAUF,
ABDUL RAUF, HALIMA RAUF,

                    Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN,

                    Defendant.

## COMPLAINT FOR VIOLATION OF THE
## <u>FOREIGN SOVEREIGN IMMUNITIES ACT</u>

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................... 1

JURISDICTION AND VENUE ..................................................................... 2

THE DEFENDANT....................................................................................... 2

FACTUAL ALLEGATIONS .......................................................................... 3

I.     IRAN HAS LONG SUPPORTED TERRORISM THROUGHOUT THE
       MIDDLE EAST AND CENTRAL ASIA AS PART OF ITS FOREIGN
       POLICY ........................................................................................... 3

II.    THE TALIBAN IS PART OF AN AL-QAEDA-BACKED TERRORIST
       SYNDICATE THAT WAGED A DEADLY INSURGENCY AGAINST
       AMERICANS IN AFGHANISTAN ................................................. 9

       A.     The Taliban ......................................................................... 10

       B.     The Haqqani Network.......................................................... 14

       C.     Al-Qaeda ............................................................................. 23

       D.     The Kabul Attack Network .................................................. 31

III.   IRAN PROVIDED MATERIAL SUPPORT TO THE TALIBAN AND
       AFFILIATED TERRORIST GROUPS IN AFGHANISTAN ................ 32

       A.     Iran Provided Material Support For Anti-American Terrorism In
              Afghanistan To Undermine The U.S. Mission There ........................ 32

       B.     Iran Provided The Taliban With Weapons, Explosives, and Lethal
              Substances............................................................................ 41

       C.     Iran Provided The Taliban With Lodging, Training, Expert Advice or
              Assistance, Safehouses, Personnel, and Transportation ...................... 46

       D.     Iran Provided The Taliban With Financial Support.............................. 52

       E.     Iran Provided Material Support To Al-Qaeda ...................................... 54

IV.    THE TALIBAN KILLED AND INJURED PLAINTIFFS THROUGH
       TERRORIST ATTACKS FOR WHICH IRAN PROVIDED MATERIAL
       SUPPORT OR RESOURCES ................................................................. 58

       The April 21, 2006 Small Arms Attack in Uruzgan (Clayton Adamkavicius
       Family)................................................................................................. 58

The June 6, 2006 IED Attack in Nangarhar (Curtis Mehrer Family) ........................... 59

The June 13, 2006 Small Arms Attack in Kunar (Russell Durgin Family) ................. 59

The June 14, 2006 Small Arms Attack in Helmand (Roger Peña Jr. Family) ............. 60

The June 24, 2006 Small Arms Attack in Kandahar (Thomas Maholic Family) ........ 61

The July 5, 2006 Small Arms Attack in Paktika (Jeffery McLochlin Family) ............. 61

The July 16, 2006 Small Arms Attack in Zabul (Robert Kassin Family) ................... 63

The July 21, 2006 Mortar Attack in Paktika (Christopher Rafferty Family) .............. 64

The July 24, 2006 Small Arms Attack in Kunar (David Hierholzer Family) .............. 64

The August 11, 2006 Complex Attack in Nuristan (James White Jr. Family) ............ 65

The September 8, 2006 Suicide Attack in Kabul (Merideth Howard and Robert Paul Families) ........................................................................................................ 66

The September 15, 2006 Complex Attack in Khost (Bernard Deghand Family) ........ 67

The October 28, 2006 IED Attack in Uruzgan (Kyu Chay Family) ........................... 68

The October 31, 2006 IED Attack in Nuristan (Douglas Sloan Family) ..................... 69

The November 28, 2006 IED Attack in Logar (Jeffrey Roberson Family) ................. 70

The May 6, 2007 Small Arms Attack in Kabul (James Harrison Jr. Family) ............. 70

The May 30, 2007 Rocket Propelled Grenade Attack in Helmand (Christopher Allgaier Family) ..................................................................................................... 71

The July 23, 2007 IED Attack in Paktika (Travon Johnson Family) ......................... 72

The July 31, 2007 Small Arms Attack in Kunar (Benjamin Hall Family) ................. 73

The May 26, 2008 Small Arms Attack in Ghazni (Christopher Gathercole Family) .................................................................................................................... 73

The August 1, 2008 IED Attack in Kunar (Jair Garcia Family) ................................. 74

The March 27, 2009 Insider Attack in Balkh (Francis Toner IV Family) ................... 75

The May 15, 2009 Small Arms Attack in Wardak (Carlie Lee III Family) ................ 76

The August 29, 2009 Small Arms Attack in Paktika (Eric Hario Family) ................. 76

The September 15, 2009 IED Attack in Ghor (Shawn McCloskey Family) ................ 77

The October 1, 2009 Small Arms Attack in Parwan (Russell Hercules Jr. Family) .................................................................................................................... 78

The October 2, 2009 Small Arms Attack in Wardak (Aaron Smith Family) .............. 79

The October 31, 2009 IED Attack in Helmand (Cesar Ruiz Family) ......................... 80

The November 22, 2009 Small Arms Attack in Helmand (Nicholas Hand Family) .................................................................................................................... 80

The January 13, 2010 Small Arms Attack in Kunar (Lucas Beachnaw Family) ......... 81

The February 13, 2010 Small Arms Attack in Helmand (Jacob Turbett Family) ........ 82

The February 17, 2010 Small Arms Attack in Helmand (Eric Currier Family) ........... 82

The February 19, 2010 Small Arms Attack in Helmand (Joshua Birchfield Family) ........................................................................................................ 83

The February 19, 2010 Small Arms Attack in Farah (Gregory Stultz Family) ............ 84

The March 1, 2010 IED Attack in Kandahar (Ian Gelig Family) ................................. 85

The March 7, 2010 Small Arms Attack in Kunar (Nicholas Cook Family) ................. 86

The March 16, 2010 Suicide Attack in Kandahar (William Ross III) .......................... 86

The March 30, 2010 IED Attack in Kandahar (Scott Brunkhorst Family) ................... 87

The April 8, 2010 IED Attack in Paktika (Jonathon Hall Family) ............................... 88

The April 23, 2010 Small Arms Attack in Logar (Ronald Kubik Family) ................... 88

The May 11, 2010 IED Attack in Logar (Kendra Pieper Family) ................................ 89

The May 24, 2010 Small Arms Attack in Khost (Christopher Barton Family) ............ 90

The June 7, 2010 Small Arms Attack in Helmand (John Rankel Family) .................... 91

The June 7, 2010 IED Attack in Kunar (Blaine Redding Family) ............................... 92

The June 25, 2010 Complex Attack in Kunar (Jared Plunk Family) ........................... 92

The August 7, 2010 Small Arms Attack in Helmand (Kevin Cornelius Family) ......... 93

The August 19, 2010 Small Arms Attack in Kunar (Christopher Wright Family) ........................................................................................................ 94

The August 21, 2010 Small Arms Attack in Kandahar (Alexis Maldonado Family) ........................................................................................................ 95

The September 16, 2010 Small Arms Attack in Kandahar (Aaron Kramer Family) ........................................................................................................ 95

The October 4, 2010 IED Attack in Kandahar (Karl Campbell Family) ...................... 96

The October 12, 2010 IED Attack in Kandahar (Matthew Powell Family) ................. 97

The October 13, 2010 Small Arms Attack in Paktika (Jordan Byrd Family) .............. 98

The October 21, 2010 Small Arms Attack in Paktika (Kenneth McAninch Family) ........................................................................................................ 98

The November 4, 2010 Small Arms Attack in Helmand (Matthew Broehm Family) ........................................................................................................ 99

The November 14, 2010 Small Arms Attack in Kunar (Christian Warriner Family) ........................................................................................................ 100

The November 27, 2010 Rocket Propelled Grenade Attack in Wardak (Devon Harris Family) ........................................................................................................ 101

The November 29, 2010 Insider Attack in Nangarhar (Barry Jarvis, Buddy McLain, and Austin Staggs Families) ........................................................................ 101

The January 12, 2011 IED Attack in Ghazni (Jarrid King and Benjamin Moore Families) ........................................................................................................ 103

The January 12, 2011 Small Arms Attack in Kunar (Zachary Salmon Family) ........ 105

The February 17, 2011 IED Attack in Helmand (Matthew DeYoung Family).......... 106

The February 28, 2011 IED Attack in Wardak (Chauncy Mays Family).................. 106

The March 19, 2011 Small Arms Attack in Kandahar (Donald Mickler Jr. Family)..................................................................................................... 107

The March 22, 2011 Complex Attack in Logar (Joshua Gire Family)...................... 108

The March 29, 2011 Small Arms Attack in Kunar (Frank Adamski III and Jameson Lindskog Families) ......................................................................... 109

The April 7, 2011 Small Arms Attack in Logar (Keith Buzinski Family) ................ 110

The April 10, 2011 Small Arms Attack in Kandahar (Jamie Jarboe Family) ........... 111

The April 16, 2011 Insider Attack in Laghman (Charles Adkins Family)................ 112

The April 23, 2011 Small Arms Attack in Kapisa (James Justice Family)............... 113

The April 27, 2011 Insider Attack in Kabul (Philip Ambard Family) ...................... 114

The May 18, 2011 Complex Attack in Kandahar (Brandon Kirton Family).............. 115

The May 27, 2011 Small Arms Attack in Kandahar (John Johnson Family)............. 116

The June 20, 2011 Small Arms Attack in Ghazni (James Harvey II Family) ........... 116

The June 22, 2011 Small Arms Attack in Logar (Nicholas Bernier Family) ............ 117

The June 22, 2011 Small Arms Attack in Kunar (Levi Nuncio Family)................... 118

The August 4, 2011 Small Arms Attack in Paktia (Anthony Peterson Family)......... 119

The August 6, 2011 Attack on Helicopter in Wardak (Darrik Benson, Michael Strange, and Aaron Vaughn Families)....................................................... 120

The August 24, 2011 Small Arms Attack in Kandahar (Andrew Tobin Family)....... 122

The August 25, 2011 Small Arms Attack in Kandahar (Jesse Dietrich Family)........ 123

The September 10, 2011 Small Arms Attack in Paktika (Daniel Quintana Family)..................................................................................................... 123

The September 17, 2011 Complex Attack in Nuristan (Donald Bleyl)...................... 124

The September 18, 2011 IED Attack in Kandahar (Kevin Trimble Family) ............. 125

The September 21, 2011 Small Arms Attack in Kandahar (Robert Dyas Jr. Family)..................................................................................................... 125

The September 25, 2011 IED Attack in Laghman (Francisco Briseño-Alvarez Jr. Family)................................................................................................ 126

The October 29, 2011 Suicide Attack in Kabul (James Darrough Family)............... 127

The November 21, 2011 Small Arms Attack in Kandahar (Jackie Diener II Family)..................................................................................................... 128

The December 13, 2011 Small Arms Attack in Logar (Jalfred Vaquerano Family)..................................................................................................... 129

The January 9, 2012 Small Arms Attack in Balkh (Benjamin Wise Family) ........... 129

The April 30, 2012 Small Arms Attack in Kandahar (Nicholas Dickhut Family) ..... 130

The May 6, 2012 Insider Attack in Helmand (John Huling Family) ......................... 131

The May 13, 2012 IED Attack in Khost (Richard McNulty III Family) ................... 131

The May 23, 2012 IED Attack in Kandahar (Travis Morgado Family) .................... 132

The June 18, 2012 Insider Attack in Kandahar (Jarrod Lallier Family) ................... 133

The August 8, 2012 Suicide Attack in Kunar (Kevin Griffin Family) ...................... 134

The August 16, 2012 Attack on Helicopter in Kandahar (David Warsen Family) ........................................................................................................... 135

The September 15, 2012 Complex Attack in Helmand (Bradley Atwell Family) ..... 136

The October 13, 2012 Small Arms Attack in Kunduz (Ryan Savard Family) ........... 136

The December 24, 2012 Small Arms Attack in Logar (Enrique Mondragon Family) ........................................................................................................... 137

The May 4, 2013 IED Attack in Kandahar (Kevin Cardoza Family) ....................... 138

The July 23, 2013 IED Attack in Wardak (Nickolas Welch Estate) ........................ 139

The August 12, 2013 IED Attack in Logar (James Wickliff Chacin Estate) ............. 139

The August 20, 2013 Small Arms Attack in Wardak (George Bannar Jr. Family) ........................................................................................................... 140

The September 26, 2013 Insider Attack in Paktia (Thomas Baysore Jr. Family) ...... 141

The October 5, 2013 IED Attack in Kandahar (Cody Patterson Family) .................. 142

The January 20, 2014 Small Arms Attack in Kandahar (Edward Balli Family) ........ 142

The February 10, 2014 Suicide Attack in Kabul (Michael Hughes Family) .............. 143

The February 15, 2014 Complex Attack Helmand (Aaron Torian Family) ............... 144

The April 12, 2014 Small Arms Attack in Logar (Kerry Danyluk Family) ............... 145

The June 2, 2014 Small Arms Attack in Nangarhar (Jason Jones Family) ............... 145

The August 22, 2015 Suicide Attack in Kabul (Corey Dodge Family) ..................... 146

The December 21, 2015 Suicide Attack in Parwan (Joseph Lemm Family) .............. 147

The August 23, 2016 IED Attack in Helmand (Matthew Thompson Family) ........... 148

The November 12, 2016 Suicide Attack in Parwan (Allan Brown Family) ............... 148

The August 2, 2017 Suicide Attack in Kandahar (Christopher Harris Family) ......... 149

The July 13, 2019 Small Arms Attack in Faryab (James Sartor Family) .................. 150

The January 31, 2020 Kidnapping Attack in Kabul (Mark Frerichs) ........................ 152

The August 26, 2021 Suicide Attack in Kabul (Nicole Gee and Jared Schmitz Families) ........................................................................................................... 152

The December 18, 2021 Kidnapping Attack in Kabul (Safiullah Rauf Family) ........ 156

CLAIM FOR RELIEF ............................................................................................ 157

COUNT ONE:  PERSONAL INJURY OR DEATH UNDER 28 U.S.C. § 1605A(c)............... 157

PRAYER FOR RELIEF ............................................................................................ 158

## INTRODUCTION

1.      This lawsuit seeks damages under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, on behalf of American service members and civilians, and their family members, who were killed, wounded, or kidnapped while serving their country in the Islamic Republic of Afghanistan ("Afghanistan") between approximately 2006 and 2022.

2.      While these men and women worked to rebuild post-war Afghanistan, they were attacked by Taliban and al-Qaeda terrorists.  The Islamic Republic of Iran ("Iran") sponsored those terrorist attacks in an effort to undermine American foreign policy in Afghanistan.  To that end, Iran supported the Taliban by, among other things, training Taliban terrorists how to attack Americans effectively and paying terrorists who killed U.S. forces.  Iran also provided the Taliban with sophisticated weapons that it used to kill and injure thousands of Americans.

3.      Iran's support for al-Qaeda was equally potent.  That support dates back decades and has included money, weapons, training, logistical assistance, and safe harbor for key al-Qaeda leaders.  In 2007, Osama bin Laden himself referred to Iran as al-Qaeda's "main artery for funds, personnel, and communication."  Iran's longstanding decision to back al-Qaeda despite sectarian differences between the two reflected Iran's overriding desire to foment anti-American terrorism around the world.  That decision, like the one to provide material support to the Taliban, paid dividends.  Iran's support for al-Qaeda's activities in Afghanistan substantially contributed to the terrorist violence that killed and injured Americans there.

4.      Iran's support for al-Qaeda complemented its support for the Taliban because of the close relationship between the two terrorist groups.  Although al-Qaeda and the Taliban were nominally separate groups, they acted together in a terrorist "syndicate" that planned and authorized terrorist violence throughout Afghanistan.  That syndicate – which involved mafia-style meetings between leaders of the syndicate's various members – provided a

superstructure that organized and facilitated a range of terrorist attacks in Afghanistan.  By funneling material support to multiple members of that syndicate, Iran ensured that its policy of sponsoring anti-American terrorism in Afghanistan achieved maximum effect.

5.     Iran has been designated as a State Sponsor of Terrorism since 1984.  Iran's agents include Hezbollah, the Islamic Revolutionary Guard Corps ("IRGC"), and the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF" or "Qods Force"), among others.  Many of Iran's agents are designated as Foreign Terrorist Organizations ("FTOs") under section 219 of the Immigration and Nationality Act (8 U.S.C. § 1189), Specially Designated Global Terrorists ("SDGTs") under 31 C.F.R. § 594.31, or both.  As a designated State Sponsor of Terrorism – which routinely employs designated FTOs as instruments of its terrorist agenda – Iran is liable to Plaintiffs for the injuries it caused by deliberately supporting terrorist attacks in Afghanistan.

## JURISDICTION AND VENUE

6.     This Court has personal and subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2), and 1605A.

7.     Venue is proper in this District under 28 U.S.C. § 1391(f)(4).

8.     28 U.S.C. § 1605A(c) provides a federal private right of action against a State Sponsor of Terrorism for personal injury or death caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support and resources for such acts.  The foreign state is liable for the acts of its officials, employees, and agents.

## THE DEFENDANT

9.     Defendant Iran is a foreign state that was designated as a State Sponsor of Terrorism on January 19, 1984, pursuant to section 6 of the Export Administration Act of 1979 (50 U.S.C. § 4605), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371), and

section 40 of the Arms Export Control Act (22 U.S.C. § 2780).  Iran has remained designated continuously since then.

10.    Iran is politically and ideologically hostile to the United States and its allies.  Iran has consistently provided material support and resources for acts of international terrorism targeting the United States and its overseas interests, often acting through agents like the IRGC, the Qods Force, and Hezbollah.  Iran's provision of material support for anti-American terrorism commonly includes material support and resources for torture, extrajudicial killings, aircraft sabotage, hostage taking, and other related acts.

11.    Iran – including through its officials, employees, and agents acting within the scope of those relationships – provided material support and resources for the commission of acts of torture, extrajudicial killing, aircraft sabotage, and hostage taking by the Taliban and al-Qaeda in Afghanistan, including the extrajudicial killings in which Plaintiffs or their family members were killed or injured.  Iran's material support and resources caused Plaintiffs' injuries.

12.    Iran provided material support for these acts of terrorism against Americans for the purpose of supporting, enabling, advancing, and benefitting from them.[1]

## FACTUAL ALLEGATIONS

## I.    IRAN HAS LONG SUPPORTED TERRORISM THROUGHOUT THE MIDDLE EAST AND CENTRAL ASIA AS PART OF ITS FOREIGN POLICY

13.    The 1979 Iranian Revolution was fueled in large part by militant anti-Americanism.  Eliminating the United States' role in the geographic region surrounding Iran –

---

[1] Unless otherwise indicated, when Plaintiffs refer to the material support provided by "Iran" to the syndicate in this Complaint, Plaintiffs are specifically describing support that Iran routed to the syndicate primarily through the Islamic Revolutionary Guard Corps ("IRGC"), including the IRGC-Qods Force ("Qods Force"), as supported by "regular" IRGC and, sometimes, Iran's other terrorist agents, including Lebanese Hezbollah ("Hezbollah") and/or the Ministry of Intelligence and Security ("MOIS").  Plaintiffs' approach generally tracks that of the U.S. government, which regularly describes IRGC-related conduct as "Iran's" conduct.

including through violence – was and remains a central tenet of Iranian foreign policy.[2]  Since

the Iranian Revolution, Iran has engaged in and supported acts of terrorism directed at the United

States and its allies as an instrument of Iran's foreign policy.

     14.    Iran's support of terrorist proxies like Hezbollah, Hamas, the Taliban, and al-

Qaeda is well-documented.[3]  Iran's support for such groups is especially prevalent in areas where

Iran abstains from open conflict.  As a result of Iran's consistent and longstanding support of

anti-American terrorism, the U.S. State Department formally designated Iran as a State Sponsor

of Terrorism in 1984.[4]  It has maintained that designation at all times since.[5]  In 2007, the U.S.

State Department described Iran as "the most active state sponsor of terrorism" in the world and

"a threat to regional stability and U.S. interests in the Middle East because of its continued

support for violent groups."[6]

     15.    Iran carries out its support of terrorism largely through the IRGC.  The IRGC, a

governmental entity of Iran, is a quasi-military state institution that operates separately from the

regular Iranian military.  The IRGC is organized like a traditional military and includes an army,

navy, air force, militia, and special forces.[7]  The IRGC is supervised by the Iranian government,

---

[2] Col. (ret.) Richard Kemp and Maj. (ret.) Charles Driver-Williams, *Killing Americans and Their Allies: Iran's Continuing War against the United States and the West*, Jerusalem Ctr. For Public Affairs (2015) ("*Killing Americans and Their Allies*"), http://jcpa.org/killing-americans-allies-irans-war/.

[3] *See* Alireza Nader, Joya Laha, *Iran's Balancing Act in Afghanistan* at 9 (RAND Corp. 2011) ("*Iran's Balancing Act*").

[4] *See* 49 Fed. Reg. 2836–02 (Jan. 23, 1984) (statement of Sec'y of State George P. Shultz designating Iran); U.S. State Dep't, *State Sponsors of Terrorism*, https://www.state.gov/j/ct/list/c14151.htm.

[5] *Id.*

[6] U.S. State Dep't, *Country Reports on Terrorism 2007* at 172 (Apr. 2008).

[7] *See* Press Release, U.S. Treasury Dep't, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007).

but it also "has a relatively strict command-and-control protocol and answers directly to the

Supreme Leader, Ayatollah Ali Khamenei."[8]  The Supreme Leader serves as commander-in-

chief of the armed forces, appoints the head of each military service, and declares war and peace.

He also routinely employs the IRGC to further Iran's global terrorist agenda.  As the U.S.

Treasury Department noted in 2010 when it designated certain IRGC officials pursuant to

Executive Order 13224, "Iran also uses the . . . IRGC . . . to implement its foreign policy goals,

including, but not limited to, seemingly legitimate activities that provide cover for intelligence

operations and support to terrorist and insurgent groups."[9]

16.    Members of the IRGC are officials, employees, or agents of Iran.  In light of the

IRGC's regular support for terrorist organizations and the strict command structure tying them to

Iran's central leadership, members of the IRGC act within the scope of employment when they

provide material support to terrorist organizations.

17.    Iran's constitution vests in the IRGC responsibility for defending the Islamic

Revolution.  The IRGC runs prisons in Iran, and it controls hundreds of companies, particularly

in the oil-and-gas, engineering, construction, and defense industries.  Some analysts estimate that

the IRGC controls up to one-third of Iran's economy – billions of dollars of business.

18.    On April 15, 2019, the U.S. State Department designated the IRGC as a FTO.[10]

Announcing the designation, President Trump explained that "the IRGC actively participates in,

finances, and promotes terrorism as a tool of statecraft."[11]  According to the U.S. State

---

[8] *Iran's Balancing Act* at 10.

[9] Press Release, U.S. Treasury Dep't, *Fact Sheet: U.S. Treasury Department Targets Iran's Support for Terrorism Treasury Announces New Sanctions Against Iran's Islamic Revolutionary Guard Corps-Qods Force Leadership* (Aug. 3, 2010).

[10] *See* 84 Fed. Reg. 15278-01 (Apr. 15, 2019).

[11] Statement from the President on the Designation of the Islamic Revolutionary Guard Corps as a Foreign Terrorist Organization (Apr. 8, 2019).

Department's public statement explaining the designation, the IRGC "has been directly involved in terrorist plotting; its support for terrorism is foundational and institutional, and it has killed U.S. citizens."[12]  Through the IRGC's support for terrorist organizations throughout the region, "[t]he Iranian regime has made a clear choice not only to fund and equip, but also to fuel terrorism, violence, and unrest across the Middle East."[13]

19.     The IRGC has a special foreign division called the Qods Force.  The U.S. State Department has observed that "Iran used the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) to implement foreign policy goals, provide cover for intelligence operations, and create instability in the Middle East.  The Qods Force is Iran's primary mechanism for cultivating and supporting terrorists abroad."[14]  The Qods Force is the driving force behind Iran's activities in Afghanistan, as well as in Iraq and elsewhere in the region.

20.     The Qods Force has a long and well-documented history of assassinations, kidnappings, bombings, and arms dealing.  It also regularly trains foreign terrorist proxies whose attacks promote Iran's political goals.  The Qods Force, though operationally independent from the rest of the IRGC, is also responsible to and directed by the Supreme Leader of Iran.  Major General Qassem Soleimani, who was the chief of the Qods Force for more than twenty years, oversaw the Qods Force's support for terrorist groups to promote Iran's policies throughout the region.  Soleimani took his directions from Khamenei, with whom he shared a close personal relationship.  Soleimani was killed in a U.S. airstrike in Baghdad, Iraq on January 3, 2020.  Khamenei then appointed General Esmail Ghaani to replace him.

---

[12] Press Release, U.S. State Dep't, *Fact Sheet: Designation of the Islamic Revolutionary Guard Corps* (Apr. 8, 2019), https://www.state.gov/designation-of-the-islamic-revolutionary-guard-corps/.

[13] *Id.*

[14] U.S. State Dep't, *Country Reports on Terrorism 2015* at 300 (June 2, 2016).

21.     The Qods Force provides weapons, funding, and training for terrorist operations targeting American citizens, including by supporting terrorist organizations such as al-Qaeda, the Taliban, and the Haqqani Network.  Iran's Supreme Leader and central government are aware of and encourage those acts.  As the U.S. government's Joint Improvised Explosive Device Defeat Organization ("JIEDDO") concluded:  "Iran's use of weapons smuggling networks is fairly predictable and meant to shape the manner in which foreign countries deal with Iran."[15]  For that reason, the Qods Force varies the quantity, rate, and types of weapons provided to its proxy terrorist organizations depending on the amount of pressure Iran wants to exert on a particular country.  Applying pressure against the United States by funding and supplying terrorist proxies in the Middle East and Central Asia is thus an official component of Iran's foreign policy.

22.     The Qods Force has four regional commands within Iran, with each focused on implementing Iran's foreign policy in a neighboring region.  The First Corps focuses on Iraq, the Second Corps on Pakistan, the Third Corps on Turkey and Kurdistan, and the Fourth Corps on Afghanistan.

23.     In October 2007, the U.S. Treasury Department designated the Qods Force as a SDGT under Executive Order 13224 for providing material support to the Taliban and other terrorist organizations, including Hezbollah and terrorist groups in Iraq.[16]  The U.S. Treasury Department also designated multiple Qods Force members as Specially Designated Nationals pursuant to Executive Order 13224, based on their activities in Afghanistan.[17]

---

[15] Eric Parks, *Iranian Weapons Smuggling Activities in Afghanistan* at 9, JIEDDO J2 Open Source Augmentation and Analysis Cell (Sept. 3, 2009) ("*JIEDDO Report*").

[16] Press Release, U.S. Treasury Dep't, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007).

[17] *Id.*

24.     The U.S. State Department designated the Qods Force as a FTO in April 2019, along with the IRGC.[18]

25.     Iran has also used its agent, Hezbollah,[19] to commit terrorist attacks.  Hezbollah is a Lebanon-based terrorist group that has pledged fealty to Iran's Supreme Leader.  Each year Iran provides Hezbollah approximately $100 million to $200 million in funding and weapons. As Ali Akbar Mohtashemi (a Hezbollah founder, former Iranian ambassador to Syria and Lebanon, and former Iranian Minister of Interior) explained, "[Hezbollah] is part of the Iranian rulership; [Hezbollah] is a central component of the Iranian military and security establishment; the ties between Iran and [Hezbollah] are far greater than those between a revolutionary regime with a revolutionary party or organization outside its borders."[20]

26.     Iran has long provided support – through the IRGC, Qods Force, and Hezbollah – for terrorist attacks against American military forces and contractors.  For example, Iran used the IRGC and Hezbollah to train, guide, direct, and motivate Shi'a terrorists targeting American service members and civilians in Iraq.[21]  Similarly, Iran (acting predominantly through Hezbollah) provided Iraqi terrorists with explosively formed penetrators, a weapon that inflicted more casualties on Americans than any other in Iraq.  And Iranian officials have often participated directly in attacks on Americans in Iraq.

---

[18] *See* 84 Fed. Reg. 15278-01 (Apr. 15, 2019).

[19] Several decisions in this District have held that Hezbollah is a proxy of Iran.  *See Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 61 (D.D.C. 2018), *Friends of Mayanot Inst., Inc. v. Islamic Republic of Iran*, 313 F. Supp. 3d 50, 53-55 (D.D.C. 2018); *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 53 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 292 (D.D.C. 2003).

[20] *Killing Americans and Their Allies* at 11.

[21] *Id.*

II.  **THE TALIBAN IS PART OF AN AL-QAEDA-BACKED TERRORIST**
     **SYNDICATE THAT WAGED A DEADLY INSURGENCY AGAINST**
     **AMERICANS IN AFGHANISTAN**

27.  Since the United States-led overthrow of the Taliban-controlled government in Afghanistan in 2001, terrorists have repeatedly attacked American service members and civilians working to rebuild Afghanistan and support its elected government.  Iran provided material support for those attacks, which killed or injured Plaintiffs.

28.  Plaintiffs identify below several terrorist groups, subgroups, and partnerships responsible for the specific attacks that killed and injured them.  Each worked in concert and shared resources, personnel, and operational plans.  Indeed, the Taliban and al-Qaeda often participated in mafia-style meetings – attended by the leaders of several allied terrorist groups – in which they planned and authorized various terrorist attacks throughout Afghanistan.[22]  Given such coordination, one former CIA official and senior White House advisor called the resulting terrorist superstructure a "syndicate," composed of al-Qaeda, the Taliban, and several allied FTOs.[23]  In fact, bin Laden himself conceived of al-Qaeda as the leader of a broader coalition of terrorists drawing from other terrorist organizations in Pakistan and Afghanistan.[24]

29.  Iran's support for multiple components of this "syndicate," *see infra* Part III, ensured that its support had maximum effect.  Due to the mutually reinforcing ties between the Taliban and al-Qaeda in Afghanistan, support for the one benefited the other – and vice versa. Iran recognized those interrelationships and so spread its support across multiple parts of the

---

[22] *See* Bill Roggio and Thomas Joscelyn, *The al Qaeda – Taliban Connection*, Wash. Exam'r (July 4, 2011) ("*The al Qaeda-Taliban Connection*"), archived at https://www.washingtonexaminer.com/weekly-standard/the-al-qaeda-taliban-connection.

[23] Bruce Riedel, *Deadly Embrace: Pakistan, America, And The Future Of The Global Jihad* at 1 (Brookings Inst. Press 2d ed. 2011).

[24] *The al Qaeda-Taliban Connection*.

Afghan terror syndicate. In doing so, Iran was able to achieve its intended effect: wide-ranging terrorist attacks against Americans, executed mostly by the Taliban but supported by (and sometimes jointly committed with) al-Qaeda and the other components of the syndicate.

30.    Against that backdrop, Plaintiffs identify below the principal Afghan terrorist groups, subgroups, and cells that committed the attacks that killed and injured them.

### A.    The Taliban

31.    The Taliban is a Sunni Islamic terrorist organization. It was formed in 1994 and was composed mostly of former mujahedin fighters who had expelled the Soviet Union from Afghanistan. From its inception, the Taliban was a predominantly Pashtun movement led by Mullah Mohammed Omar. It began to overtake Afghanistan in late 1994, seeking to establish a radical Islamic government demanding strict adherence to Sharia law. The Taliban largely ruled Afghanistan from 1996 until 2001, although only three foreign countries formally recognized the Taliban government during that time.

32.    From 1996 until after September 11, 2001, the Taliban government harbored Osama bin Laden and al-Qaeda operatives in Afghanistan. In late 2001, in response to al-Qaeda's September 11 attacks on the United States and the Taliban's refusal to turn over Osama bin Laden, American-led Coalition forces invaded Afghanistan. They quickly overthrew the Taliban government. By November 2001, the Taliban fled Kabul, and they abandoned Kandahar – their historical stronghold in southern Afghanistan – the following month. While rank-and-file Taliban terrorists dispersed back into the countryside, the Taliban leadership – including Mullah Omar – took refuge in Pakistan.

33.    In December 2001, the United Nations passed Resolution 1386 authorizing the International Security Assistance Force ("ISAF") in Afghanistan, whose mandate was to maintain stability in Afghanistan and assist the Afghan government in rebuilding the country.

34.     In July 2002, President George W. Bush amended Executive Order 13224 to designate the Taliban and its leader Mullah Omar as SDGTs.[25]

35.     In May 2003, after the U.S. military toppled the Taliban-led government, the United States declared an end to major combat operations in Afghanistan.  Afghanistan ratified a new Constitution in December 2003, and the Taliban was not invited to participate in the formation of a new government.  The Taliban reacted by setting up "shadow" governments – including so-called "governors" – in most areas, seeking to exercise de-facto, extra-legal control over the Afghan people.

36.     The Taliban's principal goal was to expel Coalition forces, particularly Americans, from the country and undermine the elected government of Afghanistan.  To that end, the Taliban began to ramp up its terrorist attacks on U.S. forces in Afghanistan during the mid-2000s.  The Taliban also started using new attack types, including suicide bombings.  For example, the Taliban committed six suicide bombings in Afghanistan in 2004, and 141 in 2006.  Remotely detonated bombings more than doubled between 2005 and 2006.

37.     In 2008 and 2009, a growing Taliban insurgency attacked U.S. forces throughout Afghanistan with a particular emphasis on the southern provinces of Afghanistan, especially Helmand and Kandahar Provinces.  By 2010, the Taliban had regained much of the territory it had lost after September 11.  Responding to the Taliban's growing threat, U.S. Marines launched counterinsurgency operations focused on "restoring government services, bolstering local police

---

[25] *See* Termination of Emergency With Respect to the Taliban and Amendment of Exec. Order No. 13,224, 67 Fed. Reg. 44,751 (Sept. 23, 2001); Exec. Order No. 13,268, 2002 WL 32817626 (July 2, 2002).

forces, and protecting civilians from Taliban incursion."[26]   The Taliban, in turn, responded with escalating violence.

38.     As of 2018, the Taliban had an active presence in 70% of the country.  Although the Taliban was the primary terrorist organization operating in all of the areas of Afghanistan where Plaintiffs (or their family members) were attacked, it was particularly active in the southern provinces in Afghanistan, including the provinces of Helmand, Zabul, and Kandahar.  It concentrated many of its most deadly attacks in and around Kandahar City.

39.     The Taliban eventually succeeded in retaking control of Afghanistan.  By the end of August 2021, Coalition troops had withdrawn from the country.  But up until the very end, the Taliban's terrorist syndicate actively attacked and murdered American and Coalition forces.

40.     The Taliban often attacked American and Coalition forces, U.S. government contractors, and Afghan forces.  But it also targeted civilian aid workers, non-governmental organization workers, and Afghan civilians.  In later years, the Taliban increased attacks on civilians by placing explosives in public locations and using suicide bombers.  It also used civilians to attract Coalition forces before detonating a bomb, frequently killing more civilians than Coalition forces.

41.     The Taliban routinely violated the laws of war and did not comply with the Geneva Conventions.  Among other violations, Taliban terrorists refused to wear uniforms or otherwise distinguish themselves from civilians; intentionally slaughtered civilians; used indiscriminate weapons; conscripted children into committing attacks; and engaged in widespread kidnapping and torture in an effort to intimidate their enemies.

---

[26] *Timeline: The U.S War in Afghanistan: 1999 – 2019*, Council on Foreign Rel., https://www.cfr.org/timeline/us-war-afghanistan.

42. The Taliban – sometimes operating jointly with other terrorist groups – committed the terrorist attacks that killed or injured the Plaintiffs in this case. *See infra* Part IV.

43. To effectuate those attacks, the Taliban employed a number of different attack types in service of its terrorist agenda. Most prominently, the Taliban relied heavily on Improvised Explosive Devices ("IEDs"), including Explosively Formed Penetrators ("EFPs"), designed to destroy American armored vehicles and inflict heavy casualties. Many of the Plaintiffs, or their family members, were killed or injured by a Taliban-planted IED or EFP.

44. The Taliban's ability to effectively conduct IED attacks directly facilitated their small arms fire attacks against the U.S. citizens in Afghanistan, including attacks that killed and injured Plaintiffs. Among other methods, terrorists in Afghanistan (and elsewhere) commonly used IED threats and placement histories to channel U.S. forces into specific pre-planned ambush sites, sometimes called "kill boxes." With knowledge of how U.S. personnel would travel in order to avoid the IED threat, the terrorists could and did successfully attack the U.S. servicemembers in the kill boxes through an ambush involving small arms fire.

45. The Taliban also attacked U.S. forces and U.S. government contractors with suicide bombers with increasing frequency in later years. Many Plaintiffs, or their family members, were killed or injured in Taliban suicide bomber attacks.

46. The Taliban (often through the Haqqani Network, *see infra* Part II.B) also employed insider attacks carried out by members of the Afghan Army. According to an August 2012 statement by Taliban commander Mullah Omar, Taliban terrorists "cleverly infiltrated in the ranks of the enemy according to the plan given to them last year."[27] Mullah Omar expressly

---

[27] Bill Roggio, *Mullah Omar Addresses Green-on-Blue Attacks*, Long War J. (Aug. 16, 2012).

encouraged Afghan officers to defect and join the Taliban.  These attacks took place in all areas of Afghanistan, and the Taliban regularly claimed responsibility for them.  Many Plaintiffs in this case, or their family members, were killed or injured in Taliban insider attacks.

### B.    The Haqqani Network

47.    The Haqqani Network is a Sunni Islamic terrorist organization that has been operating in Afghanistan since the 1970s.  It was founded by Jalaluddin Haqqani and is now led by his son, Sirajuddin Haqqani.  The Haqqani Network is part of the Taliban.

48.    The Haqqani Network also has significant links to al-Qaeda, dating back to the 1980s when Osama bin Laden established a training camp for his nascent terrorist group in Haqqani-controlled territory in Afghanistan.  After the September 11, 2001 attacks, the Haqqani Network provided sanctuary and support to bin Laden as he fled U.S. military action; Jalaluddin Haqqani himself announced that the Taliban would "retreat to the mountains and begin a long guerrilla war to reclaim our pure land from infidels" and "that Osama bin Laden is not only safe and sound, he is also in good spirits."[28]

49.    The Haqqani Network's close relationship with other terrorist groups helped spawn the modern terrorist syndicate operating in Afghanistan.  Senior Haqqani Network officials have indicated that the Haqqani Network and al-Qaeda operate as one group.[29]  And in July 2008, Jalaluddin Haqqani's son – 18-year-old Muhammad Omar Haqqani – was killed alongside a top al-Qaeda commander in southeast Afghanistan.  The Haqqani Network also maintains training camps and safehouses that are used by both al-Qaeda and Taliban operatives.

---

[28] Aslam Khan, *Taliban Leader Warns Of Long Guerilla War,* Gulf News UAE (Oct. 21, 2001); *Interview with Taliban Commander Maulvi Jalaluddin Haqqani*, The News (Oct. 20, 2001).

[29] *See* Bill Roggio, *An Interview With Mullah Sangeen*, Long War J. (Sept. 17, 2009).

50.     On September 13, 2007, the United Nations sanctioned Sirajuddin Haqqani pursuant to the U.N.'s al-Qaeda-Taliban sanctions regime.  In its designation, the U.N. concluded, among other things, that Sirajuddin "participat[ed] in the financing, planning, facilitating, preparing, or perpetrating of acts or activities by, in conjunction with, under the name of, on behalf or in support of" "the Taliban" and "Al-Qaida"; "recruit[ed] for" or "otherwise support[ed] acts or activities of" "the Taliban" and "Al-Qaida"; was "one of the most prominent, influential, charismatic and experienced leaders within the Haqqani Network . . . and [had] been one of the major operational commanders of the network since 2004"; was "a key conduit for terrorist operations in Afghanistan and supporting activities in the Federally Administered Tribal Areas of Pakistan."

51.     By 2008, Sirajuddin Haqqani was simultaneously: (1) a senior al-Qaeda operative, leader, and attack planner, who served as the most important member of al-Qaeda's military council (essentially, its terrorist planning committee);[30] (2) the Haqqani Network's top operative, attack planner, and leader; and (3) a senior leader of the Quetta Shura Taliban, which would eventually make him its number two leader (Deputy Emir).

52.     Other than Osama bin Laden, Sirajuddin Haqqani was the single most important al-Qaeda leader in Afghanistan and Pakistan after September 11.  By joining al-Qaeda management, Sirajuddin fostered a high degree of interoperability and cohesion between al-Qaeda and the Taliban, including its Haqqani Network, that greatly magnified the lethality of the syndicate's campaign.

---

[30] Sirajuddin Haqqani's service on al-Qaeda's military council – publicly confirmed by declassified U.S. intelligence – necessarily means that Sirajuddin Haqqani swore an oath of allegiance to al-Qaeda, because al-Qaeda only permitted sworn al-Qaeda members to serve on its councils.

53.     As a dual-hatted al-Qaeda/Taliban terrorist himself – and one who serves as a leader in both organizations – Sirajuddin Haqqani has openly welcomed al-Qaeda members to join and fight with the Haqqani Network and the rest of the Taliban.  According to U.S. intelligence officers, Sirajuddin Haqqani acts as a member of al-Qaeda's military council.  U.S. officials have described him as al-Qaeda's top facilitator in Afghanistan.[31]

54.     In spring 2010, Sirajuddin Haqqani publicly embraced his status as a member and leader of both al-Qaeda and the Taliban during an interview that was widely disseminated around the world.  In the interview, the questioner asked Sirajuddin whether the "mujahideen who emigrate[d] to the land of the Khorasan" – meaning al-Qaeda's foreign fighters in Afghanistan – "form[ed] any obstacle or burden on the Afghani people."  In response, Sirajuddin noted that al-Qaeda's foreign fighters "enlighten the road for [fighters from Taliban Afghanistan and Pakistan] and they resist against the cross worshippers by cooperating with us and us with them in one trench."[32]

55.     In June 2010, an al-Qaeda memorandum, sent to bin Laden himself, documented Sirajuddin's terrorist operations in Afghanistan and Pakistan on behalf of al-Qaeda.

56.     In 2011, Sirajuddin Haqqani published and distributed 10,000 copies of a book he authored that encouraged Islamists to follow al-Qaeda's ways, praised al-Qaeda because it "terrifie[d]" its foes, and endorsed attacks against the United States worldwide.

57.     When Plaintiffs and/or their family members were attacked by al-Qaeda in Afghanistan between 2005 and 2022, Sirajuddin Haqqani, and the al-Qaeda and Taliban

---

[31] Hindustan Times, *Al Qaeda Very Active In Afghanistan, Preparing For Attacks* (Apr. 13, 2016) ("The Taliban's current deputy commander, Siraj Haqqani, is head of the Haqqani Network and al Qaeda's top facilitator in Afghanistan, according to US officials.").

[32] Bill Roggio, *Taliban Cooperation With al Qaeda 'Is At The Highest Limits' – Siraj Haqqani*, Long War J. (Apr. 15, 2010).

organizations he led, promoted deep cooperation amongst al-Qaeda (including its subsidiaries like al-Qaeda-in-Iraq), the Taliban (including its Haqqani Network), and the IRGC (including Hezbollah and the Qods Force).

58.     When Plaintiffs and/or their family members were attacked by al-Qaeda in Afghanistan between 2005 and 2022, Sirajuddin Haqqani served as the top syndicate polyterrorist responsible for coordinating key transnational-facing aspects of al-Qaeda's terrorist campaign in Afghanistan and, for coordinating with other al-Qaeda and affiliated terrorists worldwide.

59.     To this day, Sirajuddin Haqqani remains a senior member of al-Qaeda and a terrorist wanted by the United States for murder.[33]

60.     The U.S. Treasury Department has repeatedly recognized the links between Haqqani Network leaders and al-Qaeda.  For example, in July 2010, the U.S. Treasury Department designated Nasiruddin Haqqani, the brother of Sirajuddin Haqqani, pursuant to Executive Order 13224.[34]  The designation noted that Nasiruddin Haqqani had received funding via payments from al-Qaeda.[35]  And when the U.S. Treasury Department designated Sirajuddin

---

[33] For more than a decade, and continuing through to today, Sirajuddin Haqqani was wanted by the FBI for his involvement in numerous acts of terror against Americans.  Along with his brothers, who were also (and remain) key Haqqani Network leaders, as well as al-Qaeda operatives and/or agents, Sirajuddin Haqqani personally spearheaded the syndicate's successful campaign on Kabul in August 2021.  Today, Sirajuddin Haqqani serves as the terrorist responsible for the "Islamic Emirate of Afghanistan's" borders and guns, while his uncle Khalil and brothers have responsibilities relevant to intelligence and information.

[34] *See*, *e.g.*, Press Release, U.S. Treasury Dep't, *Treasury Targets Taliban and Haqqani Network Leadership: Treasury Designates Three Financiers Operating in Afghanistan and Pakistan* (Jun. 22, 2010).

[35] *Id.*

Haqqani's uncle Khalil Al-Rahman Haqqani as a SDGT in 2011, it noted that he "has also acted on behalf of al-Qa'ida and has been linked to al-Qa'ida military operations."[36]

61.    On September 19, 2012, the U.S. State Department designated the Haqqani Network as a FTO.[37]

62.    The United States has also designated various Haqqani leaders as SDGTs.  On February 29, 2008, the U.S. State Department designated Sirajuddin Haqqani for "acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States."[38]  In March 2009, the U.S. State Department put out a bounty of $5 million for information leading to his capture.[39]  In 2010 and 2011, the United States designated three other members of the Haqqani Family – Nasiruddin Haqqani, Badruddin Haqqani, and Khalil Al-Rahman Haqqani – as fundraisers and commanders of the Haqqani Network.  By February 2014, the U.S. State Department and the U.S. Treasury Department had designated 14 leaders in the Haqqani Network under Executive Order 13224.

63.    The Haqqani Network began supplying weapons to the Taliban in the mid-1990s when the Taliban was in its infancy.  It has operated as part of the Taliban since approximately 1995, when its founder Jalaluddin Haqqani swore allegiance to the Taliban after the Taliban

---

[36] Press Release, U.S. Treasury Dep't, *Treasury Targets the Financial and Support Networks of Al Qa'ida and the Taliban, Haqqani Network Leadership* (Feb. 9, 2011).

[37] U.S. State Dep't, *Country Reports on Terrorism 2017* at 294 (Sept. 2018) ("*Country Reports on Terrorism 2017*").

[38] Notice, U.S. State Dep't, *In the Matter of the Designation of Sirajuddin Haqqani, aka Sirajuddin Haqani, aka Siraj Haqqani, aka Siraj Haqani, aka Sarj Haqqani, aka Saraj Haqani, as a Specially Designated Global Terrorist Pursuant to Section 1(b) of Executive Order 13224, as Amended* at 12499 (Mar. 7, 2008).

[39] Press Release, U.S. State Dep't, *Rewards For Justice: Sirajuddin Haqqani* (Mar. 25, 2009).

captured Kabul. Jalaluddin Haqqani was the Minister of Tribal and Border Affairs in the Taliban government until the United States invaded Afghanistan.

64.    The Haqqani Network is especially active in the southeastern parts of Afghanistan, particularly the provinces of Paktia, Paktika, and Khost, collectively called Loya Paktia. It also developed a significant presence in the surrounding provinces of Kabul, Logar, Wardak, Ghazni, and Zabul. Because of the Haqqani Network's longstanding tribal connections to the southeastern region of Afghanistan, the Taliban often acts through the Haqqani Network in these areas. The Haqqani Network leads the Taliban's Miramshah Shura – one of the four councils below the Taliban's leadership council – for Loya Paktia and provinces north towards Kabul. Sirajuddin Haqqani explained in a 2010 interview that the Haqqani Network is "assigned by the Islamic Emirate in the southeastern front of Afghanistan (Paktia, Khost, Paktika) and we have mujahideen members [guerilla fighters] who are carrying out jihad in the north (provinces in northern Afghanistan) and in the south (provinces in southern Afghanistan), and they are operating under the Amirs of the provinces they are under."[40] The Taliban relies on the Haqqani Network to carry out the Taliban's operations within the Haqqani Network's sphere of influence, permitting the Taliban to present a united terrorist front throughout much of the country.

65.    The Taliban's terrorist commanders and shadow governors in the Loya Paktia area are often members of the Haqqani Network. As the U.S. State Department explained when it announced the designation of Mullah Sangeen Zadran as a SDGT, Sangeen Zadran served as the "Shadow Governor for Paktika province, Afghanistan and a commander of the Haqqani

---

[40] Bill Roggio, *Taliban Cooperation With al Qaeda 'Is At The Highest Limits' – Siraj Haqqani*, Long War J. (Apr. 15, 2010).

Network, a Taliban-affiliated group."[41]  Similarly, Abdul Aziz Abbasin is a "key commander in the Haqqani Network" and the Taliban's shadow governor for the Orgun District of Paktika Province.[42]

66.    The Haqqani Network's influence is not limited to the southeastern provinces. There is significant overlap between the broader leadership of the Taliban and the Haqqani Network.  Sirajuddin Haqqani (Jalaluddin's son and successor) has been a member of the Taliban's governing council since at least 2010.  Since 2015 he has been the Deputy Emir of the Taliban, the second-in-command in the Taliban's leadership.  He presently serves as the Taliban's First Deputy Leader of Afghanistan, as well as the Acting Minister of Interior Affairs.

67.    In particular, the Haqqani Network oversaw the Taliban's terrorist attacks on U.S. and Coalition forces in Afghanistan.  Jalaluddin Haqqani planned many of the Taliban's attacks on U.S. forces in the early days following the overthrow of the Taliban government.  In October 2001, a purported Jihadist publication (as published online) described Jalaluddin as the "chief of the Taliban army."[43]  Indeed, in an interview published by Gulf News UAE, the interviewer identified Jalaluddin as "the commander-in-chief of the Taliban's southern military command" – akin to the Taliban army chief – "[and] Mullah Omar's top military strategist and commander."[44]  As for his son, Sirajuddin oversees Taliban terrorist operations throughout the country.

68.    According to Brigadier General Charles H. Cleveland, the chief spokesman for United States and NATO forces in Afghanistan, as of 2016 Sirajuddin Haqqani "increasingly

---

[41] Media Note, *Designation of Haqqani Network Commander Sangeen Zadran*, Office of the Spokesperson, U.S. State Dep't (Aug. 16, 2011).

[42] Bill Roggio, *US adds 5 al Qaeda, Taliban, Haqqani Network, and IMU facilitators to terrorist list*, Long War. J. (Sept. 29, 2011).

[43] Karachi Jasarat, *Chief of Taliban Army Contacts Jamaat-i-Islami Chief* (Oct. 11, 2001).

[44] Aslam Khan, *Taliban Leader Warns Of Long Guerilla War,* Gulf News UAE (Oct. 21, 2001), https://gulfnews.com/uae/taliban-leader-warns-of-long-guerrilla-war-1.427860.

runs the day-to-day military operations for the Taliban, and, we believe, is likely involved in appointing shadow governors."[45]

69.    In 2016, the *New York Times* reported that, according to a senior Taliban commander in southern Afghanistan, Sirajuddin Haqqani was in "constant contact" with Taliban field commanders throughout Afghanistan, including outside the Haqqani Network's area of particular influence in the southeast.[46]  According to the commander, all field commanders must contact Sirajuddin Haqqani for permission before launching a surge or changing fighting plans.

70.    The Haqqani Network also influenced Taliban strategic decisions about which types of attacks to employ.  The Haqqani Network was the first to use suicide bombings in Afghanistan, an innovation that al-Qaeda taught it.  The Haqqani Network also was involved in the rising number of Taliban insider attacks – attacks that strategically undermine relations between U.S. and Afghan forces.  By 2007, Army Lieutenant Colonel Dave Anders, the director of operations for Combined Joint Task Force-82, explained that "Siraj[uddin Haqqani] is the one dictating the new parameters of brutality associated with Taliban senior leadership" employing "[k]idnappings, assassinations, beheading women, indiscriminate killings and suicide bombers."[47]

71.    The Haqqani Network's influence within the broader Taliban is not limited to planning and authorizing attacks.  Even outside of the Haqqani Network's traditional stronghold, its members often commit attacks along with other Taliban terrorists.  For example, in early 2009 the Haqqani Network was operating in the southern provinces of Helmand and Kandahar.  A

---

[45] Mujib Mashal, *Haqqanis Steering Deadlier Taliban in Afghanistan, Officials Say*, N.Y. Times (May 7, 2016).

[46] *Id.*

[47] Bill Roggio, *Targeting Taliban Commander Siraj Haqqani*, Long War J. (Oct. 20, 2007).

spokesman for the Taliban confirmed that the Haqqani Network was operating in "Kandahar as well as nearby Helmand province to provide training, support – particularly in bomb-making – and to carry out attacks."

72.    In 2013, "[a] combined force in … Kandahar [] arrested a Haqqani network facilitator who managed supply routes from [Kandahar City] to other provinces" and was "also [] believed to have been instrumental in the acquisition and distribution of lethal aid to Haqqani fighters for attacks against Afghan and coalition forces."[48]  And a successful 2017 Taliban attack in Kandahar against the U.A.E. ambassador to Afghanistan, Juma Mohammad Abdullah al-Kaabi, has been attributed to the Haqqani Network.

73.    Both Sirajuddin and Jalaluddin Haqqani have confirmed that the Haqqani Network operates as part of the Taliban.[49]  The Taliban, for its part, has likewise rejected claims that the Haqqani Network is a separate entity from the Taliban.[50]

74.    The Haqqani Network is often considered the most radical part of the Taliban. Like the Taliban, it relies on terrorist attacks – including suicide bombings, IED attacks, insider attacks, and complex attacks – rather than open combat.[51]  Like the rest of the Taliban, the Haqqani Network routinely violates the laws of war and does not comply with the Geneva Conventions.

[48] News, U.S. Dep't of Def., *Afghan, Coalition Forces Kill Insurgents in Logar Province* (Feb. 20, 2013), https://archive.defense.gov/news/newsarticle.aspx?id=119329.

[49] Bill Roggio, *US Military Searches for Kabul Attack Network Members*, Long War J. (Apr. 27, 2016).

[50] Bill Roggio, *Taliban Call Haqqani Network a 'Conjured Entity'*, Long War J. (Sept. 9, 2012).

[51] Bill Roggio, *Haqqani Network Promotes Suicide, IED Attacks, and Ambushes in 'Caravan of Heroes'*, Long War J. (Apr. 10, 2015).

75.     Many Plaintiffs, or their family members, were killed or injured in attacks by the Haqqani Network, for which Sirajuddin Haqqani played a key role.  For example, the Haqqani Network conducted terrorist attacks in the Loya Paktia area of Afghanistan.

76.     After Sirajuddin Haqqani helped lead the syndicate's conquest of Afghanistan generally (and Kabul, among other targets, in particular) in 2021, Sirajuddin made public statements in which he effectively admitted, in sum and substance, to having played a key role in each successful syndicate suicide attack targeting the United States in Afghanistan from approximately 2006 through 2021.  When Sirajuddin publicly made such admissions, he did so while he was (as he remains) an international terrorist who was on the FBI's Most Wanted List for his direct involvement in suicide attacks targeting the United States in Afghanistan.

### C.     Al-Qaeda

77.     Osama bin Laden formed al-Qaeda in the late 1980s in Afghanistan in response to the Soviet occupation of Afghanistan.  For decades, al-Qaeda has been a Sunni Islamic terrorist organization with the purpose of destroying the United States.

78.     Following the Soviet withdrawal from Afghanistan, Osama bin Laden began to transform al-Qaeda into a global terrorist group capable of launching attacks around the world. After moving to Sudan in the early 1990s, al-Qaeda's leadership returned to Afghanistan in approximately 1996, where it was sheltered by the Taliban for the next five years.  One scholar who surveyed first-hand accounts of the initial meeting between bin Laden and the Taliban reported that the initial meetings "emphasize[d] the Taliban's humble attitude toward the Saudi

guest and their immediate readiness to serve him."[52]  While under the Taliban's shelter, Osama

bin Laden declared war on the United States in a published fatwa (religious decree) in 1996.[53]

79.    In return for the Taliban's safe harbor, al-Qaeda provided substantial resources to

the Taliban.  By March 1997, Osama bin Laden had met with Mullah Omar personally and

offered to lend his fighters to the Taliban in their battles with northern factions that were still

resisting Taliban rule.  As bin Laden's deputy, Abu Hafs al-Masri, wrote at the time, "The

[Taliban] movement is a capable Islamic entity and it is possible that it can be a turning point for

the betterment of the Islamic world.  The movement needs a vision and it needs support.  It needs

someone who will give it a military strategy.  And it needs to build a military force which is

suitable for the situation in Afghanistan."[54]  Al-Qaeda supplied the strategy and support that the

Taliban needed to morph into a deadly terrorist group capable of inflicting mass casualties on

Americans.  During this time period, al-Qaeda also shared technical knowledge with the Taliban

and reportedly paid the Taliban $10 million to $20 million a year for shelter.

80.    At the same time that bin Laden was cementing his ties with the Taliban, he was

escalating his attacks on the United States.  In 1998, while under the Taliban's protection, he

declared a global jihad calling on all Muslims to kill Americans at any opportunity.

81.    On August 7, 1998, al-Qaeda suicide bombers in explosive-laden trucks

simultaneously attacked the U.S. embassies in Kenya and Tanzania, killing more than 200 people

and wounding more than 5,000 others.  The United States responded two weeks later with

---

[52] Anne Stenersen, *Al-Qaida in Afghanistan* at 58 (Cambridge Univ. Press, 2017)
("Stenersen, *Al-Qaida in Afghanistan*").

[53] *Id.* at 62-63; *Osama bin Laden,* Counter Extremism Project,
https://www.counterextremism.com/extremists/osama-bin-laden; *The 9/11 Commission Report* at
48, National Commission on Terrorist Attacks Upon the United States,
https://govinfo.library.unt.edu/911/report/911Report.pdf.

[54] Stenersen, *Al-Qaida in Afghanistan* at 67-68.

missile strikes on al-Qaeda bases in Afghanistan and demanded that Mullah Omar turn over bin Laden. He refused.

82.     As a result of these and other terrorist attacks, the U.S. State Department designated al-Qaeda as a FTO on October 8, 1999. A week later the U.N. called for sanctions against the Taliban unless it expelled bin Laden from Afghanistan. Again, the Taliban refused.

83.     In the spring of 2001, bin Laden, on behalf of al-Qaeda, pledged an oath of allegiance to Mullah Omar and the Taliban. A few months later, on September 11, 2001, al-Qaeda attacked the World Trade Center in New York and the Pentagon, killing thousands. A third attack, possibly aimed at the White House, was thwarted by passengers aboard United Flight 93. The United States demanded once again that the Taliban turn over bin Laden, and once again the Taliban refused. A U.S.-led coalition invaded Afghanistan in October, and bin Laden and Taliban leaders eventually fled to Pakistan.

84.     Al-Qaeda's and the Taliban's close relationship continued long after September 11. In the years since, it has become clear that the al-Qaeda and Taliban organizations have been fused together: al-Qaeda terrorists have often worked in close conjunction with Taliban terrorists and the affiliated Haqqani Network and Kabul Attack Network. In May 2007, Taliban official Mullah Dadullah said, "[W]e and al-Qaeda are as one."[55] In early 2009, a military-intelligence official was quoted as saying, "The line between the Taliban and al Qaeda is increasingly blurred, especially from a command and control perspective."[56] By the end of that year, Chairman of the Joint Chiefs of Staff Admiral Michael Mullen said the same thing openly. "We are deeply concerned about the growing level of collusion between the Taliban and al

---

[55] Thomas Ruttig, *The Other Side* 23, Afghanistan Analysts Network (July 2009).

[56] Bill Roggio, *Al Qaeda Builds A 'Shadow Army'*, Wash. Times (Feb. 13, 2009).

Qaeda," he told *The Wall Street Journal*.[57]  And as Lieutenant General Ronald L. Burgess, Jr.

reported in a February 2010 Hearing of the Senate Select Committee on Intelligence, "al Qaeda's

propaganda, attack planning and support of the Taliban and Haqqani networks continues."[58]

85.    The Taliban and al-Qaeda have remained intimately intertwined.  For example, in

2015, Osama bin Laden's successor, Ayman Zawahiri, pledged an oath of allegiance to the

recently-installed Taliban leader Mullah Akhtar Mohammad Mansour, who publicly announced

his acceptance of the pledge the following day.[59]  When Mansour was killed in May 2016,

Zawahiri pledged allegiance to his successor, Mawlawi Haibatullah Akhundzada.

86.    Often, individual Taliban leaders are also members of al-Qaeda.  For example, in

late 2011 or early 2012 the Taliban appointed Sheikh Mohammed Aminullah, who has close ties

to al-Qaeda, as the head of its Peshawar Regional Military Shura, which is responsible for

attacks in northern and eastern Afghanistan.

87.    Al-Qaeda also encouraged the Taliban to embrace new terrorist techniques.  In

February 2003, bin Laden issued a recording calling specifically for suicide attacks in

Afghanistan and Iraq.  Taliban terrorists had previously viewed suicide attacks as taboo, but al-

Qaeda convinced them they were religiously permissible.  Indeed, al-Qaeda trumpeted their

ideological success online, announcing, "While suicide attacks were not accepted in the Afghani

culture in the past, they have now become a regular phenomenon!"[60]  With al-Qaeda's

---

[57] Anand Gopal, *Afghan Police Killings Highlight Holes in Security*, Wall St. J. (Dec. 15, 2009).

[58] Transcript, Hr'g Of The Senate Select Committee On Intelligence Subject: "Current And Projected Threats To The United States, Fed. News Serv., 2010 WLNR 27828348 (Feb. 2, 2010).

[59] Thomas Joscelyn & Bill Roggio, *New Taliban Emir Accepts al Qaeda's Oath Of Allegiance*, Long War J. (Aug. 14, 2015).

[60] Brian Glyn Williams, *Suicide Bombings In Afghanistan*, Jane's Islamic Affairs Analyst at 5 (Sept. 2007).

encouragement and training, the number of such suicide attacks in Afghanistan increased from one in 2002, two in 2003, and six in 2004 to 21 in 2005 and more than 100 in 2006. Al-Qaeda further encouraged these attacks by paying the families of suicide bombers in Afghanistan.

88.  Al-Qaeda's role in that suicide-bombing trend was pivotal. As Islamic history scholar Bryan Glyn Williams explained, "Al Qaeda operatives carried out two to three [suicide] bombings per year on the Afghan government and NATO troops from 2002 to 2004 that were meant to demonstrate the effectiveness of this alien tactic to the local Taliban. These demonstrative acts and videos of successful [Al Qaeda] suicide bombings in Iraq seem to have convinced the Taliban to condone the previously taboo tactic of suicide bombing."[61]

89.  Al-Qaeda and the Taliban embraced a "joint cell" model of terrorism not unlike that practiced by Lebanese Hezbollah and the IRGC's proxy in Iraq, Jaysh al-Mahdi. Under the syndicate's "joint cell" approach in Afghanistan, al-Qaeda operatives also served as embedded trainers, intelligence operatives, religious advisers, and attack planners within Taliban cells. These experienced trainers provided instructions, funding, and resources for conducting local and international attacks. By 2005 at the latest, al-Qaeda began bringing instructors from Iraq to train the Taliban how to fight Americans. For example, al-Qaeda members trained Taliban commanders in bomb-making techniques. Al-Qaeda also invited Taliban commanders to Iraq, where they learned how to make armor-penetrating "shaped" charges,[62] a type of IED later known as an EFP. Taliban trainees also learned how to use remote controls and timers, and urban warfare tactics.

---

[61] Bryan Glyn Williams, *Afghanistan Declassified: A Guide to America's Longest War* at 202 (Univ. Penn. Press 2012).

[62] Sami Yousafzai, *Unholy Allies*, Newsweek (Sept. 25, 2005).

90.     The syndicate's "joint cell" strategy mirrored that of the U.S. military.  As one writer put it in November 2009, "Small numbers of Al Qaeda instructors embedded with much larger Taliban units have functioned something like U.S. Special Forces do – as trainers and force multipliers."[63]

91.     The syndicate's "joint cell" approach also benefited from the syndicate's deployment of dual-hatted terrorists who served as sworn members of both al-Qaeda and the Taliban.  While Sirajuddin Haqqani was the most famous such dual-hatted al-Qaeda/Taliban terrorist, he was far from alone – many of the syndicate's other key leaders were similarly dual-hatted.  For example, Sirajuddin's brother, Khalil Haqqani, was – like Sirajuddin – a terrorist who served both al-Qaeda and the Taliban.

92.     Similarly, from the mid-2000s until late 2013, Ahmed Jan Wazir was an al-Qaeda polyterrorist who operated as a member of al-Qaeda and the Taliban's Haqqani Network, in which he provided financial and material support to both organizations.  In 2008, al-Qaeda and the Taliban (including its Haqqani Network) jointly appointed Wazir to lead their combined cell in Ghazni Province, Afghanistan.  Thereafter, Wazir served as an operative for al-Qaeda and the Taliban, including its Haqqani Network, until his death in an American airstrike on November 21, 2013.  Wazir led a joint al-Qaeda/Taliban cell based in Ghazni, which committed attacks against Americans in Ghazni and in Kabul (the latter as a part of the Kabul Attack Network).[64]

---

[63] Peter Bergen, *The Front*, New Republic (Oct. 19, 2009), https://newrepublic.com/article/70376/the-front.

[64] On June 21, 2011, the U.S. designated Wazir as an SDGT.  On January 6, 2012, the United Nations followed the U.S. lead and designated Wazir under its al-Qaeda/Taliban sanctions regime.  In its designation, the U.N. observed that "Taliban and Al-Qaida militants appointed Ahmed Jan Wazir as a Taliban commander in Ghazni Province" "[i]n 2008" and, among other things, that Wazir: served as a "[k]ey commander of the Haqqani Network"; "[a]ct[ed] as deputy, spokesperson and advisor for Haqqani Network senior leader Sirajuddin Jallaloudine Haqqani"; "[l]iaise[d] with the Taliban Supreme Council"; had "travelled abroad" "with senior Haqqani

93.     By the mid-2000s, al-Qaeda's partnership with the Haqqani Network had

facilitated the emergence of a network of al-Qaeda training camps in North Waziristan.

According to a declassified 2008 Defense Intelligence Agency intelligence report:

> [Sirajuddin] Haqqani is also affiliated with the several foreign fighter (ff) training
> facilities that are controlled by or associated with al Qaeda (AQ) in North Waziristan. . . .
> A list and brief description of each facility follows . . .
> A.  Mohammad Taher ((Yuldashov)), leader of the Islamic Movement of Uzbekistan
> (IMU), and his 60 bodyguards are staying at an AQ training center in Miram Shah Dand.
> B.  There is an al-Qaeda training center located at the Miskeen and Khaisur in Miram
> Shah.  Approximately 45 U/I Arabs and Uzbeks receive training there.
> C.  An AQ training facility called "Shaki Massod" is located in Miram Shah and over 200
> AQ members (NFI) reside there; Usama bin Laden has been seen in this center (NFI).
> D.  Another AQ training facility is located at Spin-Qamar in Masood District of Northern
> Waziristan.  Over 80 Arabs receive training there (NFI).[65]

94.     Al-Qaeda has also established multiple training camps within Afghanistan

reportedly "hosted by the Taliban."[66]  One such camp covered nearly 30 square miles and

contained heavy weapons, IED-making material, anti-aircraft weapons, rocket-propelled grenade

systems, machine guns, pistols, rifles, and ammunition.

95.     On top of the myriad forms of support detailed above, al-Qaeda also jointly

planned and authorized terrorist attacks that the Taliban carried out.  Those joint planning

sessions often occurred in meetings in which al-Qaeda, the Taliban, and other members of the al-

---

Network members to the Gulf"; "[l]iaise[d] with and provide[d] Taliban commanders in
Ghazni . . . with money, weapons, communications equipment and supplies"; "conduct[ed]
meetings on behalf of the Haqqani Network"; "represented the Haqqani Network at the Taliban's
shura and has served as a conduit between the Haqqani Network and the Taliban in Ghazni
Province, Afghanistan"; and "provided" other terrorists "in Ghazni Province with money and
supplies, including weapons and communications equipment."

[65] Defense Intelligence Agency, *Location and Activities of the Training Centers Affiliated
with the Haqqani Network, Taliban, and al-Qaeda in Northern Waziristan and Future Plans and
Activities of Sarajuddin ((Haqqani))*, Intelligence Information Report (Apr. 16, 2008),
https://www.dia.mil/FOIA/FOIA-Electronic-Reading-Room/FOIA-Reading-Room-Other-
Available-Records/FileId/155424/.

[66] Thomas Joscelyn and Bill Roggio, *Trump's Bad Deal With The Taliban*, Politico (Mar. 18,
2019).

Qaeda-Taliban syndicate (such as Lashkar-e-Taiba) would confer about particular geographies and targets to attack.[67]  The close operational coordination not only manifested itself in the Kabul Attack Network, but also provided a broader terrorist superstructure that organized the insurgency throughout Afghanistan.  In observing that this superstructure formed an Afghan-Pakistani "syndicate" of sorts, a former CIA analyst and White House advisor documented several notable syndicate-sponsored terrorist attacks in Afghanistan that "demonstrated the intricate connections between al Qaeda and its allies in Pakistan and Afghanistan."[68]  Those intimate connections enhanced the lethality of the overall anti-American insurgency.

96.    Information derived from al-Qaeda and Taliban detainees held at Guantanamo Bay, Cuba ("Gitmo") corroborates the planning and authorization activities of the al-Qaeda-Taliban syndicate.  For example, according to purported Gitmo intelligence files quoted by terrorism experts Bill Roggio and Thomas Joscelyn, one detainee, Abdul Razak, was a "high-level military commander in a newly-conceived 'unification' of Al Qaeda, [Hezb-e-Islami Gulbuddin ("HIG"),] and Taliban forces within Afghanistan," which the leaders of the respective terrorist groups "envisioned [as a] new coalition of HIG, Al Qaeda, and Taliban during a meeting in Pakistan in early spring 2003."[69]  Another purported Gitmo detainee file quoted by Messrs. Roggio and Joscelyn concerning Haroon al Afghani, a dual-hatted al-Qaeda/HIG terrorist, contained the following intelligence report:

> [Afghani] is assessed to have attended a joint operations meeting among extremist elements in mid-2006.  A letter describing an 11 August 2006 meeting between commanders of the Taliban, al Qaeda, [Lashkar e Taiba], . . . and the Islamic Party (probably a reference to the HIG), disclosed that the groups decided to increase terrorist

---

[67] *The al Qaeda-Taliban Connection*.

[68] Bruce Riedel, *Deadly Embrace: Pakistan, America, And The Future Of The Global Jihad* at 100 (Brookings Inst. Press 2d ed. 2011).

[69] *The al Qaeda – Taliban Connection*.

operations in the Kapisa, Kunar, Laghman, and Nangarhar provinces, including suicide bombings, mines, and assassinations.[70]

97.     Taken together, these reports "demonstrate a high degree of collusion between al Qaeda and other terrorist groups" as part of a "jihadist hydra" that shares the "common goal" of seeking to "drive the U.S.-led coalition out of Afghanistan."[71]  One al-Qaeda operative, whom U.S. officials characterized as "an important al-Qaida planner and explosives expert," Ghazwan al-Yemeni, trained Taliban members in Pakistan.[72]

98.     Al-Qaeda terrorists also regularly attacked U.S. forces alongside Taliban terrorists, including in some of the attacks that killed or injured Plaintiffs.  For example, in the early 2000s, al-Qaeda's third-ranking member participated in attacks on Americans in Afghanistan alongside Taliban terrorists under the command of Sirajuddin Haqqani, who was himself a dual-hatted al-Qaeda/Taliban terrorist.

### D.    The Kabul Attack Network

99.     The Kabul Attack Network is the operational manifestation of the terrorist syndicate led by al-Qaeda and the Taliban, including its Haqqani Network.  Specifically, the Kabul Attack Network is a set of terrorist cells focused on attacks against targets in Kabul, the capital, with supporting efforts extending outward into the provinces of Logar, Wardak, Nangarhar, Kapisa, Ghazni, and Zabul.[73]  It is particularly active around key waypoints and transit routes on the way to Kabul, including Wardak, Ghazni City, and areas of Logar Province.

---

[70] *Id.*

[71] *Id.*

[72] Evan F. Kohlmann, *Al-Qa'ida's Yemeni Expatriate Faction in Pakistan*, CTC Sentinel at 11-12 (Jan. 2011).

[73] Bill Roggio, *Karzai Assassination Plotters Part of Kabul Attack Network*, Long War J. (Oct. 5, 2011).

The Kabul Attack Network was responsible for suicide bombings and some other attacks on Americans in these areas.[74]

100.    The Kabul Attack Network's members include the Taliban, including its Haqqani Network, as well as al-Qaeda, Lashkar-e-Taiba, and other terrorists active in the Kabul area.

101.    The Kabul Attack Network is led by Mullah Dawood, the Taliban's shadow governor for Kabul who is also a Taliban and Haqqani Network commander, and Taj Mir Jawad, a top commander in the Haqqani Network with a long history of high-profile attacks.

102.    According to an ISAF public affairs officer, the "Haqqani Network is deeply entrenched in the Kabul Attack Network, specifically in the facilitation of weapons and fighters into the area south of Kabul in Logar and Wardak."[75]  Senior Haqqani Network leaders often planned and executed terrorist attacks by the Kabul Attack Network, including giving tactical advice during attacks.

103.    Many Plaintiffs, or their family members, were killed or injured in attacks by the Kabul Attack Network.

## III.    IRAN PROVIDED MATERIAL SUPPORT TO THE TALIBAN AND AFFILIATED TERRORIST GROUPS IN AFGHANISTAN

### A.    Iran Provided Material Support For Anti-American Terrorism In Afghanistan To Undermine The U.S. Mission There

104.    Although there are religious differences between the Shiite Iranian regime and the Sunni Taliban organization, those differences have not deterred Iran from supporting the Taliban's terrorist activities.  Iran and the Taliban share a core geopolitical aim:  to inflict mass

---

[74] *See* Bill Roggio, *Afghan Intel Captures Taliban Commander Involved In Targeting 'Foreigners' In Kabul*, Long War J. (Mar. 31, 2015).

[75] Bill Roggio, *Senior Taliban Commander Killed in Eastern Afghanistan*, Long War J. (Aug. 20, 2010).

casualties on Americans in the region.  As two military-intelligence scholars observed, "the Iranian regime is ideologically and religiously opposed to the Taliban, [but] it nevertheless views the group as a useful counterweight to the United States."[76]  Similarly, as a Taliban commander stated in 2010 of Iran, "Our religions and our histories are different, but our target is the same – we both want to kill Americans."[77]  Sectarian distinctions aside, Iran has supported and funded attacks by the Taliban on U.S. and allied forces in Afghanistan to harm the United States.

105.    The Fourth Corps of the Qods Force, one of its four regional commands, implements Iran's foreign policy in Afghanistan.[78]  During the relevant timeframe, the Qods Force did so largely by providing the Taliban (including its Haqqani Network) with material support for terrorist attacks in Afghanistan.  The Fourth Corps' al-Ansar Command Center is based in Iran's second-largest city, Mashhad, near the border with Afghanistan.[79]  Mashhad naturally serves as a stopping point between Afghanistan and Tehran, Iran's capital.[80]

106.    Following the September 11 attacks on the United States, Iran met with senior Taliban officials to offer military aid to support the Taliban's fight against U.S.-led Coalition forces.  Iran planned that meeting and hosted it on the Iranian side of the Afghanistan border.  As part of this initial offer of support, Iran pledged to sell advanced military equipment to the Taliban for use against U.S. and allied forces, boasted of Iran's ability to track U.S. troop

---

[76] *Iran's Balancing Act* at 5.

[77] Bill Roggio, *Taliban Commander Linked To Al Qaeda, Iran, Killed In US Strike In Western Afghanistan*, Long War J. (July 16, 2010).

[78] *JIEDDO Report* at 5.

[79] Joseph Felter & Brian Fishman, *Iranian Strategy in Iraq, Politics and "Other Means"* at 18, Combating Terrorism Center (Oct. 13, 2008).

[80] *JIEDDO Report* at 5.

movements, and promised to allow terrorists entering Afghanistan to travel through Iranian territory.  Iran also provided safe harbor to Taliban leaders who escaped U.S. forces.

107.    Immediately following the U.S. invasion of Afghanistan, Iran made a pretense of professing support for the U.S. and NATO mission, but in reality was already seeking to undermine it.  In February 2002, then-CIA Director George J. Tenet testified before Congress that "initial signs of Tehran's cooperation and common cause with us in Afghanistan are being eclipsed by Iranian efforts to undermine US influence there.  While Iran's officials express a shared interest in a stable government in Afghanistan, its security forces appear bent on countering the US presence."[81]  As one scholar explained, Iran "feared the US might use Afghanistan as a base from which to launch a kinetic attack on Iran.  The Taliban insurgency thus became viewed by Tehran as a tool with which to keep American forces preoccupied."[82]

108.    The U.S. government documented Iran's escalating support for the Taliban terrorists over the course of the United States' involvement in Afghanistan.  In April 2007, General Peter Pace, Chairman of the U.S. Joint Chiefs of Staff, stated that Iranian explosives had been captured in Kandahar Province en route to the Taliban but acknowledged that it was not yet entirely clear who within Iran was responsible.[83]  The next day, U.S. Assistant Secretary of State Richard Boucher described "a series of indicators that Iran is maybe getting more involved in an unhealthy way in Afghanistan."[84]

---

[81] *DCI Testimony:  Converging Dangers in a Post 9/11 World*, Central Intelligence Agency (Feb. 6, 2002).

[82] Farhad Rezaei, *Iran and the Taliban:  A Tactical Alliance?*, The Begin-Sadat Center for Strategic Studies (Jan. 15, 2019) ("*Iran and the Taliban:  A Tactical Alliance?*").

[83] Breffni O'Rourke, *Afghanistan:  U.S. Says Iranian-Made Weapons Found*, RadioFreeEurope (Apr. 18, 2007).

[84] *Id.*

109.    Those indicators rapidly grew in intensity, and soon there was little doubt that Iran was actively sponsoring the Taliban terrorists as a core part of its foreign policy.  A purported May 2007 U.S. State Department cable (as published online), for example, reported that Afghan President Hamid Karzai had expressed concerns "over Iranian agents engaging Taliban and supplying them with weapons."  A purported July 2007 U.S. State Department cable (as published online) similarly reported that Taliban terrorists had received "light weapons and grenade launchers [that] bore the stamps of the Iranian factories where they were manufactured, primarily in 2006 and 2007."  The same cable explained that the fighters claimed they had received training in Iran and had been promised access to antiaircraft rockets by Iranian officials.  A purported military-intelligence summary the next month (as published online), reported on an "'alarmingly rapid increase' in Iranian presence in Afghanistan."

110.    When the U.S. Treasury Department designated the Qods Force as a SDGT later in 2007, it confirmed that the "Qods Force provides weapons and financial support to the Taliban to support anti-U.S. and anti-Coalition activity in Afghanistan."[85]  As the designation explained:

> The Qods Force is the Iranian regime's primary instrument for providing lethal support to the Taliban.  The Qods Force provides weapons and financial support to the Taliban to support anti-U.S. and anti-Coalition activity in Afghanistan.  Since at least 2006, Iran has arranged frequent shipments of small arms and associated ammunition, rocket propelled grenades, mortar rounds, 107mm rockets, plastic explosives, and probably man-portable defense systems to the Taliban. . . .  Through Qods Force material support to the Taliban, we believe Iran is seeking to inflict casualties on U.S. and NATO forces.[86]

111.    Similar observations continued in 2008.  According to the U.S. State Department's 2008 Country Reports on Terrorism:  "The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating

---

[85] Press Release, U.S. Treasury Dep't, *Fact Sheet: Designation of Iranian Entities and Individuals for Proliferation Activities and Support for Terrorism* (Oct. 25, 2007).

[86] *Id.*

and supporting terrorists abroad.  The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hizballah, Iraq-based militants, and Taliban fighters in Afghanistan."[87]

112.    The U.S. government's JIEDDO Report recognized that "Iran's intentions are the same in both Iraq and Afghanistan:  to develop, fund and arm proxy networks to leverage against the perceived U.S. aim of pursuing an active regime change doctrine in Iran."[88]  Similarly, a purported January 2010 cable (as published online) explained that senior officials from the United Arab Emirates' State Security Department had accused Iran, through the IRGC, of supporting the Taliban by providing money and weapons, smuggling drugs, and facilitating the movement of Taliban leaders and fighters.

113.    According to another purported February 2010 cable (as published online), President Karzai's Chief of Staff and former Ambassador to Iran, Omar Daudzai, reported that Iranian officials were no longer denying Iran's support for the Taliban in Afghanistan, instead remaining silent in the face of the assertion by the Government of Afghanistan.

114.    By April 2010, the U.S. Department of Defense reported that Iran was "covertly" supporting the Taliban.  "Arms caches have been recently uncovered with large amounts of Iranian manufactured weapons, to include l07mm rockets, which we assess IRGC-QF delivered to Afghan militants." [89]  It further explained that "Tehran's support to the Taliban is inconsistent with their historic enmity, but fits with Iran's strategy of backing many groups to ensure that it will have a positive relationship with the eventual leaders."[90]

---

[87] U.S. State Dep't, *Country Reports on Terrorism 2008* at 182-83 (Apr. 2009).

[88] *JIEDDO Report* at 5.

[89] Unclassified Report on Military Power of Iran (Apr. 2010), https://fas.org/man/eprint/dod_iran_2010.pdf.

[90] *Id.*

115.    On August 3, 2010, the U.S. Treasury Department – pursuant to Executive Order 13224 – designated General Hossein Musavi and Colonel Hasan Mortezavi, senior officials in the Qods Force, as SDGTs for their roles in supporting the Taliban.[91]  General Musavi was the leader of the Ansar Corps, also known as the Fourth Corps, the branch of the Qods Force responsible for carrying out activities within Afghanistan.[92]  The U.S. Treasury Department found that both General Musavi and Colonel Mortezavi, acting in their capacity as senior Qods Force officers, had provided "financial and material support to the Taliban."[93]  The U.S. Treasury Department further concluded that "the IRGC-QF provides select members of the Taliban with weapons, funding, logistics and training."[94]

116.    General David Petraeus, then the Commander of the ISAF, testified before the Senate Armed Services Committee in March 2011 that Iran "without question" supplied weapons, training, and funding to the Taliban in order to "make life difficult" for U.S. and NATO forces in Afghanistan.[95]

117.    When the U.S. Department of Defense provided Congress with its Annual Report on Military Power of Iran in April 2012, it explained that, even though Iranian "support to the Taliban is inconsistent with their historic enmity, it complements Iran's strategy of backing many groups to maximize its influence while also undermining U.S. and [NATO] objectives by

---

[91] Press Release, U.S. Treasury Dep't, *Fact Sheet: U.S. Treasury Department Targets Iran's Support for Terrorism Treasury Announces New Sanctions Against Iran's Islamic Revolutionary Guard Corps-Qods Force Leadership* (Aug. 3, 2010).

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *The Situation in Afghanistan: Hr'g Before the S. Comm. On Armed Services,* 112 Cong. 40 (Mar. 15, 2011) (statement of General David Petraeus), https://www.govinfo.gov/content/pkg/CHRG-112shrg72295/pdf/CHRG-112shrg72295.pdf.

fomenting violence."[96]  By means of "the IRGC-QF, Iran provides material support to terrorist or militant groups such as . . . the Taliban."[97]  The U.S. Department of Defense characterized the support as part of a "grand strategy" to "challeng[e] U.S. influence."[98]

118.    In its 2012 Report on Progress Toward Security and Stability in Afghanistan, the U.S. Department of Defense reported to Congress that Iran was engaging in "covert activities" in Afghanistan, including the provision of weapons and training to the Taliban.[99]  As the report explained, "Since 2007, Coalition and Afghan forces have interdicted several shipments of Iranian weapons.  Tehran's relationship with the insurgency, although not ideologically based, is consistent with Iran's short- to mid-term goal of undermining Coalition efforts and opposing the international military presence in Afghanistan."[100]

119.    Less than two years later, the U.S. Treasury Department concluded that the Qods Force "utilized now-detained Afghan associate, Sayyed Kamal Musavi, who was designated today, to plan and execute attacks in Afghanistan."  It further confirmed that "[t]wo IRGC-QF officers also designated today, Alireza Hemmati and Akbar Seyed Alhosseini, provided logistical support to this associate."[101]  Similarly, according to a Taliban commander in central Afghanistan in 2015:  "Iran supplies us with whatever we need."[102]

---

[96] *Annual Report on Military Power of Iran* 2 (Apr. 2012).

[97] *Id*. at 3.

[98] *Id.* at 1.

[99] U.S. Dep't of Def., *Report on Progress Toward Security and Stability in Afghanistan* at 148 (Dec. 2012).

[100] *Id.*

[101] Press Release, U.S. Treasury Dep't, *Treasury Targets Networks Linked To Iran* (Feb. 6, 2014).

[102] Margherita Stancati, *Iran Backs Taliban With Cash And Arms*, Wall St. J. (June 11, 2015).

120.    In 2016, Taliban leader Mullah Mansour was killed by an American drone strike while returning to Afghanistan from Tehran, where he had been meeting with Iranian security officials, and possibly directly with Ayatollah Ali Khameni, to discuss tactical coordination of Taliban terrorist activities in Afghanistan.  He had made at least two visits to Iran since 2013.

121.    Iran's support for terrorist groups in Afghanistan has continued.  The U.S. State Department stated in 2017 that "Iran is responsible for intensifying multiple conflicts and undermining the legitimate governments of, and U.S. interests in, Afghanistan . . . ."[103]  The U.S. Department of Defense similarly confirmed that Iran "provides some support to the Taliban and Haqqani Network."[104]  In May 2018, U.S. Secretary of State Michael Pompeo publicly accused Iran of supporting the Taliban and other terrorist groups in Afghanistan.[105]

122.    In October 2018, the U.S. Treasury Department, pursuant to Executive Order 13224, designated additional Qods Force officials "for acting for or on behalf of IRGC-QF and for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, the Taliban."[106]  The U.S. Treasury Department acted along with the six other member nations of the Terrorist Financing Targeting Center – a multinational, cooperative effort to combat terrorism in the Middle East.[107]

---

[103] *Country Reports on Terrorism 2017* at Foreword.

[104] U.S. Dep't of Def., *Enhancing Security and Stability in Afghanistan at 21* (June 2017).

[105] *Mike Pompeo speech:  What are the 12 demands given to Iran?*, Al Jazeera News (May 21, 2018).

[106] Press Release, U.S. Treasury Dep't, *Treasury and the Terrorist Financing Targeting Center Partners Sanction Taliban Facilitators and their Iranian Supporters* (Oct. 23, 2018).

[107] *Mike Pompeo speech:  What are the 12 demands given to Iran?*, Al Jazeera News (May 21, 2018); Press Release, U.S. Treasury Dep't, *U.S. and Saudi Arabia to Co-Chair New Terrorist Financing Targeting Center* (May 1, 2017).

123.    The Secretary of Iran's Supreme National Security Council, Ali Shamkhani, publicly acknowledged Iran's support for the Taliban in January 2019, claiming that it was designed to "curb[] the security problems in Afghanistan."[108]

124.    Most recently, the United States has recognized Iran's support of the Taliban in the aftermath of Qassem Soleimani's death.  In a press conference in the days after the killing of General Soleimani, Secretary of State Michael Pompeo publicly accused Iran of backing the Taliban and associated groups, including its Haqqani Network.

125.    Iran, in turn, signaled its continued focus on destabilizing U.S. forces in Afghanistan by appointing General Esmail Ghaani ("Ghaani" or "Qaani"), the former head of Iran's Qods Force branch in Afghanistan, to be the top commander of the Qods Force.  General Ghaani traveled to Afghanistan in 2018 as the deputy ambassador of Iran to Kabul and remains focused on cultivating Iran's relationship with the Taliban in Afghanistan.

126.    The Taliban's reaction to Soleimani's death similarly recognized Iran's support for its terrorist activities.  A Taliban statement condemned American forces for the attack on Soleimani and expressed regret for his "martyrdom."  Additional details were reported in Taliban-aligned publications about Soleimani's support for the Taliban, including his meeting with Taliban delegations in Iran, personally traveling to Afghanistan, and planning attacks.

127.    Consistent with the policy described above, Iran provided material support or resources for the acts of extrajudicial killing that killed or injured Plaintiffs or their family members.  As explained below, that support took the form of "currency . . .  lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications

---

[108] *Iran and the Taliban:  A Tactical Alliance?*

equipment, facilities, weapons, lethal substances, explosives, personnel, . . . and transportation."[109]

B.   **Iran Provided The Taliban With Weapons, Explosives, and Lethal Substances**

128.   Iran provided material support or resources for the acts of extrajudicial killing that killed or injured Plaintiffs, or their family members, by providing (among other things) weapons, explosives, and lethal substances to the Taliban.  Many of the weapons Iran provided were designed to be particularly effective against U.S. and allied forces operating in Afghanistan.  For example, Iran provided the Taliban with anti-tank mines, long range rockets, explosively formed penetrators, suicide vehicle-borne improvised explosive devices, rocket-propelled grenades, and explosives, which were uniquely suited for terrorist attacks on U.S. and allied forces.

129.   U.S. and allied forces seized large caches of Iran-made weapons and explosives in Afghanistan, many of which bore markings of Iranian origin.  A purported April 2007 military-intelligence summary (as published online) reported that "Iranian officials" were sending "to Afghanistan explosive devices and vehicles ready to be used as SVBIEDs [suicide vehicle-borne improvised explosive devices]."[110]  A purported U.S. government document from August of that year (as published online) also reported that the Afghanistan National Police had found evidence of a planning meeting for 25 suicide attacks in which it was stated that "[t]he materials for the bombs will be supplied by Iran Government . . . ."

---

[109] 18 U.S.C. § 2339A(b)(1).

[110] *Afghanistan War Logs:  Anti-aircraft Missiles Clandestinely Transported From Iran Into Afghanistan – US Report*, The Guardian (July 25, 2010) ("*Anti-aircraft Missiles Clandestinely Transported*"); *see also Afghanistan War Logs: Afghan Government Seeking to Maintain Friendly Relations With Iran,* The Guardian (July 25, 2010) (referencing Iranian-made weapons recently found in Kandahar Province).

130.    When the U.S. Treasury Department designated the Qods Force as a SDGT under Executive Order 13224 in October 2007, it specifically documented Iran's frequent shipments of weapons to the Taliban over at least the prior year.  A purported December 2007 military-intelligence summary (as published online) further reported that explosive samples in suicide vests seized from four suicide bombers "tasked by Taliban/Al-Qaeda leaders" with carrying out a suicide attack in Helmand Province were found to be a 92% probability of a match against a suspected sample of Iran-sourced C4.

131.    In January 2008, a raid by Afghan Police in Farah Province discovered 130 mines, of which the Afghan Police concluded 60 were Iran-made.[111]  That same month the U.S. Ambassador to Afghanistan stated that "[t]here is no question that elements of insurgency have received weapons from Iran."[112]

132.    A purported June 2008 U.S. State Department cable (as published online) detailed multiple instances of Iran transferring arms to the Taliban in 2007 and 2008 and concluded analyses of the weaponry "indicate the Taliban had access to Iranian weaponry produced as recently as 2006 and 2007."  Similarly, Afghan forces discovered a large cache of Iran-made explosives hidden near the Bakhshabad Dam in Farah Province in March 2009.  That same month, a purported military-intelligence summary (as published online) indicated that Taliban commanders had obtained portable surface-to-air missiles that originated in Iran.

133.    In May 2009, 44 bricks of Iran-made explosives and dozens of Iran-made mortars were discovered in a Taliban stronghold in Helmand Province.  Also in May 2009, Afghanistan border police intercepted a shipment crossing the Iranian border with dozens of anti-tank mines

---

[111] *JIEDDO Report* at 10.

[112] Brian Bennett, *Iran Raises the Heat in Afghanistan*, Time (Feb. 22, 2008).

bound for Afghan militants.  And in September 2009, a purported military-intelligence summary report (as published online) claimed that the Taliban had received "six very powerful anti-tank mines from Iran" to target ISAF forces or important Afghan Police Officers.  That same year, the U.S. State Department reported that, "[s]ince at least 2006, Iran has arranged arms shipments to select Taliban members, including small arms and associated ammunition, rocket-propelled grenades, mortar rounds, 107mm rockets, and plastic explosives."[113]

134.    By 2011, Taliban terrorists were using Iran-made and -sourced long-range rockets to attack Coalition targets in Afghanistan.  In February 2011, British forces intercepted more than four dozen 122-milimeter rockets in Nimruz Province near the Iranian border, which gave the terrorists roughly double the range to attack Coalition targets.  British Foreign Secretary William Hague stated that "detailed technical analysis, together with the circumstances of the seizure, leave us in no doubt that the weaponry recovered came from Iran."[114]  The *Wall Street Journal* similarly reported that U.S. officials "said the rockets' markings, and the location of their discovery, give them a 'high degree' of confidence that they came from the Revolutionary Guard's overseas unit, the Qods Force."[115]  General Petraeus later confirmed that the Qods Force had supplied these rockets to a "known Taliban facilitator."[116]  The U.S. Department of

---

[113] U.S. State Dep't, *Country Reports on Terrorism 2009* at 192 (Aug. 2010).

[114] Julian Borger & Richard Norton-Taylor, *British Special Forces Seize Iranian Rockets In Afghanistan*, The Guardian (Mar. 9, 2011).

[115] Jay Solomon, *Iran Funnels New Weapons to Iraq and Afghanistan*, Wall St. J. (July 2, 2011).

[116] *The Situation in Afghanistan: Hr'g Before the S. Comm. On Armed Services,* 112 Cong. 40 (Mar. 15, 2011) (statement of General David Petraeus), https://www.govinfo.gov/content/pkg/CHRG-112shrg72295/pdf/CHRG-112shrg72295.pdf.

Defense's 2011 Report on Progress Toward Security and Stability in Afghanistan similarly stated that "[f]orensics teams examined the rockets and confirmed an Iranian point of origin."[117]

135.    In June 2015, Iran hired smugglers to ferry supplies across the Iranian border and deliver them to Taliban units in Afghanistan.  These Iran-supplied weapons included 82mm mortars, light machine guns, AK-47 rifles, rocket-propelled grenades, and materials for making roadside bombs.

136.    Iran also provided EFPs to the Taliban.  EFPs are specially shaped charges, first used by Hezbollah in Lebanon, which typically employ a manufactured concave copper disk and an explosive-packed liner.  Thus, when Iran "smuggled [EFPs] to Afghan insurgents for use against U.S. Forces,"[118] Iran supplied the Taliban with a particularly lethal form of support.  Indeed, Iran and Hezbollah designed EFPs to defeat armored vehicles like the ones used by Coalition forces in Afghanistan.  Those EFPs gave the Taliban a sophisticated anti-American weapon that it could not have obtained or deployed effectively on its own.

137.    The Taliban began using EFPs against Coalition forces in 2007.  A purported May 2007 U.S. State Department cable (as published online) reported on increased IED attacks and noted that recent attacks had been successful against armored ISAF vehicles, which indicated an Iran-supplied EFP.  Just days later another purported cable (as published online) reported that two EFPs had been discovered in April 2007 in Herat Province.  Through the summer of 2007, at least four EFPs were discovered in Herat Province, near other Iranian arms shipments.

138.    A purported September 2007 cable (as published online) stated that British forces "in Farah Province, Afghanistan intercepted an arms convoy they had been tracking from inside

---

[117] U.S. Dep't of Def., *Report on Progress Toward Security and Stability in Afghanistan* at 107 (Apr. 2011).

[118] *JIEDDO Report* at 1.

Iran," which included EFPs "of Iranian origin."  One week later, another purported cable (as published online) reported that, according to the U.K. Ambassador to NATO, Stewart Eldon, analysis of the munitions "showed a clear link to Iran and weapons the Iranian Revolutionary Guard Corps Qods Force has sent to insurgents in Iraq.  In 2008, the United Kingdom obtained proof that Iran was supplying the components for these EFPs.

139.    By 2007, the JIEDDO concluded that Iran was attempting to "inflict psychological damage" on the United States by smuggling EFPs "to Afghan insurgents for use against U.S. Forces."[119]

140.    In Afghanistan, Iranian EFPs earned the nickname "Dragons" because their explosive force was concentrated in the direction of the designated target rather than blasting in all directions and dispersing the impact.[120]  Unlike ordinary mines that cause only minor damage to U.S. military vehicles, a Dragon "superbomb" can completely destroy a military Humvee or tank.[121]  According to one Taliban commander, "If you lay an ordinary mine, it will only cause minor damage to Humvees or one of their big tanks.  But if you lay a[n] [Iranian] Dragon, it will destroy it completely."[122]

141.    On information and belief, many Plaintiffs, or their family members, were severely injured or killed in terrorist attacks using Iran-supplied EFPs.

142.    Iran also provided the Taliban with rockets and similar weapons that were particularly effective against U.S. and Coalition forces.  A purported April 2007 military-

---

[119] *JIEDDO Report* at 3.

[120] Kate Clark, *Taliban Claim Weapons Supplied By Iran*, The Telegraph (Sept. 14, 2008).

[121] *Id.*

[122] Steven O'Hern, *Iran's Revolutionary Guard: The Threat That Grows While America Sleeps* at 112 (Potomac Books, 1st ed. 2012) (internal quotations and citation omitted); Kate Clark, *Taliban claim weapons supplied by Iran*, The Telegraph (Sept. 14, 2008).

intelligence summary (as published online), for example, reported that Iran had purchased anti-aircraft missiles from Algeria in late 2006 and then smuggled them from Mashhad, Iran – where the Fourth Corps of the Qods Force is headquartered – into Afghanistan.[123]  A purported Afghanistan Police Report from the next month (as published online) claimed that Iran intelligence sources issued three anti-aircraft launchers and ammunition to a Taliban commander. A purported March 2009 military intelligence summary (as published online) included intelligence reports of portable surface-to-air missiles arriving in Afghanistan from Iran. Similarly, a purported July 2009 military-intelligence summary (as published online) included reports of two dozen "Stinger" style surface-to-air missiles smuggled from Iran into Afghanistan.

143.    According to a purported September 2009 military-intelligence summary (as published online), Taliban terrorists used an Iran-made rocket-propelled grenade launcher to shoot down Coalition helicopters.  The launcher was marked "Made In Iran."  The launcher was particularly effective because, unlike some other launchers, the Iran-made launcher had a scope that could be adjusted for targeting and was more accurate for shooting helicopters.

### C.    Iran Provided The Taliban With Lodging, Training, Expert Advice or Assistance, Safehouses, Personnel, and Transportation

144.    Iran also provided members of the Taliban and affiliated terrorist groups with lodging, training, expert advice or assistance, safe harbor, and transportation.  Iran taught the Taliban attack techniques that were particularly effective against U.S. and Coalition forces. Without the training from Iran and its agents, the Taliban would not have been able to launch as successful a terrorist campaign against American forces.

---

[123] *Anti-aircraft Missiles Clandestinely Transported.*

145.    According to a purported June 2006 military-intelligence summary (as published online), two members of the Iranian Intelligence Secret Service had arrived in Parwan Province to help Taliban members "in carrying out terrorist attacks against the [Afghanistan] governmental authorities and the [Coalition] members, especially against the Americans forces."[124]  A purported military-intelligence summary later that year (as published online), reported that injured Taliban terrorists were evacuating to Tehran for shelter.[125]

146.    Iran also trained Taliban fighters at camps within Iran.  For example, a purported April 2007 military intelligence summary (as published online) reported that "Iranian officials train" members of the Taliban at an Iranian base in Birjand, Iran, near the Afghanistan border.[126]  A similar purported June 2007 military intelligence summary (as published online) claimed that the IRGC was training roughly 300 foreign fighters in Iran, presumably to fight in Afghanistan.

147.    A purported military-intelligence summary (as published online) from May 2008 claimed that a Taliban commander had traveled to Iran for training and returned with 40 trained terrorists.  Similarly, a military-intelligence summary (as published online) from July 2008 referenced "trained fighters moving in from Iran."  And a purported military-intelligence summary (as published online) from October 2009 likewise reported on the return of a Taliban commander from training "in an Iran army barracks."

148.    Iran provided Taliban terrorists with specialized training on how best to deploy Iran-supplied weapons against U.S. and Coalition forces.  A purported December 2008 military-intelligence summary (as published online) reported on a group of 40 insurgents "who allegedly

---

[124] *Afghanistan War Logs: US Claims Iran Spies Helping Insurgents to Attack Coalition Forces,* The Guardian (July 25, 2010).

[125] *Afghanistan War Logs: Iranians Alleged to Be Sheltering Wounded Taliban Fighters in Tehran*, The Guardian (July 25, 2010).

[126] *Anti-aircraft Missiles Clandestinely Transported.*

were trained in an Iranian Military base" who had plans to attack the capital of Farah Province using weapons that "Iran Intelligence could have provided."  According to a purported April 2009 military-intelligence summary (as published online), Iran was recruiting Taliban terrorists for training in Iran on shooting down Coalition helicopters.  And another purported April 2009 military-intelligence summary (as published online), reported on the return of a Taliban commander after receiving IED-manufacturing training in Iran.

149.    A March 21, 2010 article in London's *The Sunday Times* reported extensively on Iranian security officials training Taliban recruits to "ambush" Coalition forces, attack checkpoints, and use guns and IEDs.  The *Times* interviewed two Taliban commanders – from Wardak and Ghanzi province – who had traveled to Iran with groups of Taliban terrorists for training, which improved their ability to launch lethal attacks on Coalition forces.  According to the commanders, Iran paid for this travel and training.  One commander who received training in Iran observed that the Taliban's and Iran's "religions and . . . histories are different, but our target is the same — we both want to kill Americans."[127]

150.    U.S government officials openly accused the IRGC of training the Taliban.  In an August 2009 report, ISAF Commander General Stanley McChrystal publicly explained that "the Iranian Qods Force is reportedly training fighters for certain Taliban groups and providing other forms of military assistance to insurgents."[128]  In August 2010, the U.S. State Department

---

[127] Miles Amoore, *Iranian military teaches Taliban fighters the art of ambush*, The Times (Mar. 21, 2010).

[128] General Stanley A. McChrystal, Commander's Initial Assessment at 2-11 (Aug. 30, 2009), https://nsarchive.gwu.edu/document/24560-headquarters-international-security-assistance-force-kabul-afghanistan-gen-stanley.  General McChrystal confirmed again in May 2010 that the IRGC was training Afghan fighters in Iran.  *Killing Americans and Their Allies* at 19.

publicly reported to Congress:  "Iran's Qods Force provided training to the Taliban in Afghanistan on small unit tactics, small arms, explosives, and indirect fire weapons . . . ."[129]

151.    From at least 2005 through 2022, the IRGC provided the Taliban, including its Haqqani Network, lodging, training, expert advice or assistance, safe harbor, and transportation. *E.g.*, *Cabrera v. Islamic Republic of Iran*, 2022 WL 2817730, at *11 (D.D.C. July 19, 2022). The IRGC taught the Taliban attack techniques that were particularly effective against U.S. forces.  Without the IRGC's training, the Taliban would not have been able to launch as successful a terrorist campaign against U.S. forces.  The IRGC's training of Taliban terrorists in small unit tactics, small arms, explosives, indirect fire, and other techniques enabled the Taliban to better attack U.S. forces.  The Taliban and its syndicate allies in Afghanistan used the IRGC's training to kill or injure Plaintiffs or their family members.

152.    Iran also facilitated the Taliban's attacks by allowing the Taliban to establish offices in Iran to serve as bases for planning terrorist attacks.  For example, Iran permitted a senior leader of the Taliban to set up an office in Zahedan, Iran, near the borders with Afghanistan and Pakistan.  In or about 2014, the Taliban also opened an office in Mashhad, Iran, where the Fourth Corps of the Qods Force is headquartered.[130]  As of January 2019, the Taliban maintained an office in Tehran, Iran.[131]

---

[129] U.S. State Dep't, *Country Reports on Terrorism 2009* at 192 (Aug. 2010).  In May 2013, the U.S. State Department publicly reported: "the IRGC-QF trained Taliban elements on small unit tactics, small arms, explosives, and indirect fire weapons, such as mortars, artillery, and rockets."  U.S. State Dep't, *Country Reports on Terrorism 2012* at 196 (May 2013).

[130] Oved Lobel, *Afghanistan:  The Forgotten Front Against Iran*, Australia/Israel & Jewish Affairs Council (Nov. 16, 2018).

[131] *Iran and the Taliban:  A Tactical Alliance?*

153.    Iranian fighters also conducted attacks alongside Taliban terrorists.  In an October 2016 Taliban attack in Farah Province, four senior Iranian commandos were killed, and many of the other Taliban dead were taken across the border to Iran for burial.

154.    Mohammad Arif Shahjahan, the governor of Farah Province in western Afghanistan, told Radio Free Afghanistan in 2017 that Taliban leaders had been traveling frequently to Iran, where they received protection and support.[132]  He reported that Qods Force operatives had recently met with and advised the Taliban in Farah Province.[133]

155.    Iran's training of Taliban terrorists in small unit tactics, small arms, explosives, indirect fire, and other techniques enabled the Taliban to more effectively attack U.S. forces and Coalition forces.  The Taliban and affiliated terrorist groups in Afghanistan used Iran's training to kill or injure Plaintiffs or their family members.

156.    Acting through the IRGC, Iran also provided vital intelligence support that directly enabled many of the syndicate attacks that killed and injured Plaintiffs.  In addition to general intelligence that the IRGC provided, e.g., how particular weapons are useful against particular American military vehicles or strategies, the IRGC also provided direct, attack-related intelligence that helped al-Qaeda and the Taliban, including its Haqqani Network, more effectively attack at least three types of targets:  (1) U.S. facilities, e.g., a U.S. Army base in Faryab Province, Afghanistan from which U.S. forces targeted the syndicate terrorists in the area; (2) U.S. allies' facilities, e.g., an Afghan government prison outside of Kabul that detained al-Qaeda, Taliban (including Haqqani Network), and ISIS terrorists; and (3) known transit routes and potential ambush sites relating to the movement of Americans and their allies to and from

---

[132] Abubakar Siddique & Noorullah Shayan, *Mounting Afghan Ire Over Iran's Support For Taliban*, Gandhara (July 31, 2017).

[133] *Id.*

such American and allied facilities.  Unlike the generalized intelligence that the IRGC provided (e.g., how to effectively attack an American armored vehicle), the IRGC's attack-related intelligence as described above was part-and-parcel of the syndicate's attacks.  That was because part of the commission of any terrorist attack involved the specific intelligence as to that exact target location.  Thus, for example, when the IRGC provided satellite imagery, human source intelligence, and signals intelligence to the syndicate that helped the latter better determine the "pattern of life" of U.S. forces – the vital condition precedent to most successful attacks – the IRGC was participating in the attack itself.

157.    The IRGC's unique status as the world's only FTO that openly operated as a terrorist group with a safe haven and the support and technical resources of a nation-state meant that the IRGC's intelligence support was extraordinarily potent – and offered unique, irreplaceable benefits to the syndicate because ***only*** the IRGC had both (a) robust intelligence assets throughout the Middle East, including Afghanistan, which usually entailed a mix of human assets, signals intelligence, and imagery; and (b) the willingness to share such data with the syndicate.  Even the ISI, Pakistan's notorious anti-American agency that also helped the Taliban, usually drew the line at sharing such direct intelligence with the syndicate even though the ISI also financially supported the Taliban.  Simply put, if the IRGC did not provide intelligence aid to the syndicate, the syndicate's IRGC-supported attacks targeting the United States – and injuring Plaintiffs – would have been substantially less effective.

158.    Iran's IRGC-led intelligence aid to syndicate terrorists enabled the syndicate to attack U.S. forces and Afghan government installations alike more effectively, including, but not limited to, U.S. bases and diplomatic facilities, and U.S. and Afghan detention centers and

prisons that housed al-Qaeda, Taliban, and ISIS terrorists.  The syndicate benefited from and used Iran's IRGC-provided intelligence to kill or injure Plaintiffs.

### D.    Iran Provided The Taliban With Financial Support

159.    Iran has also supported the Taliban financially.  On an annual basis, Iran provided large cash payments to the Taliban.  For example, a purported February 2005 military intelligence summary (as published online) reported that the IRGC delivered 10 million Afghanis (worth roughly $212,000) to a location on Iran's border where the money was transferred to four members of a Taliban-associated terrorist group.[134]

160.    Iran also directly paid Taliban insurgents to kill U.S. forces.  Another purported February 2005 military-intelligence summary (as published online) reported on a Taliban group that was being paid by the Iranian government $1,740 for each Afghanistan soldier killed and $3,481 for each Government of Afghanistan official killed.  The report further explained that the group would begin attacking U.S. forces if the attacks on Afghans were successful.[135]  Iran paid Taliban terrorists an estimated $1,000 for each U.S. soldier murdered in Afghanistan and $6,000 for each destroyed American military vehicle.  In one specific example, Taliban fighters received $18,000 from Iran as a reward for an attack in 2010 than killed several Afghan forces and destroyed an American armored vehicle.[136]

161.    Iran also provided funding to individual Taliban commanders, often as they were returning to Afghanistan from training in Iran.  A purported May 2008 military-intelligence summary (as published online) reported on a Taliban leader returning from training in Iran

---

[134] *Afghanistan War Logs:  Iran Smuggles Money into Afghanistan to Fund Insurgents, says US Report*, The Guardian (July 25, 2010).

[135] *Afghanistan War Logs:  Iran Offers Reward for Each Afghan Official and Solider Killed, According to Coalition Report*, The Guardian (July 25, 2010).

[136] Miles Amoore, *Iran pays the Taliban to Kill US Soldiers*, The Times (Sept. 5, 2010).

"along with a considerable amount of money." A purported May 2009 U.S. State Department Cable (as published online) stated that the IRGC may provide Taliban Commander Mullah Sangin with financial support to engage Coalition forces, including U.S. contractors.

162.    Iran has also supported the Taliban's finances by supporting its ability to traffic narcotics, which Taliban terrorists use "to finance their acts of terror and violence."[137]  As the U.S. Treasury Department explained when it designated Iranian Qods Force General Gholamreza Baghbani as a Specially Designated Narcotics Trafficker in March 2012, General Baghbani allowed Afghan narcotics traffickers to smuggle opiates through Iran, facilitated the smuggling of chemicals necessary to produce heroin from Iran into Afghanistan, and helped "facilitate shipments of opium into Iran."[138]  General Baghbani also had narcotics traffickers deliver weapons on his behalf to the Taliban.[139]

163.    As reported in a 2015 *Wall Street Journal* article, a Taliban commander described Iran's financial support of the Taliban in the form of recruiting and paying individual terrorists. The commander explained that he had been detained for working illegally in Iran when he was approached by the IRGC and offered double his previous salary – to be paid by Iran – if he fought with the Taliban in Afghanistan.[140]  And in 2017, officials in Ghor Province accused Iran of financing a Taliban offensive that briefly enabled the Taliban to overtake a key district.[141]

---

[137] Press Release, U.S. Treasury Dep't, *Treasury Targets Taliban Shadow Governor of Helmand Afghanistan as Narcotics Trafficker* (Nov. 15, 2012).

[138] Press Release, U.S. Treasury Dep't, *Treasury Designates Iranian Qods Force General Overseeing Afghan Heroin Trafficking Through Iran* (Mar. 7, 2012).

[139] *Id.*

[140] Margherita Stancati, *Iran Backs Taliban With Cash And Arms*, Wall St. J. (June 11, 2015).

[141] Abubakar Siddique & Noorullah Shayan, *Mounting Afghan Ire Over Iran's Support For Taliban*, Gandhara (July 31, 2017).

E.    **Iran Provided Material Support To Al-Qaeda**

164.    Iran has also long provided material support to al-Qaeda.  As with the Taliban, the sectarian differences between the Shiite regime in Tehran and the Sunni al-Qaeda leadership have not hindered cooperation between the groups.  Whatever their religious differences, both groups share a hatred of America and support anti-American violence.

165.    Iran has supported al-Qaeda's terrorist activities since the early 1990s, when Osama bin Laden lived in Sudan.  Iran, through the IRGC and Hezbollah, served as the original trainer for al-Qaeda with respect to suicide bombings, attacks against large buildings, IEDs, explosives, intelligence, and general attack tactics directed at American interests.  For example, senior al-Qaeda operatives traveled to Iran and Lebanon during this period to camps run by Hezbollah and sponsored by the Qods Force.[142]  The operatives received advanced explosives training that enabled al-Qaeda to launch large-scale terrorist attacks on American embassies in Africa.[143]  According to one senior al-Qaeda official, trainers at this time were already researching how to develop shaped charges to pierce armor plating – the technology later perfected in EFPs.

166.    When the U.S. Department of Justice indicted Osama bin Laden for the 1998 bombings of the U.S. embassies in Kenya and Tanzania, the indictment alleged that al-Qaeda had "forged alliances" with "the government of Iran and its associated terrorist group Hezballah [sic] for the purpose of working together against their perceived common enemies in the West,

---

[142] *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 151 (D.D.C. 2011) ("Prior to al Qaeda members' training in Iran and Lebanon, al Qaeda had not carried out any successful large scale bombings.").

[143] *Id.*

particularly the United States."[144]  This Court subsequently found that Iran had caused the East

Africa Embassy bombings by materially supporting al-Qaeda's operations.[145]

167.    Following the September 11, 2001 attacks on the United States, Iran provided safe

harbor to many senior leaders of al-Qaeda and their families, including Osama bin Laden's sons.

Iran permitted these senior leaders to move freely within Iran in the early 2000s, while they

continued to direct, organize, and support al-Qaeda's terrorist operations throughout the world.[146]

In essence, Iran provided al-Qaeda with a safe location to orchestrate its terrorist activities.[147]

168.    In 2007, Osama bin Laden discouraged terrorist attacks against Iran because of its

historical support for al-Qaeda's terrorist operations, and he referred to Iran as al-Qaeda's "main

artery for funds, personnel, and communication."[148]  Similarly, a letter reportedly written by al-

Qaeda's second-in-command, Ayman al-Zawahiri, thanked the IRGC for its support in setting up

al-Qaeda's terrorist network in Yemen in 2008.

---

[144] Indictment at 3, *United States v. Bin Laden*, No. 1:98-cr-00539-LAK (S.D.N.Y. filed Nov. 5, 1998), Dkt. 1, *available at* https://fas.org/irp/news/1998/11/indict1.pdf.

[145] *See Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 151 (D.D.C. 2011).

[146] *Id.*

[147] *Id.* at 150-51 ("When a foreign sovereign allows a terrorist organization to operate from its territory, this meets the statutory definition of 'safehouse.'").

[148] October 18, 2007 translated letter from Osama bin Laden to Karim at 1, *Bin Laden's Bookshelf*, Office of the Director of National Intelligence, https://www.dni.gov/files/documents/ubl2016/english/Letter%20to%20Karim.pdf.  In March 2016, the Office of the Director of National Intelligence declassified items that had been obtained by U.S. special operators in the May 2011 raid on bin Laden's compound, including this letter.  *See* Bin Laden's Bookshelf, Office of the Director of National Intelligence, https://www.dni.gov/index.php/features/bin-laden-s-bookshelf?start=2.

169.     In 2012, the Council on Foreign Relations reported that "al-Qaeda has stepped up its cooperation on logistics and training with Hezbollah, a radical, Iran-backed Lebanese militia drawn from the minority Shiite strain of Islam."[149]

170.     The U.S. government has also recognized these connections.  In July 2011, the U.S. Treasury Department designated as SDGTs six members of al-Qaeda operating in Iran under a secret agreement between Iran and al-Qaeda.[150]  The agreement provided that al-Qaeda terrorists "must refrain from conducting any operations within Iranian territory and recruiting operatives inside Iran while keeping Iranian authorities informed of their activities.  In return, the Government of Iran gave the Iran-based al-Qa'ida network freedom of operation and uninhibited ability to travel for extremists and their families" and permitted al-Qaeda to use Iran as a "critical transit point for funding to support [al-Qaeda's] activities in Afghanistan and Pakistan."  The Treasury Department found that "Iran's secret deal with al-Qa'ida" facilitated a terrorist network that "serves as the core pipeline through which al-Qa'ida moves money, facilitators and operatives from across the Middle East to South Asia."[151]  Indeed, al-Qaeda has honored its commitment to Iran despite its attacks on Shi'a Muslims elsewhere in the Middle East.

171.     The U.S. Treasury Department has repeatedly recognized the link between al-Qaeda and Iran in making SDGT designations under Executive Order 13224.  In February 2012, the agency designated the Iranian Ministry of Intelligence and Security as a terrorist-sponsoring entity for, among other things, supporting al-Qaeda.[152]  In 2014, the agency likewise designated a

---

[149] *al-Qaeda (a.k.a. al-Qaida, al-Qa`ida)*, Council on Foreign Relations (June 6, 2012), https://www.cfr.org/backgrounder/al-qaeda-aka-al-qaida-al-qaida.

[150] Press Release, U.S. Treasury Dep't, *Treasury Targets Al-Qa`ida Funding and Support Network Using Iran as a Critical Transit Point* (July 28, 2011).

[151] *Id.*

[152] Press Release, U.S. Treasury Dep't, *Treasury Designates Iranian Ministry of Intelligence and Security for Human Rights Abuses and Support for Terrorism* (Feb. 16, 2012).

"key Iran-based" al-Qaeda facilitator who has "assisted extremists and operatives transiting Iran on their way into and out of Pakistan and Afghanistan."[153]

172.    The close relationship between al-Qaeda and Iran has continued in recent years. In 2017, the U.S. State Department explained, "Since at least 2009, Iran has allowed [al-Qaeda] facilitators to operate a core facilitation pipeline through the country, enabling [al-Qaeda] to move funds and fighters to South Asia and Syria."[154]  It further accused Iran of remaining unwilling to bring to justice or identify al-Qaeda members in its custody.[155]  The next year, the agency reaffirmed those conclusions and reiterated Iran's close relationship with al-Qaeda.[156]

173.    As alleged above, the mafia-style "syndicate" of which both the Taliban and al-Qaeda formed a part made attacks by each group more lethal.  Iran's mutually reinforcing support for both the Taliban and al-Qaeda made both organizations more effective.

174.    By supporting al-Qaeda, Iran provided material support and resources for the extrajudicial killings that killed or injured Plaintiffs or members of their families.  Al-Qaeda directly participated in many of the attacks that killed or injured Plaintiffs or their family members.  Moreover, al-Qaeda was closely intertwined with the Taliban and associated terrorist groups acting in Afghanistan, and al-Qaeda planned and authorized the Taliban attacks in which it did not directly participate.  Material support and resources provided to al-Qaeda thus flowed to the Taliban, causing the injury and deaths of Plaintiffs or their family members.

---

[153] Press Release, U.S. Treasury Dep't, *Treasury Targets Networks Linked To Iran* (Feb. 6, 2014).

[154] U.S. State Dep't, *Country Reports on Terrorism 2016* at Iran Section (July 2017).

[155] *Id.*

[156] *Country Reports on Terrorism 2017* at Foreword.

IV.   **THE TALIBAN KILLED AND INJURED PLAINTIFFS THROUGH TERRORIST ATTACKS FOR WHICH IRAN PROVIDED MATERIAL SUPPORT OR RESOURCES**

175.    Plaintiffs are members of the U.S. military, U.S. government employees, or U.S. government contractors serving in Afghanistan, and their family members, who were killed or injured in terrorist attacks conducted by the Taliban in conjunction with al-Qaeda and affiliated terrorist groups.  Iran's provision of material support or resources for these acts of extrajudicial killing caused Plaintiffs' personal injuries or deaths.

**The April 21, 2006 Small Arms Attack in Uruzgan (Clayton Adamkavicius Family)**

176.    On April 21, 2006, the Taliban committed a small arms attack in Uruzgan Province, Afghanistan (the "April 21, 2006 Attack").  The April 21, 2006 Attack constituted an extrajudicial killing.

177.    **Captain Clayton Adamkavicius** served in Afghanistan as a member of the U.S. Army National Guard.  CPT Adamkavicius was injured in the April 21, 2006 Attack.  CPT Adamkavicius died on April 21, 2006 as a result of injuries sustained during the April 21, 2006 Attack.  CPT Adamkavicius was a U.S. national at the time of the attack and his death.

178.    Plaintiff Amanda Adamkavicius is the daughter of CPT Adamkavicius and a U.S. national.

179.    As a result of the April 21, 2006 Attack and CPT Adamkavicius's injuries and death, Plaintiff Amanda Adamkavicius has experienced severe mental anguish, emotional pain and suffering, and the loss of CPT Adamkavicius's society, companionship, and counsel.

180.    As a result of the April 21, 2006 Attack, CPT Adamkavicius was injured in his person and/or property.  Plaintiff Amanda Adamkavicius is a survivor and/or heir of CPT Adamkavicius and is entitled to recover for the damages CPT Adamkavicius sustained.

**The June 6, 2006 IED Attack in Nangarhar (Curtis Mehrer Family)**

181.    On June 6, 2006, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an IED attack in Nangarhar Province, Afghanistan (the "June 6, 2006 Attack"). The June 6, 2006 Attack constituted an extrajudicial killing.

182.    **Corporal Curtis Mehrer** served in Afghanistan as a member of the U.S. Army National Guard. CPL Mehrer was injured in the June 6, 2006 Attack. CPL Mehrer died on June 6, 2006 as a result of injuries sustained during the June 6, 2006 Attack. CPL Mehrer was a U.S. national at the time of the attack and his death.

183.    Plaintiff Joyce Mehrer is the mother of CPL Mehrer and a U.S. national.

184.    Plaintiff Kevin Mehrer is the father of CPL Mehrer and a U.S. national.

185.    Plaintiff Alan Mehrer is the twin brother of CPL Mehrer and a U.S. national.

186.    As a result of the June 6, 2006 Attack and CPL Mehrer's injuries and death, each member of the Mehrer Family has experienced severe mental anguish, emotional pain and suffering, and the loss of CPL Mehrer's society, companionship, and counsel.

187.    As a result of the June 6, 2006 Attack, CPL Mehrer was injured in his person and/or property. The Plaintiff members of the Mehrer Family are the survivors and/or heirs of CPL Mehrer and are entitled to recover for the damages CPL Mehrer sustained.

**The June 13, 2006 Small Arms Attack in Kunar (Russell Durgin Family)**

188.    On June 13, 2006, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "June 13, 2006 Attack"). The June 13, 2006 Attack constituted an extrajudicial killing.

189.    **Sergeant Russell Durgin** served in Afghanistan as a member of the U.S. Army. SGT Durgin was injured in the June 13, 2006 Attack.  SGT Durgin died on June 13, 2006 as a result of injuries sustained during the June 13, 2006 Attack.  SGT Durgin was a U.S. national at the time of the attack and his death.

190.    Plaintiff Sean Durgin is the twin brother of SGT Durgin and a U.S. national.

191.    As a result of the June 13, 2006 Attack and SGT Durgin's injuries and death, Plaintiff Sean Durgin has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Durgin's society, companionship, and counsel.

192.    As a result of the June 13, 2006 Attack, SGT Durgin was injured in his person and/or property.  Plaintiff Sean Durgin is a survivor and/or heir of SGT Durgin and is entitled to recover for the damages SGT Durgin sustained.

**The June 14, 2006 Small Arms Attack in Helmand (Roger Peña Jr. Family)**

193.    On June 14, 2006, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "June 14, 2006 Attack").  The June 14, 2006 Attack constituted an extrajudicial killing.

194.    **Sergeant Roger Peña Jr.** served in Afghanistan as a member of the U.S. Army. SGT Peña was injured in the June 14, 2006 Attack.  SGT Peña died on June 14, 2006 as a result of injuries sustained during the June 14, 2006 Attack.  SGT Peña was a U.S. national at the time of the attack and his death.

195.    Plaintiff Paulita Peña is the mother of SGT Peña and a U.S. national.

196.    As a result of the June 14, 2006 Attack and SGT Peña's injuries and death, Plaintiff Paulita Peña has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Peña's society, companionship, and counsel.

197.    As a result of the June 14, 2006 Attack, SGT Peña was injured in his person and/or property.  Plaintiff Paulita Peña is a survivor and/or heir of SGT Peña and is entitled to recover for the damages SGT Peña sustained.

**The June 24, 2006 Small Arms Attack in Kandahar (Thomas Maholic Family)**

198.    On June 24, 2006, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "June 24, 2006 Attack").  The June 24, 2006 Attack constituted an extrajudicial killing.

199.    **Master Sergeant Thomas Maholic** served in Afghanistan as a member of the U.S. Army.  MSG Maholic was injured in the June 24, 2006 Attack.  MSG Maholic died on June 24, 2006 as a result of injuries sustained during the June 24, 2006 Attack.  MSG Maholic was a U.S. national at the time of the attack and his death.

200.    Plaintiff Wendy Maholic is the widow of MSG Maholic and a U.S. national.

201.    Plaintiff Andrew Maholic is the son of MSG Maholic and a U.S. national.

202.    Plaintiff Michael Maholic is the brother of MSG Maholic and a U.S. national.

203.    As a result of the June 24, 2006 Attack and MSG Maholic's injuries and death, each member of the Maholic Family has experienced severe mental anguish, emotional pain and suffering, and the loss of MSG Maholic's society, companionship, and counsel.

204.    As a result of the June 24, 2006 Attack, MSG Maholic was injured in his person and/or property.  The Plaintiff members of the Maholic Family are the survivors and/or heirs of MSG Maholic and are entitled to recover for the damages MSG Maholic sustained.

**The July 5, 2006 Small Arms Attack in Paktika (Jeffery McLochlin Family)**

205.    On July 5, 2006, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell

committed a small arms attack in Paktika Province, Afghanistan (the "July 5, 2006 Attack").
The July 5, 2006 Attack constituted an extrajudicial killing.[157]

206.    **Sergeant Major Jeffery McLochlin** served in Afghanistan as a member of the
U.S. Army National Guard.  SGM McLochlin was injured in the July 5, 2006 Attack.  SGM
McLochlin died on July 5, 2006 as a result of injuries sustained during the July 5, 2006 Attack.
SGM McLochlin was a U.S. national at the time of the attack and his death.

207.    Plaintiff Nicholle McLochlin is the widow of SGM McLochlin and a U.S.
national.

208.    Plaintiff Darby McLochlin is the son of SGM McLochlin and a U.S. national.

209.    Plaintiff Connor McLochlin is the son of SGM McLochlin and a U.S. national.

210.    Plaintiff Kennedy McLochlin is the daughter of SGM McLochlin and a U.S.
national.

211.    As a result of the July 5, 2006 Attack and SGM McLochlin's injuries and death,
each member of the McLochlin Family has experienced severe mental anguish, emotional pain
and suffering, and the loss of SGM McLochlin's society, companionship, and counsel.

---

[157] Al-Qaeda and the Haqqani Network helped commit the syndicate's attacks in Paktika,
including but not limited to the July 5, 2006 Attack because, *inter alia*, Sirajuddin Haqqani –
who was a dual-hatted member of both organizations, as a sworn al-Qaeda brother who served
on al-Qaeda's military council (al-Qaeda's attack planning committee), as well as the Deputy
Emir of the Taliban and the leader of its Haqqani Network –played a direct and critical role in
sponsoring all syndicate attacks in Paktika at all relevant times.  He did so because Paktika,
along with Paktia and Khost, were the three Afghan provinces for which Sirajuddin effectively
served as shadow commander of all syndicate fighters, given both his positions within the
syndicate as well as al-Qaeda's and the Haqqani Network's longstanding control of Loya Paktia.
In this context, Sirajuddin's substantial role in supporting syndicate attacks in Paktika (as well as
Paktia and Khost) was causal, meaning that Sirajuddin provided funds, weapons, and training to
syndicate terrorists in Paktika (as well as Paktia and Khost), including weapons and training
relevant to the syndicate terrorists who committed the July 5, 2006 Attack.

212.    As a result of the July 5, 2006 Attack, SGM McLochlin was injured in his person and/or property.  The Plaintiff members of the McLochlin Family are the survivors and/or heirs of SGM McLochlin and are entitled to recover for the damages SGM McLochlin sustained.

**The July 16, 2006 Small Arms Attack in Zabul (Robert Kassin Family)**

213.    On July 16, 2006, the Taliban committed a small arms attack in Zabul Province, Afghanistan (the "July 16, 2006 Attack").  The July 16, 2006 Attack constituted an extrajudicial killing.

214.    **Sergeant Robert Kassin** served in Afghanistan as a member of the U.S. Army. SGT Kassin was injured in the July 16, 2006 Attack.  SGT Kassin died on July 16, 2006 as a result of injuries sustained during the July 16, 2006 Attack.  SGT Kassin was a U.S. national at the time of the attack and his death.

215.    Plaintiff Bethaney Beach is the sister of SGT Kassin and a U.S. national.

216.    Plaintiff Katrina Najera is the sister of SGT Kassin and a U.S. national.

217.    Plaintiff Kayla Lane is the stepdaughter of SGT Kassin and a U.S. national.  Ms. Lane lived in the same household as SGT Kassin for a substantial period of time and considered SGT Kassin the functional equivalent of a biological father.

218.    As a result of the July 16, 2006 Attack and SGT Kassin's injuries and death, each member of the Kassin Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Kassin's society, companionship, and counsel.

219.    As a result of the July 16, 2006 Attack, SGT Kassin was injured in his person and/or property.  The Plaintiff members of the Kassin Family are the survivors and/or heirs of SGT Kassin and are entitled to recover for the damages SGT Kassin sustained.

**The July 21, 2006 Mortar Attack in Paktika (Christopher Rafferty Family)**

220.    On July 21, 2006, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a mortar attack in Paktika Province, Afghanistan (the "July 21, 2006 Attack"). The July 21, 2006 Attack constituted an extrajudicial killing.

221.    **First Sergeant Christopher Rafferty** served in Afghanistan as a member of the U.S. Army. 1SG Rafferty was injured in the July 21, 2006 Attack. 1SG Rafferty died on July 21, 2006 as a result of injuries sustained during the July 21, 2006 Attack. 1SG Rafferty was a U.S. national at the time of the attack and his death.

222.    Plaintiff Allyson Rafferty is the sister of 1SG Rafferty and a U.S. national.

223.    As a result of the July 21, 2006 Attack and 1SG Rafferty's injuries and death, Plaintiff Allyson Rafferty has experienced severe mental anguish, emotional pain and suffering, and the loss of 1SG Rafferty's society, companionship, and counsel.

224.    As a result of the July 21, 2006 Attack, 1SG Rafferty was injured in his person and/or property. Plaintiff Allyson Rafferty is a survivor and/or heir of 1SG Rafferty and is entitled to recover for the damages 1SG Rafferty sustained.

**The July 24, 2006 Small Arms Attack in Kunar (David Hierholzer Family)**

225.    On July 24, 2006, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "July 24, 2006 Attack"). The July 24, 2006 Attack constituted an extrajudicial killing.

226.    **Sergeant David Hierholzer** served in Afghanistan as a member of the U.S. Army. SGT Hierholzer was injured in the July 24, 2006 Attack. SGT Hierholzer died on July

24, 2006 as a result of injuries sustained during the July 24, 2006 Attack. SGT Hierholzer was a U.S. national at the time of the attack and his death.

227.    Plaintiff David Hierholzer is the father of SGT Hierholzer and a U.S. national.

228.    As a result of the July 24, 2006 Attack and SGT Hierholzer's injuries and death, Plaintiff David Hierholzer has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Hierholzer's society, companionship, and counsel.

229.    As a result of the July 24, 2006 Attack, SGT Hierholzer was injured in his person and/or property. Plaintiff David Hierholzer is a survivor and/or heir of SGT Hierholzer and is entitled to recover for the damages SGT Hierholzer sustained.

**The August 11, 2006 Complex Attack in Nuristan (James White Jr. Family)**

230.    On August 11, 2006, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a complex attack involving rocket propelled grenade and small arms fire in Nuristan Province, Afghanistan (the "August 11, 2006 Attack"). The August 11, 2006 Attack constituted an extrajudicial killing.

231.    **Private First Class James White Jr.** served in Afghanistan as a member of the U.S. Army. PFC White was injured in the August 11, 2006 Attack. PFC White died on August 11, 2006 as a result of injuries sustained during the August 11, 2006 Attack. PFC White was a U.S. national at the time of the attack and his death.

232.    Plaintiff James White Sr. is the father of PFC White and a U.S. national.

233.    As a result of the August 11, 2006 Attack and PFC White's injuries and death, Plaintiff James White Sr. has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC White's society, companionship, and counsel.

234.    As a result of the August 11, 2006 Attack, PFC White was injured in his person and/or property.  Plaintiff James White Sr. is a survivor and/or heir of PFC White and is entitled to recover for the damages PFC White sustained.

**The September 8, 2006 Suicide Attack in Kabul (Merideth Howard and Robert Paul Families)**

235.    On September 8, 2006, the Taliban (including its Haqqani Network, a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in the Kabul Attack Network committed a suicide car bombing attack in Kabul Province, Afghanistan (the "September 8, 2006 Attack").  The September 8, 2006 Attack constituted an extrajudicial killing.

236.    **Sergeant First Class Merideth Howard** served in Afghanistan as a member of the U.S. Army Reserve.  SFC Howard was injured in the September 8, 2006 Attack.  SFC Howard died on September 8, 2006 as a result of injuries sustained during the September 8, 2006 Attack.  SFC Howard was a U.S. national at the time of the attack and her death.

237.    Plaintiff Hugh Hvolboll is the widower of SFC Howard and a U.S. national.

238.    As a result of the September 8, 2006 Attack and SFC Howard's injuries and death, Plaintiff Hugh Hvolboll has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Howard's society, companionship, and counsel.

239.    As a result of the September 8, 2006 Attack, SFC Howard was injured in her person and/or property.  Plaintiff Hugh Hvolboll is a survivor and/or heir of SFC Howard and is entitled to recover for the damages SFC Howard sustained.

240.    **Staff Sergeant Robert Paul** served in Afghanistan as a member of the U.S. Army Reserve.  SSG Paul was injured in the September 8, 2006 Attack.  SSG Paul died on

September 8, 2006 as a result of injuries sustained during the September 8, 2006 Attack.  SSG Paul was a U.S. national at the time of the attack and his death.

241.    Plaintiff Sheldon Paul is the father of SSG Paul and a U.S. national.

242.    As a result of the September 8, 2006 Attack and SSG Paul's injuries and death, Plaintiff Sheldon Paul has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Paul's society, companionship, and counsel.

243.    As a result of the September 8, 2006 Attack, SSG Paul was injured in his person and/or property.  Plaintiff Sheldon Paul is a survivor and/or heir of SSG Paul and is entitled to recover for the damages SSG Paul sustained.

**The September 15, 2006 Complex Attack in Khost (Bernard Deghand Family)**

244.    On September 15, 2006, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a complex attacked involving small arms fire and a rocket propelled grenade in Khost Province, Afghanistan (the "September 15, 2006 Attack").  The September 15, 2006 Attack constituted an extrajudicial killing.

245.    **Master Sergeant Bernard Deghand** served in Afghanistan as a member of the U.S. Army National Guard.  MSG Deghand was injured in the September 15, 2006 Attack. MSG Deghand died on September 15, 2006 as a result of injuries sustained during the September 15, 2006 Attack.  MSG Deghand was a U.S. national at the time of the attack and his death.

246.    Plaintiff Lisa Deghand is the widow of MSG Deghand and a U.S. national.

247.    Plaintiff Emma Deghand is the daughter of MSG Deghand and a U.S. national.

248.    Plaintiff Jami Deghand is the daughter of MSG Deghand and a U.S. national.

249.    Plaintiff Theresa Tetuan is the sister of MSG Deghand and a U.S. national.

250.    Plaintiff Sandra Short is the sister of MSG Deghand and a U.S. national.

251.    Plaintiff Cheryl Deuser is the sister of MSG Deghand and a U.S. national.

252.    Plaintiff Raymond Deghand Jr. is the brother of MSG Deghand and a U.S. national.

253.    Plaintiff Craig Thurber is the stepson of MSG Deghand and a U.S. national.  Mr. Thurber lived in the same household as MSG Deghand for a substantial period of time and considered MSG Deghand the functional equivalent of a biological father.

254.    As a result of the September 15, 2006 Attack and MSG Deghand's injuries and death, each member of the Deghand Family has experienced severe mental anguish, emotional pain and suffering, and the loss of MSG Deghand's society, companionship, and counsel.

255.    As a result of the September 15, 2006 Attack, MSG Deghand was injured in his person and/or property.  The Plaintiff members of the Deghand Family are the survivors and/or heirs of MSG Deghand and are entitled to recover for the damages MSG Deghand sustained.

**The October 28, 2006 IED Attack in Uruzgan (Kyu Chay Family)**

256.    On October 28, 2006, the Taliban committed an IED attack in Uruzgan Province, Afghanistan (the "October 28, 2006 Attack").  The October 28, 2006 Attack constituted an extrajudicial killing.

257.    **Staff Sergeant Kyu Chay** served in Afghanistan as a member of the U.S. Army. SSG Chay was injured in the October 28, 2006 Attack.  SSG Chay died on October 28, 2006 as a result of injuries sustained during the October 28, 2006 Attack.  SSG Chay was a U.S. national at the time of the attack and his death.

258.    Plaintiff Cathy Chay is the widow of SSG Chay and a U.S. national.

259.    As a result of the October 28, 2006 Attack and SSG Chay's injuries and death, Plaintiff Cathy Chay has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Chay's society, companionship, and counsel.

260.    As a result of the October 28, 2006 Attack, SSG Chay was injured in his person and/or property.  Plaintiff Cathy Chay is a survivor and/or heir of SSG Chay and is entitled to recover for the damages SSG Chay sustained.

**The October 31, 2006 IED Attack in Nuristan (Douglas Sloan Family)**

261.    On October 31, 2006, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an IED attack in Nuristan Province, Afghanistan (the "October 31, 2006 Attack").  The October 31, 2006 Attack constituted an extrajudicial killing.

262.    **Major Douglas Sloan** served in Afghanistan as a member of the U.S. Army. MAJ Sloan was injured in the October 31, 2006 Attack.  MAJ Sloan died on October 31, 2006 as a result of injuries sustained during the October 31, 2006 Attack.  MAJ Sloan was a U.S. national at the time of the attack and his death.

263.    Plaintiff Wendy Sloan is the mother of MAJ Sloan and a U.S. national.

264.    Plaintiff Emory Sloan is the father of MAJ Sloan and a U.S. national.

265.    Plaintiff James Sloan is the brother of MAJ Sloan and a U.S. national.

266.    As a result of the October 31, 2006 Attack and MAJ Sloan's injuries and death, each member of the Sloan Family has experienced severe mental anguish, emotional pain and suffering, and the loss of MAJ Sloan's society, companionship, and counsel.

267.     As a result of the October 31, 2006 Attack, MAJ Sloan was injured in his person and/or property.  The Plaintiff members of the Sloan Family are the survivors and/or heirs of MAJ Sloan and are entitled to recover for the damages MAJ Sloan sustained.

**The November 28, 2006 IED Attack in Logar (Jeffrey Roberson Family)**

268.     On November 28, 2006, the Taliban (including its Haqqani Network) committed an IED attack in Logar Province, Afghanistan (the "November 28, 2006 Attack").  The November 28, 2006 Attack constituted an extrajudicial killing.

269.     **Corporal Jeffrey Roberson** served in Afghanistan as a member of the U.S. Army.  CPL Roberson was injured in the November 28, 2006 Attack.  CPL Roberson died on November 28, 2006 as a result of injuries sustained during the November 28, 2006 Attack.  CPL Roberson was a U.S. national at the time of the attack and his death.

270.     Plaintiff Virginia Jones is the mother of CPL Roberson and a U.S. national.

271.     As a result of the November 28, 2006 Attack and CPL Roberson's injuries and death, Plaintiff Virginia Jones has experienced severe mental anguish, emotional pain and suffering, and the loss of CPL Roberson's society, companionship, and counsel.

272.     As a result of the November 28, 2006 Attack, CPL Roberson was injured in his person and/or property.  Plaintiff Virginia Jones is a survivor and/or heir of CPL Roberson and is entitled to recover for the damages CPL Roberson sustained.

**The May 6, 2007 Small Arms Attack in Kabul (James Harrison Jr. Family)**

273.     On May 6, 2007, the Taliban (including its Haqqani Networka part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack), acting together in the Kabul Attack Network, committed a small arms attack in Kabul Province, Afghanistan (the "May 6, 2007 Attack").  The May 6, 2007 Attack constituted an extrajudicial killing.

274.    **Colonel James Harrison Jr.** served in Afghanistan as a member of the U.S. Army.  COL Harrison was injured in the May 6, 2007 Attack.  COL Harrison died on May 6, 2007 as a result of injuries sustained during the May 6, 2007 Attack.  COL Harrison was a U.S. national at the time of the attack and his death.

275.    Plaintiff Mary Harrison is the widow of COL Harrison and a U.S. national.

276.    Plaintiff Joshua Harrison is the son of COL Harrison and a U.S. national.

277.    As a result of the May 6, 2007 Attack and COL Harrison's injuries and death, each member of the Harrison Family has experienced severe mental anguish, emotional pain and suffering, and the loss of COL Harrison's society, companionship, and counsel.

278.    As a result of the May 6, 2007 Attack, COL Harrison was injured in his person and/or property.  The Plaintiff members of the Harrison Family are the survivors and/or heirs of COL Harrison and are entitled to recover for the damages COL Harrison sustained.

## The May 30, 2007 Rocket Propelled Grenade Attack in Helmand (Christopher Allgaier Family)

279.    On May 30, 2007, the Taliban committed a rocket propelled grenade attack in Helmand Province, Afghanistan (the "May 30, 2007 Attack").  The May 30, 2007 Attack constituted an extrajudicial killing.

280.    **Chief Warrant Officer 3 Christopher Allgaier** served in Afghanistan as a member of the U.S. Army.  CW3 Allgaier was injured in the May 30, 2007 Attack.  CW3 Allgaier died on May 30, 2007 as a result of injuries sustained during the May 30, 2007 Attack.  CW3 Allgaier was a U.S. national at the time of the attack and his death.

281.    Plaintiff Jennifer Allgaier is the widow of CW3 Allgaier and a U.S. national.

282.    Plaintiff Natalie Allgaier is the daughter of CW3 Allgaier and a U.S. national.

283.    Plaintiff Gina Allgaier is the daughter of CW3 Allgaier and a U.S. national.

284.    Plaintiff Joanna Allgaier is the daughter of CW3 Allgaier and a U.S. national.

285.    As a result of the May 30, 2007 Attack and CW3 Allgaier's injuries and death, each member of the Allgaier Family has experienced severe mental anguish, emotional pain and suffering, and the loss of CW3 Allgaier's society, companionship, and counsel.

286.    As a result of the May 30, 2007 Attack, CW3 Allgaier was injured in his person and/or property.  The Plaintiff members of the Allgaier Family are the survivors and/or heirs of CW3 Allgaier and are entitled to recover for the damages CW3 Allgaier sustained.

**The July 23, 2007 IED Attack in Paktika (Travon Johnson Family)**

287.    On July 23, 2007, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack), acting together in the joint al-Qaeda-Taliban cell, committed an IED attack in Paktika Province, Afghanistan (the "July 23, 2007 Attack").  The July 23, 2007 Attack constituted an extrajudicial killing.

288.    **Sergeant Travon Johnson** served in Afghanistan as a member of the U.S. Army. SGT Johnson was injured in the July 23, 2007 Attack.  SGT Johnson died on July 23, 2007 as a result of injuries sustained during the July 23, 2007 Attack.  SGT Johnson was a U.S. national at the time of the attack and his death.

289.    Plaintiff Torrin Johnson is the daughter of SGT Johnson and a U.S. national.

290.    As a result of the July 23, 2007 Attack and SGT Johnson's injuries and death, Plaintiff Torrin Johnson has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Johnson's society, companionship, and counsel.

291.    As a result of the July 23, 2007 Attack, SGT Johnson was injured in his person and/or property.  Plaintiff Torrin Johnson is a survivor and/or heir of SGT Johnson and is entitled to recover for the damages SGT Johnson sustained.

**The July 31, 2007 Small Arms Attack in Kunar (Benjamin Hall Family)**

292.    On July 31, 2007, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell, committed a small arms attack in Kunar Province, Afghanistan (the "July 31, 2007 Attack").  The July 31, 2007 Attack constituted an extrajudicial killing.

293.    **1st Lieutenant Benjamin Hall** served in Afghanistan as a member of the U.S. Army.  1LT Hall was injured in the July 31, 2007 Attack.  1LT Hall died on July 31, 2007 as a result of injuries sustained during the July 31, 2007 Attack.  1LT Hall was a U.S. national at the time of the attack and his death.

294.    Plaintiff John Hall is the father of 1LT Hall and a U.S. national.

295.    As a result of the July 31, 2007 Attack and 1LT Hall's injuries and death, Plaintiff John Hall has experienced severe mental anguish, emotional pain and suffering, and the loss of 1LT Hall's society, companionship, and counsel.

296.    As a result of the July 31, 2007 Attack, 1LT Hall was injured in his person and/or property.  Plaintiff John Hall is a survivor and/or heir of 1LT Hall and is entitled to recover for the damages 1LT Hall sustained.

**The May 26, 2008 Small Arms Attack in Ghazni (Christopher Gathercole Family)**

297.    On May 26, 2008, the Taliban committed a small arms attack in Ghazni Province, Afghanistan (the "May 26, 2008 Attack").  The May 26, 2008 Attack constituted an extrajudicial killing.

298.    **Specialist Christopher Gathercole** served in Afghanistan as a member of the U.S. Army.  SPC Gathercole was injured in the May 26, 2008 Attack.  SPC Gathercole died on May 26, 2008 as a result of injuries sustained during the May 26, 2008 Attack.  SPC Gathercole was a U.S. national at the time of the attack and his death.

299.    Plaintiff Edward Gathercole is the brother of SPC Gathercole and a U.S. national.

300.    As a result of the May 26, 2008 Attack and SPC Gathercole's injuries and death, Plaintiff Edward Gathercole has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Gathercole's society, companionship, and counsel.

301.    As a result of the May 26, 2008 Attack, SPC Gathercole was injured in his person and/or property.  Plaintiff Edward Gathercole is a survivor and/or heir of SPC Gathercole and is entitled to recover for the damages SPC Gathercole sustained.

**The August 1, 2008 IED Attack in Kunar (Jair Garcia Family)**

302.    On August 1, 2008, al-Qaeda and the Taliban, acting together as a joint al-Qaeda-Taliban cell, jointly committed an IED attack in Kunar Province, Afghanistan (the "August 1, 2008 Attack").  The August 1, 2008 Attack constituted an extrajudicial killing.

303.    **Private Jair Garcia** served in Afghanistan as a member of the U.S. Army.  PV1 Garcia was injured in the August 1, 2008 Attack.  PVT Garcia died on August 1, 2008 as a result of injuries sustained during the August 1, 2008 Attack.  PVT Garcia was a U.S. national at the time of the attack and his death.

304.    Plaintiff Noah Garcia is the son of PVT Garcia and a U.S. national.

305.    As a result of the August 1, 2008 Attack and PVT Garcia's injuries and death, Plaintiff Noah Garcia has experienced severe mental anguish, emotional pain and suffering, and the loss of PVT Garcia's society, companionship, and counsel.

306.    As a result of the August 1, 2008 Attack, PVT Garcia was injured in his person and/or property.  Plaintiff Noah Garcia is a survivor and/or heir of PVT Garcia and is entitled to recover for the damages PVT Garcia sustained.

**The March 27, 2009 Insider Attack in Balkh (Francis Toner IV Family)**

307.    On March 27, 2009, the Taliban committed an insider attack in Balkh Province, Afghanistan (the "March 27, 2009 Attack").  The March 27, 2009 Attack constituted an extrajudicial killing.

308.    **Lieutenant Junior Grade Francis Toner IV** served in Afghanistan as a member of the U.S. Navy.  LTJG Toner was injured in the March 27, 2009 Attack.  LTJG Toner died on March 27, 2009 as a result of injuries sustained during the March 27, 2009 Attack.  LTJG Toner was a U.S. national at the time of the attack and his death.

309.    Plaintiff Brooke Toner is the widow of LTJG Toner and a U.S. national.

310.    Plaintiff Rebecca Toner is the mother of LTJG Toner and a U.S. national.

311.    Plaintiff Francis Toner III is the father of LTJG Toner and a U.S. national.

312.    Plaintiff Amanda Toner is the sister of LTJG Toner and a U.S. national.

313.    Plaintiff Sharon Toner is the stepmother of LTJG Toner and a U.S. national.  Ms. Toner lived in the same household as LTJG Toner for a substantial period of time and considered LTJG Toner the functional equivalent of a biological son.

314.    Plaintiff John Toner is the brother of LTJG Toner and a U.S. national.

315.    As a result of the March 27, 2009 Attack and LTJG Toner's injuries and death, each member of the Toner Family has experienced severe mental anguish, emotional pain and suffering, and the loss of LTJG Toner's society, companionship, and counsel.

316.    As a result of the March 27, 2009 Attack, LTJG Toner was injured in his person and/or property.  The Plaintiff members of the Toner Family are the survivors and/or heirs of LTJG Toner and are entitled to recover for the damages LTJG Toner sustained.

**The May 15, 2009 Small Arms Attack in Wardak (Carlie Lee III Family)**

317.    On May 15, 2009, the Taliban (including its Haqqani Network) committed a small arms attack in Wardak Province, Afghanistan (the "May 15, 2009 Attack").  The May 15, 2009 Attack constituted an extrajudicial killing.

318.    **Sergeant Carlie Lee III** served in Afghanistan as a member of the U.S. Army. SGT Lee was injured in the May 15, 2009 Attack.  SGT Lee died on May 15, 2009 as a result of injuries sustained during the May 15, 2009 Attack.  SGT Lee was a U.S. national at the time of the attack and his death.

319.    Plaintiff Spring Lee is the sister of SGT Lee and a U.S. national.

320.    As a result of the May 15, 2009 Attack and SGT Lee's injuries and death, Plaintiff Spring Lee has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Lee's society, companionship, and counsel.

321.    As a result of the May 15, 2009 Attack, SGT Lee was injured in his person and/or property.  Plaintiff Spring Lee is a survivor and/or heir of SGT Lee and is entitled to recover for the damages SGT Lee sustained.

**The August 29, 2009 Small Arms Attack in Paktika (Eric Hario Family)**

322.    On August 29, 2009, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Paktika Province, Afghanistan (the "August 29, 2009 Attack"). The August 29, 2009 Attack constituted an extrajudicial killing.

323. **Private First Class Eric Hario** served in Afghanistan as a member of the U.S. Army. PFC Hario was injured in the August 29, 2009 Attack. PFC Hario died on August 29, 2009 as a result of injuries sustained during the August 29, 2009 Attack. PFC Hario was a U.S. national at the time of the attack and his death.

324. Plaintiff Rebecca Hario is the mother of PFC Hario and a U.S. national.

325. Plaintiff James Hario is the father of PFC Hario and a U.S. national.

326. Plaintiff Mark Hario is the brother of PFC Hario and a U.S. national.

327. As a result of the August 29, 2009 Attack and PFC Hario's injuries and death, each member of the Hario Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Hario's society, companionship, and counsel.

328. As a result of the August 29, 2009 Attack, PFC Hario was injured in his person and/or property. The Plaintiff members of the Hario Family are the survivors and/or heirs of PFC Hario and are entitled to recover for the damages PFC Hario sustained.

**The September 15, 2009 IED Attack in Ghor (Shawn McCloskey Family)**

329. On September 15, 2009, the Taliban committed an IED attack in Ghor Province, Afghanistan (the "September 15, 2009 Attack"). The September 15, 2009 Attack constituted an extrajudicial killing.

330. **Sergeant First Class Shawn McCloskey** served in Afghanistan as a member of the U.S. Army. SFC McCloskey was injured in the September 15, 2009 Attack. SFC McCloskey died on September 16, 2009 as a result of injuries sustained during the September 15, 2009 Attack. SFC McCloskey was a U.S. national at the time of the attack and his death.

331. Plaintiff Jessica McCloskey is the widow of SFC McCloskey and a U.S. national.

332.    Plaintiff K.M., by and through her next friend Jessica McCloskey, is the minor daughter of SFC McCloskey.  She is a U.S. national.

333.    Plaintiff C.M., by and through his next friend Jessica McCloskey, is the minor son of SFC McCloskey.  He is a U.S. national.

334.    As a result of the September 15, 2009 Attack and SFC McCloskey's injuries and death, each member of the McCloskey Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC McCloskey's society, companionship, and counsel.

335.    As a result of the September 15, 2009 Attack, SFC McCloskey was injured in his person and/or property.  The Plaintiff members of the McCloskey Family are the survivors and/or heirs of SFC McCloskey and are entitled to recover for the damages SFC McCloskey sustained.

**The October 1, 2009 Small Arms Attack in Parwan (Russell Hercules Jr. Family)**

336.    On October 1, 2009, the Haqqani Network, a part of the Taliban, committed a small arms attack in Parwan Province, Afghanistan (the "October 1, 2009 Attack").  The October 1, 2009 Attack constituted an extrajudicial killing.

337.    **Specialist Russell Hercules Jr.** served in Afghanistan as a member of the U.S. Army.  SPC Hercules was injured in the October 1, 2009 Attack.  SPC Hercules died on October 1, 2009 as a result of injuries sustained during the October 1, 2009 Attack.  SPC Hercules was a U.S. national at the time of the attack and his death.

338.    Plaintiff Cheryl Tipton is the mother of SPC Hercules and a U.S. national.

339.    Plaintiff Russell Hercules Sr. is the father of SPC Hercules and a U.S. national.

340.    As a result of the October 1, 2009 Attack and SPC Hercules's injuries and death, each member of the Hercules Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Hercules's society, companionship, and counsel.

341.    As a result of the October 1, 2009 Attack, SPC Hercules was injured in his person and/or property.  The Plaintiff members of the Hercules Family are the survivors and/or heirs of SPC Hercules and are entitled to recover for the damages SPC Hercules sustained.

**The October 2, 2009 Small Arms Attack in Wardak (Aaron Smith Family)**

342.    On October 2, 2009, the Taliban (including its Haqqani Network) committed a small arms attack in Wardak Province, Afghanistan (the "October 2, 2009 Attack").  The October 2, 2009 Attack constituted an extrajudicial killing.

343.    **Sergeant Aaron Smith** served in Afghanistan as a member of the U.S. Army. SGT Smith was injured in the October 2, 2009 Attack.  SGT Smith died on October 2, 2009 as a result of injuries sustained during the October 2, 2009 Attack.  SGT Smith was a U.S. national at the time of the attack and his death.

344.    Plaintiff Ann Jones is the mother of SGT Smith and a U.S. national.

345.    Plaintiff Christopher Smith is the father of SGT Smith and a U.S. national.

346.    Plaintiff Logan Smith is the brother of SGT Smith and a U.S. national.

347.    As a result of the October 2, 2009 Attack and SGT Smith's injuries and death, each member of the Smith Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Smith's society, companionship, and counsel.

348.    As a result of the October 2, 2009 Attack, SGT Smith was injured in his person and/or property.  The Plaintiff members of the Smith Family are the survivors and/or heirs of SGT Smith and are entitled to recover for the damages SGT Smith sustained.

**The October 31, 2009 IED Attack in Helmand (Cesar Ruiz Family)**

349.    On October 31, 2009, the Taliban committed an IED (house borne) attack in Helmand Province, Afghanistan (the "October 31, 2009 Attack"). The October 31, 2009 Attack constituted an extrajudicial killing.

350.    **Sergeant Cesar Ruiz** served in Afghanistan as a member of the U.S. Marine Corps Reserve. Sgt Ruiz was injured in the October 31, 2009 Attack. Sgt Ruiz died on October 31, 2009 as a result of injuries sustained during the October 31, 2009 Attack. Sgt Ruiz was a member of the armed forces and a permanent resident at the time of the attack and posthumously granted U.S. citizenship after his death.

351.    Plaintiff Dora Arnold is the sister of Sgt Ruiz and a naturalized U.S. national.

352.    As a result of the October 31, 2009 Attack and Sgt Ruiz's injuries and death, Plaintiff Dora Arnold has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt Ruiz's society, companionship, and counsel.

353.    As a result of the October 31, 2009 Attack, Sgt Ruiz was injured in his person and/or property. Plaintiff Dora Arnold is a survivor and/or heir of Sgt Ruiz and is entitled to recover for the damages Sgt Ruiz sustained.

**The November 22, 2009 Small Arms Attack in Helmand (Nicholas Hand Family)**

354.    On November 22, 2009, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "November 22, 2009 Attack"). The November 22, 2009 Attack constituted an extrajudicial killing.

355.    **Lance Corporal Nicholas Hand** served in Afghanistan as a member of the U.S. Marine Corps. LCpl Hand was injured in the November 22, 2009 Attack. LCpl Hand died on

November 22, 2009 as a result of injuries sustained during the November 22, 2009 Attack. LCpl Hand was a U.S. national at the time of the attack and his death.

356. Plaintiff Aaron Hand is the brother of LCpl Hand and a U.S. national.

357. As a result of the November 22, 2009 Attack and LCpl Hand's injuries and death, Plaintiff Aaron Hand has experienced severe mental anguish, emotional pain and suffering, and the loss of LCpl Hand's society, companionship, and counsel.

358. As a result of the November 22, 2009 Attack, LCpl Hand was injured in his person and/or property. Plaintiff Aaron Hand is a survivor and/or heir of LCpl Hand and is entitled to recover for the damages LCpl Hand sustained.

**The January 13, 2010 Small Arms Attack in Kunar (Lucas Beachnaw Family)**

359. On January 13, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "January 13, 2010 Attack"). The January 13, 2010 Attack constituted an extrajudicial killing.

360. **Sergeant Lucas Beachnaw** served in Afghanistan as a member of the U.S. Army. SGT Beachnaw was injured in the January 13, 2010 Attack. SGT Beachnaw died on January 13, 2010 as a result of injuries sustained during the January 13, 2010 Attack. SGT Beachnaw was a U.S. national at the time of the attack and his death.

361. Plaintiff Jeanne Beachnaw is the mother of SGT Beachnaw and a U.S. national.

362. Plaintiff Jamie Bourquin is the sister of SGT Beachnaw and a U.S. national.

363. As a result of the January 13, 2010 Attack and SGT Beachnaw's injuries and death, each member of the Beachnaw Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Beachnaw's society, companionship, and counsel.

364.     As a result of the January 13, 2010 Attack, SGT Beachnaw was injured in his person and/or property.  The Plaintiff members of the Beachnaw Family are the survivors and/or heirs of SGT Beachnaw and are entitled to recover for the damages SGT Beachnaw sustained.

**The February 13, 2010 Small Arms Attack in Helmand (Jacob Turbett Family)**

365.     On February 13, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "February 13, 2010 Attack").  The February 13, 2010 Attack constituted an extrajudicial killing.

366.     **Corporal Jacob Turbett** served in Afghanistan as a member of the U.S. Marine Corps.  Cpl Turbett was injured in the February 13, 2010 Attack.  Cpl Turbett died on February 13, 2010 as a result of injuries sustained during the February 13, 2010 Attack.  Cpl Turbett was a U.S. national at the time of the attack and his death.

367.     Plaintiff Crystal Turbett is the widow of Cpl Turbett and a U.S. national.

368.     As a result of the February 13, 2010 Attack and Cpl Turbett's injuries and death, Plaintiff Crystal Turbett has experienced severe mental anguish, emotional pain and suffering, and the loss of Cpl Turbett's society, companionship, and counsel.

369.     As a result of the February 13, 2010 Attack, Cpl Turbett was injured in his person and/or property.  Plaintiff Crystal Turbett is a survivor and/or heir of Cpl Turbett and is entitled to recover for the damages Cpl Turbett sustained.

**The February 17, 2010 Small Arms Attack in Helmand (Eric Currier Family)**

370.     On February 17, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "February 17, 2010 Attack").  The February 17, 2010 Attack constituted an extrajudicial killing.

371.    **Private First Class Eric Currier** served in Afghanistan as a member of the U.S. Marine Corps.  PFC Currier was injured in the February 17, 2010 Attack.  PFC Currier died on February 17, 2010 as a result of injuries sustained during the February 17, 2010 Attack.  PFC Currier was a U.S. national at the time of the attack and his death.

372.    Plaintiff Helen Boudreau is the mother of PFC Currier and a U.S. national.

373.    Plaintiff Marlayna Currier is the sister of PFC Currier and a U.S. national.

374.    Plaintiff Dilan Currier is the brother of PFC Currier and a U.S. national.

375.    Plaintiff Kevin Boudreau Sr. is the stepfather of PFC Currier and a U.S. national. Mr. Boudreau lived in the same household as PFC Currier for a substantial period of time and considered PFC Currier the functional equivalent of a biological son.

376.    Plaintiff Kevin Boudreau Jr. is the stepbrother of PFC Currier and a U.S. national. Mr. Boudreau lived in the same household as PFC Currier for a substantial period of time and considered PFC Currier the functional equivalent of a biological brother.

377.    As a result of the February 17, 2010 Attack and PFC Currier's injuries and death, each member of the Currier Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Currier's society, companionship, and counsel.

378.    As a result of the February 17, 2010 Attack, PFC Currier was injured in his person and/or property.  The Plaintiff members of the Currier Family are the survivors and/or heirs of PFC Currier and are entitled to recover for the damages PFC Currier sustained.

**The February 19, 2010 Small Arms Attack in Helmand (Joshua Birchfield Family)**

379.    On February 19, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "February 19, 2010 Helmand Attack").  The February 19, 2010 Helmand Attack constituted an extrajudicial killing.

380.   **Lance Corporal Joshua Birchfield** served in Afghanistan as a member of the U.S. Marine Corps.  LCpl Birchfield was injured in the February 19, 2010 Helmand Attack. LCpl Birchfield died on February 19, 2010 as a result of injuries sustained during the February 19, 2010 Helmand Attack.  LCpl Birchfield was a U.S. national at the time of the attack and his death.

381.   Plaintiff Emily Birchfield is the sister of LCpl Birchfield and a U.S. national.

382.   As a result of the February 19, 2010 Helmand Attack and LCpl Birchfield's injuries and death, Plaintiff Emily Birchfield has experienced severe mental anguish, emotional pain and suffering, and the loss of LCpl Birchfield's society, companionship, and counsel.

383.   As a result of the February 19, 2010 Helmand Attack, LCpl Birchfield was injured in his person and/or property.  Plaintiff Emily Birchfield is a survivor and/or heir of LCpl Birchfield and is entitled to recover for the damages LCpl Birchfield sustained.

**The February 19, 2010 Small Arms Attack in Farah (Gregory Stultz Family)**

384.   On February 19, 2010, the Taliban committed a small arms attack in Farah Province, Afghanistan (the "February 19, 2010 Farah Attack").  The February 19, 2010 Farah Attack constituted an extrajudicial killing.

385.   **Corporal Gregory Stultz** served in Afghanistan as a member of the U.S. Marine Corps.  Cpl Stultz was injured in the February 19, 2010 Farah Attack.  Cpl Stultz died on February 19, 2010 as a result of injuries sustained during the February 19, 2010 Farah Attack. Cpl Stultz was a U.S. national at the time of the attack and his death.

386.   Plaintiff William Stultz Jr. is the father of Cpl Stultz and a U.S. national.

387.     As a result of the February 19, 2010 Farah Attack and Cpl Stultz's injuries and death, Plaintiff William Stultz Jr. has experienced severe mental anguish, emotional pain and suffering, and the loss of Cpl Stultz's society, companionship, and counsel.

388.     As a result of the February 19, 2010 Farah Attack, Cpl Stultz was injured in his person and/or property.  Plaintiff William Stultz Jr. is a survivor and/or heir of Cpl Stultz and is entitled to recover for the damages Cpl Stultz sustained.

**The March 1, 2010 IED Attack in Kandahar (Ian Gelig Family)**

389.     On March 1, 2010, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "March 1, 2010 Attack").  The March 1, 2010 Attack constituted an extrajudicial killing.

390.     **Sergeant Ian Gelig** served in Afghanistan as a member of the U.S. Army.  SGT Gelig was injured in the March 1, 2010 Attack.  SGT Gelig died on March 1, 2010 as a result of injuries sustained during the March 1, 2010 Attack.  SGT Gelig was a U.S. national at the time of the attack and his death.

391.     Plaintiff Delia Gelig is the mother of SGT Gelig and a U.S. national.

392.     Plaintiff Tim Gelig is the father of SGT Gelig and a U.S. national.

393.     As a result of the March 1, 2010 Attack and SGT Gelig's injuries and death, each member of the Gelig Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Gelig's society, companionship, and counsel.

394.     As a result of the March 1, 2010 Attack, SGT Gelig was injured in his person and/or property.  The Plaintiff members of the Gelig Family are the survivors and/or heirs of SGT Gelig and are entitled to recover for the damages SGT Gelig sustained.

**The March 7, 2010 Small Arms Attack in Kunar (Nicholas Cook Family)**

395.    On March 7, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "March 7, 2010 Attack").  The March 7, 2010 Attack constituted an extrajudicial killing.

396.    **Private First Class Nicholas Cook** served in Afghanistan as a member of the U.S. Army.  PFC Cook was injured in the March 7, 2010 Attack.  PFC Cook died on March 7, 2010 as a result of injuries sustained during the March 7, 2010 Attack.  PFC Cook was a U.S. national at the time of the attack and his death.

397.    Plaintiff Jacklynn Martinez is the sister of PFC Cook and a U.S. national.

398.    As a result of the March 7, 2010 Attack and PFC Cook's injuries and death, Plaintiff Jacklynn Martinez has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Cook's society, companionship, and counsel.

399.    As a result of the March 7, 2010 Attack, PFC Cook was injured in his person and/or property.  Plaintiff Jacklynn Martinez is a survivor and/or heir of PFC Cook and is entitled to recover for the damages PFC Cook sustained.

**The March 16, 2010 Suicide Attack in Kandahar (William Ross III)**

400.    On March 16, 2010, the Taliban committed a suicide bombing attack in Kandahar Province, Afghanistan (the "March 16, 2010 Attack").  The March 16, 2010 Attack constituted an extrajudicial killing.

401.    **Specialist William Ross III** served in Afghanistan as a member of the U.S. Army.  SPC Ross was injured in the March 16, 2010 Attack.  The attack severely wounded SPC Ross, who suffered from a shrapnel wound to his left shoulder which destroyed his collarbone.

As a result, he endured multiple surgeries and numerous painful "washouts," which involved having sterile solutions flush out shrapnel from his wounds.

402.    Plaintiff SPC Ross was a U.S. national at the time of the attack and remains one today.

403.    As a result of the March 16, 2010 Attack and SPC Ross's injuries, SPC Ross has experienced severe mental anguish and emotional pain and suffering.

**The March 30, 2010 IED Attack in Kandahar (Scott Brunkhorst Family)**

404.    On March 30, 2010, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "March 30, 2010 Attack"). The March 30, 2010 Attack constituted an extrajudicial killing.

405.    **Staff Sergeant Scott Brunkhorst** served in Afghanistan as a member of the U.S. Army. SSG Brunkhorst was injured in the March 30, 2010 Attack. SSG Brunkhorst died on March 30, 2010 as a result of injuries sustained during the March 30, 2010 Attack. SSG Brunkhorst was a U.S. national at the time of the attack and his death.

406.    Plaintiff Krystal Brunkhorst is the widow of SSG Brunkhorst and a U.S. national.

407.    Plaintiff K.B., by and through her next friend Krystal Brunkhorst, is the minor daughter of SSG Brunkhorst. She is a U.S. national.

408.    As a result of the March 30, 2010 Attack and SSG Brunkhorst's injuries and death, each member of the Brunkhorst Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Brunkhorst's society, companionship, and counsel.

409.    As a result of the March 30, 2010 Attack, SSG Brunkhorst was injured in his person and/or property. The Plaintiff members of the Brunkhorst Family are the survivors and/or heirs of SSG Brunkhorst and are entitled to recover for the damages SSG Brunkhorst sustained.

**The April 8, 2010 IED Attack in Paktika (Jonathon Hall Family)**

410.    On April 8, 2010, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an IED attack in Paktika Province, Afghanistan (the "April 8, 2010 Attack").  The April 8, 2010 Attack constituted an extrajudicial killing.

411.    **Private First Class Jonathon Hall** served in Afghanistan as a member of the U.S. Army.  PFC Hall was injured in the April 8, 2010 Attack.  PFC Hall died on April 8, 2010 as a result of injuries sustained during the April 8, 2010 Attack.  PFC Hall was a U.S. national at the time of the attack and his death.

412.    Plaintiff Steven Hall is the father of PFC Hall and a U.S. national.

413.    Plaintiff Robynn Harrison is the mother of PFC Hall and a U.S. national.

414.    Plaintiff Tristyn Harris is the sister of PFC Hall and a U.S. national.

415.    As a result of the April 8, 2010 Attack and PFC Hall's injuries and death, each member of the Hall Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Hall's society, companionship, and counsel.

416.    As a result of the April 8, 2010 Attack, PFC Hall was injured in his person and/or property.  The Plaintiff members of the Hall Family are the survivors and/or heirs of PFC Hall and are entitled to recover for the damages PFC Hall sustained.

**The April 23, 2010 Small Arms Attack in Logar (Ronald Kubik Family)**

417.    On April 23, 2010, the Taliban (including its Haqqani Network) committed a small arms attack in Logar Province, Afghanistan (the "April 23, 2010 Attack").  The April 23, 2010 Attack constituted an extrajudicial killing.

418.    **Sergeant Ronald Kubik** served in Afghanistan as a member of the U.S. Army. SGT Kubik was injured in the April 23, 2010 Attack.  SGT Kubik died on April 23, 2010 as a result of injuries sustained during the April 23, 2010 Attack.  SGT Kubik was a U.S. national at the time of the attack and his death.

419.    Plaintiff Eileen Daly is the mother of SGT Kubik and a U.S. national.

420.    Plaintiff Amy Kubik is the sister of SGT Kubik and a U.S. national.

421.    As a result of the April 23, 2010 Attack and SGT Kubik's injuries and death, each member of the Kubik Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Kubik's society, companionship, and counsel.

422.    As a result of the April 23, 2010 Attack, SGT Kubik was injured in his person and/or property.  The Plaintiff members of the Kubik Family are the survivors and/or heirs of SGT Kubik and are entitled to recover for the damages SGT Kubik sustained.

**The May 11, 2010 IED Attack in Logar (Kendra Pieper Family)**

423.    On May 11, 2010, the Taliban (including its Haqqani Network) committed an IED attack in Logar Province, Afghanistan (the "May 11, 2010 Attack").  The May 11, 2010 Attack constituted an extrajudicial killing.

424.    **Sergeant Kendra Pieper** served in Afghanistan as a member of the U.S. Army. SGT Pieper was injured in the May 11, 2010 Attack.  The attack severely wounded SGT Pieper, who suffered from significant injuries to her left leg requiring it to be amputated.  As a result of the May 11, 2010 Attack and her injuries, SGT Pieper has experienced severe physical and emotional pain and suffering.  Sergeant Pieper was a U.S. national at the time of the attack and remains one today.

425.    Plaintiff Gayle Pieper is the mother of SGT Pieper and a U.S. national.

426.    As a result of the May 11, 2010 Attack and SGT Pieper's injuries, Plaintiff Gayle Pieper has experienced severe mental anguish, emotional pain, and suffering.

**The May 24, 2010 Small Arms Attack in Khost (Christopher Barton Family)**

427.    On May 24, 2010, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Khost Province, Afghanistan (the "May 24, 2010 Attack"). The May 24, 2010 Attack constituted an extrajudicial killing.

428.    **Specialist Christopher Barton** served in Afghanistan as a member of the U.S. Army.  SPC Barton was injured in the May 24, 2010 Attack.  SPC Barton died on May 24, 2010 as a result of injuries sustained during the May 24, 2010 Attack.  SPC Barton was a U.S. national at the time of the attack and his death.

429.    Plaintiff Elaine Schmiedeshoff is the mother of SPC Barton and a U.S. national.

430.    Plaintiff Cory Barton is the brother of SPC Barton and a U.S. national.

431.    Plaintiff Roy Schmiedeshoff is the stepfather of SPC Barton and a U.S. national. Mr. Schmiedeshoff lived in the same household as SPC Barton for a substantial period of time and considered SPC Barton the functional equivalent of a biological son.

432.    Plaintiff Bryan Schmiedeshoff is the stepbrother of SPC Barton and a U.S. national.  Mr. Schmiedeshoff lived in the same household as SPC Barton for a substantial period of time and considered SPC Barton the functional equivalent of a biological brother.

433.    As a result of the May 24, 2010 Attack and SPC Barton's injuries and death, each member of the Barton Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Barton's society, companionship, and counsel.

434.    As a result of the May 24, 2010 Attack, SPC Barton was injured in his person and/or property.  The Plaintiff members of the Barton Family are the survivors and/or heirs of SPC Barton and are entitled to recover for the damages SPC Barton sustained.

**The June 7, 2010 Small Arms Attack in Helmand (John Rankel Family)**

435.    On June 7, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "June 7, 2010 Helmand Attack").  The June 7, 2010 Helmand Attack constituted an extrajudicial killing.

436.    **Sergeant John Rankel** served in Afghanistan as a member of the U.S. Marine Corps.  Sgt Rankel was injured in the June 7, 2010 Helmand Attack.  Sgt Rankel died on June 7, 2010 as a result of injuries sustained during the June 7, 2010 Helmand Attack.  Sgt Rankel was a U.S. national at the time of the attack and his death.

437.    Plaintiff Trisha Stockhoff is the mother of Sgt Rankel and a U.S. national.

438.    Plaintiff Kevin Rankel is the father of Sgt Rankel and a U.S. national.

439.    Plaintiff Donald Stockhoff Jr. is the stepfather of Sgt Rankel and a U.S. national.  Mr. Stockhoff lived in the same household as Sgt Rankel for a substantial period of time and considered Sgt Rankel the functional equivalent of a biological son.

440.    Plaintiff Nathan Stockhoff is the brother of Sgt Rankel and a U.S. national.

441.    As a result of the June 7, 2010 Helmand Attack and Sgt Rankel's injuries and death, each member of the Rankel Family has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt Rankel's society, companionship, and counsel.

442.    As a result of the June 7, 2010 Helmand Attack, Sgt Rankel was injured in his person and/or property.  The Plaintiff members of the Rankel Family are the survivors and/or heirs of Sgt Rankel and are entitled to recover for the damages Sgt Rankel sustained.

**The June 7, 2010 IED Attack in Kunar (Blaine Redding Family)**

443.    On June 7, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an IED attack in Kunar Province, Afghanistan (the "June 7, 2010 Kunar Attack").  The June 7, 2010 Kunar Attack constituted an extrajudicial killing.

444.    **Specialist Blaine Redding** served in Afghanistan as a member of the U.S. Army.  SPC Redding was injured in the June 7, 2010 Kunar Attack.  SPC Redding died on June 7, 2010 as a result of injuries sustained during the June 7, 2010 Kunar Attack.  SPC Redding was a U.S. national at the time of the attack and his death.

445.    Plaintiff Logan Redding is the brother of SPC Redding and a U.S. national.

446.    As a result of the June 7, 2010 Kunar Attack and SPC Redding's injuries and death, Plaintiff Logan Redding has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Redding's society, companionship, and counsel.

447.    As a result of the June 7, 2010 Kunar Attack, SPC Redding was injured in his person and/or property.  Plaintiff Logan Redding is a survivor and/or heir of SPC Redding and is entitled to recover for the damages SPC Redding sustained.

**The June 25, 2010 Complex Attack in Kunar (Jared Plunk Family)**

448.    On June 25, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a complex attack involving small arms fire and rocket propelled grenades in Kunar Province, Afghanistan (the "June 25, 2010 Attack").  The June 25, 2010 Attack constituted an extrajudicial killing.

449.    **Specialist Jared Plunk** served in Afghanistan as a member of the U.S. Army.  SPC Plunk was injured in the June 25, 2010 Attack.  SPC Plunk died on June 25, 2010 as a result

of injuries sustained during the June 25, 2010 Attack.  SPC Plunk was a U.S. national at the time of the attack and his death.

450.    Plaintiff Lindsay Plunk is the widow of SPC Plunk and a U.S. national.

451.    Plaintiff K.P., by and through his next friend Lindsay Plunk, is the minor son of SPC Plunk.  He is a U.S. national.

452.    Plaintiff Noah Fisher is the stepson of SPC Plunk and a U.S. national.  Mr. Fisher lived in the same household as SPC Plunk for a substantial period of time and considered SPC Plunk the functional equivalent of a biological father.

453.    As a result of the June 25, 2010 Attack and SPC Plunk's injuries and death, each member of the Plunk Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Plunk's society, companionship, and counsel.

454.    As a result of the June 25, 2010 Attack, SPC Plunk was injured in his person and/or property.  The Plaintiff members of the Plunk Family are the survivors and/or heirs of SPC Plunk and are entitled to recover for the damages SPC Plunk sustained.

**The August 7, 2010 Small Arms Attack in Helmand (Kevin Cornelius Family)**

455.    On August 7, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "August 7, 2010 Attack").  The August 7, 2010 Attack constituted an extrajudicial killing.

456.    **Lance Corporal Kevin Cornelius** served in Afghanistan as a member of the U.S. Marine Corps.  LCpl Cornelius was injured in the August 7, 2010 Attack.  LCpl Cornelius died on August 7, 2010 as a result of injuries sustained during the August 7, 2010 Attack.  LCpl Cornelius was a U.S. national at the time of the attack and his death.

457.    Plaintiff Valerie Silleck is the mother of LCpl Cornelius and a U.S. national.

458.    As a result of the August 7, 2010 Attack and LCpl Cornelius's injuries and death, Plaintiff Valerie Silleck has experienced severe mental anguish, emotional pain and suffering, and the loss of LCpl Cornelius's society, companionship, and counsel.

459.    As a result of the August 7, 2010 Attack, LCpl Cornelius was injured in his person and/or property.  Plaintiff Valerie Silleck is a survivor and/or heir of LCpl Cornelius and is entitled to recover for the damages LCpl Cornelius sustained.

### The August 19, 2010 Small Arms Attack in Kunar (Christopher Wright Family)

460.    On August 19, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "August 19, 2010 Attack").  The August 19, 2010 Attack constituted an extrajudicial killing.

461.    **Specialist Christopher Wright** served in Afghanistan as a member of the U.S. Army.  SPC Wright was injured in the August 19, 2010 Attack.  SPC Wright died on August 19, 2010 as a result of injuries sustained during the August 19, 2010 Attack.  SPC Wright was a U.S. national at the time of the attack and his death.

462.    Plaintiff James Cochran is the father of SPC Wright and a U.S. national.

463.    As a result of the August 19, 2010 Attack and SPC Wright's injuries and death, Plaintiff James Cochran has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Wright's society, companionship, and counsel.

464.    As a result of the August 19, 2010 Attack, SPC Wright was injured in his person and/or property.  Plaintiff James Cochran is a survivor and/or heir of SPC Wright and is entitled to recover for the damages SPC Wright sustained.

**The August 21, 2010 Small Arms Attack in Kandahar (Alexis Maldonado Family)**

465.    On August 21, 2010, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "August 21, 2010 Attack"). The August 21, 2010 Attack constituted an extrajudicial killing.

466.    **Specialist Alexis Maldonado** served in Afghanistan as a member of the U.S. Army. SPC Maldonado was injured in the August 21, 2010 Attack. SPC Maldonado died on August 21, 2010 as a result of injuries sustained during the August 21, 2010 Attack. SPC Maldonado was a U.S. national at the time of the attack and his death.

467.    Plaintiff Alicia Castillo is the mother of SPC Maldonado and a U.S. national.

468.    As a result of the August 21, 2010 Attack and SPC Maldonado's injuries and death, each Plaintiff Alicia Castillo has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Maldonado's society, companionship, and counsel.

469.    As a result of the August 21, 2010 Attack, SPC Maldonado was injured in her person and/or property. Plaintiff Alicia Castillo is a survivor and/or heir of SPC Maldonado and is entitled to recover for the damages SPC Maldonado sustained.

**The September 16, 2010 Small Arms Attack in Kandahar (Aaron Kramer Family)**

470.    On September 16, 2010, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "September 16, 2010 Attack"). The September 16, 2010 Attack constituted an extrajudicial killing.

471.    **Sergeant Aaron Kramer** served in Afghanistan as a member of the U.S. Army. SGT Kramer was injured in the September 16, 2010 Attack. SGT Kramer died on September 16, 2010 as a result of injuries sustained during the September 16, 2010 Attack. SGT Kramer was a U.S. national at the time of the attack and his death.

472.     Plaintiff Richard Kramer is the father of SGT Kramer and a U.S. national.

473.     As a result of the September 16, 2010 Attack and SGT Kramer's injuries and death, Plaintiff Richard Kramer has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Kramer's society, companionship, and counsel.

474.     As a result of the September 16, 2010 Attack, SGT Kramer was injured in his person and/or property.  Plaintiff Richard Kramer is a survivor and/or heir of SGT Kramer and is entitled to recover for the damages SGT Kramer sustained.

**The October 4, 2010 IED Attack in Kandahar (Karl Campbell Family)**

475.     On October 4, 2010, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "October 4, 2010 Attack").  The October 4, 2010 Attack constituted an extrajudicial killing.

476.     **Sergeant Karl Campbell** served in Afghanistan as a member of the U.S. Army. SGT Campbell was injured in the October 4, 2010 Attack.  SGT Campbell died on October 4, 2010 as a result of injuries sustained during the October 4, 2010 Attack.  SGT Campbell was a U.S. national at the time of the attack and his death.

477.     Plaintiff Jennifer Campbell is the widow of SGT Campbell and a U.S. national.

478.     Plaintiff C.C., by and through his next friend Jennifer Campbell, is the minor son of SGT Campbell.  He is a U.S. national.

479.     Plaintiff Samantha Harkins is the stepdaughter of SGT Campbell and a U.S. national.  Ms. Harkins lived in the same household as SGT Campbell for a substantial period of time and considered SGT Campbell the functional equivalent of a biological father.

480.     As a result of the October 4, 2010 Attack and SGT Campbell's injuries and death, each member of the Campbell Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Campbell's society, companionship, and counsel.

481.     As a result of the October 4, 2010 Attack, SGT Campbell was injured in his person and/or property.  The Plaintiff members of the Campbell Family are the survivors and/or heirs of SGT Campbell and are entitled to recover for the damages SGT Campbell sustained.

**The October 12, 2010 IED Attack in Kandahar (Matthew Powell Family)**

482.     On October 12, 2010, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "October 12, 2010 Attack").  The October 12, 2010 Attack constituted an extrajudicial killing.

483.     **Specialist Matthew Powell** served in Afghanistan as a member of the U.S. Army. SPC Powell was injured in the October 12, 2010 Attack.  SPC Powell died on October 12, 2010 as a result of injuries sustained during the October 12, 2010 Attack.  SPC Powell was a U.S. national at the time of the attack and his death.

484.     Plaintiff Tiffany Parker is the sister of SPC Powell and a U.S. national.

485.     As a result of the October 12, 2010 Attack and SPC Powell's injuries and death, Plaintiff Tiffany Parker has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Powell's society, companionship, and counsel.

486.     As a result of the October 12, 2010 Attack, SPC Powell was injured in his person and/or property.  Plaintiff Tiffany Parker is a survivor and/or heir of SPC Powell and is entitled to recover for the damages SPC Powell sustained.

**The October 13, 2010 Small Arms Attack in Paktika (Jordan Byrd Family)**

487.    On October 13, 2010, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Paktika Province, Afghanistan (the "October 13, 2010 Attack"). The October 13, 2010 Attack constituted an extrajudicial killing.

488.    **Private First Class Jordan Byrd** served in Afghanistan as a member of the U.S. Army. PFC Byrd was injured in the October 13, 2010 Attack. PFC Byrd died on October 13, 2010 as a result of injuries sustained during the October 13, 2010 Attack. PFC Byrd was a U.S. national at the time of the attack and his death.

489.    Plaintiff Jerald Brost is the father of PFC Byrd and a U.S. national.

490.    As a result of the October 13, 2010 Attack and PFC Byrd's injuries and death, Plaintiff Jerald Brost has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Byrd's society, companionship, and counsel.

491.    As a result of the October 13, 2010 Attack, PFC Byrd was injured in his person and/or property. Plaintiff Jerald Brost is a survivor and/or heir of PFC Byrd and is entitled to recover for the damages PFC Byrd sustained.

**The October 21, 2010 Small Arms Attack in Paktika (Kenneth McAninch Family)**

492.    On October 21, 2010, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Paktika Province, Afghanistan (the "October 21, 2010 Attack"). The October 21, 2010 Attack constituted an extrajudicial killing.

493.    **Staff Sergeant Kenneth McAninch** served in Afghanistan as a member of the U.S. Army. SSG McAninch was injured in the October 21, 2010 Attack. SSG McAninch died

on October 21, 2010 as a result of injuries sustained during the October 21, 2010 Attack.  SSG McAninch was a U.S. national at the time of the attack and his death.

494.    Plaintiff Cheryl Nance is the mother of SSG McAninch and a U.S. national.

495.    Plaintiff Kathryn Martin is the sister of SSG McAninch and a U.S. national.

496.    Plaintiff Kayla Wallace is the sister of SSG McAninch and a U.S. national.

497.    Plaintiff Richard Nance Jr. is the stepbrother of SSG McAninch and a U.S. national.  Mr. Nance lived in the same household as SSG McAninch for a substantial period of time and considered SSG McAninch the functional equivalent of a biological brother.

498.    As a result of the October 21, 2010 Attack and SSG McAninch's injuries and death, each member of the McAninch Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG McAninch's society, companionship, and counsel.

499.    As a result of the October 21, 2010 Attack, SSG McAninch was injured in his person and/or property.  The Plaintiff members of the McAninch Family are the survivors and/or heirs of SSG McAninch and are entitled to recover for the damages SSG McAninch sustained.

**The November 4, 2010 Small Arms Attack in Helmand (Matthew Broehm Family)**

500.    On November 4, 2010, the Taliban committed a small arms attack in Helmand Province, Afghanistan (the "November 4, 2010 Attack").  The November 4, 2010 Attack constituted an extrajudicial killing.

501.    **Lance Corporal Matthew Broehm** served in Afghanistan as a member of the U.S. Marine Corps.  LCpl Broehm was injured in the November 4, 2010 Attack.  LCpl Broehm died on November 4, 2010 as a result of injuries sustained during the November 4, 2010 Attack.  LCpl Broehm was a U.S. national at the time of the attack and his death.

502.    Plaintiff Liana Broehm is the widow of LCpl Broehm and a U.S. national.

503.    As a result of the November 4, 2010 Attack and LCpl Broehm's injuries and death, Plaintiff Liana Broehm has experienced severe mental anguish, emotional pain and suffering, and the loss of LCpl Broehm's society, companionship, and counsel.

504.    As a result of the November 4, 2010 Attack, LCpl Broehm was injured in his person and/or property.  Plaintiff Liana Broehm is a survivor and/or heir of LCpl Broehm and is entitled to recover for the damages LCpl Broehm sustained.

**The November 14, 2010 Small Arms Attack in Kunar (Christian Warriner Family)**

505.    On November 14, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "November 14, 2010 Attack").  The November 14, 2010 Attack constituted an extrajudicial killing.

506.    **Private First Class Christian Warriner** served in Afghanistan as a member of the U.S. Army.  PFC Warriner was injured in the November 14, 2010 Attack.  PFC Warriner died on November 14, 2010 as a result of injuries sustained during the November 14, 2010 Attack.  PFC Warriner was a U.S. national at the time of the attack and his death.

507.    Plaintiff Norman Warriner III is the father of PFC Warriner and a U.S. national.

508.    As a result of the November 14, 2010 Attack and PFC Warriner's injuries and death, Plaintiff Norman Warriner III has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Warriner's society, companionship, and counsel.

509.    As a result of the November 14, 2010 Attack, PFC Warriner was injured in his person and/or property.  Plaintiff Norman Warriner III is a survivor and/or heir of PFC Warriner and is entitled to recover for the damages PFC Warriner sustained.

**The November 27, 2010 Rocket Propelled Grenade Attack in Wardak (Devon Harris Family)**

510.    On November 27, 2010, the Taliban (including its Haqqani Network) committed a rocket propelled grenade attack in Wardak Province, Afghanistan (the "November 27, 2010 Attack").  The November 27, 2010 Attack constituted an extrajudicial killing.

511.    **Private First Class Devon Harris** served in Afghanistan as a member of the U.S. Army.  PFC Harris was injured in the November 27, 2010 Attack.  PFC Harris died on November 27, 2010 as a result of injuries sustained during the November 27, 2010 Attack.  PFC Harris was a U.S. national at the time of the attack and his death.

512.    Plaintiff Monica Smith is the sister of PFC Harris and a U.S. national.

513.    As a result of the November 27, 2010 Attack and PFC Harris's injuries and death, Plaintiff Monica Smith has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Harris's society, companionship, and counsel.

514.    As a result of the November 27, 2010 Attack, PFC Harris was injured in his person and/or property.  Plaintiff Monica Smith is a survivor and/or heir of PFC Harris and is entitled to recover for the damages PFC Harris sustained.

**The November 29, 2010 Insider Attack in Nangarhar (Barry Jarvis, Buddy McLain, and Austin Staggs Families)**

515.    On November 29, 2010, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an insider attack in Nangarhar Province, Afghanistan (the "November 29, 2010 Attack").  The November 29, 2010 Attack constituted an extrajudicial killing.

516.    **Sergeant First Class Barry Jarvis** served in Afghanistan as a member of the U.S. Army.  SFC Jarvis was injured in the November 29, 2010 Attack.  SFC Jarvis died on November 29, 2010 as a result of injuries sustained during the November 29, 2010 Attack.  SFC Jarvis was a U.S. national at the time of the attack and his death.

517.    Plaintiff Danny Jarvis is the brother of SFC Jarvis and a U.S. national.

518.    Plaintiff Edward Jarvis is the brother of SFC Jarvis and a U.S. national.

519.    Plaintiff Wilma James is the sister of SFC Jarvis and a U.S. national.

520.    As a result of the November 29, 2010 Attack and SFC Jarvis's injuries and death, each member of the Jarvis Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Jarvis's society, companionship, and counsel.

521.    As a result of the November 29, 2010 Attack, SFC Jarvis was injured in his person and/or property.  The Plaintiff members of the Jarvis Family are the survivors and/or heirs of SFC Jarvis and are entitled to recover for the damages SFC Jarvis sustained.

522.    **Private First Class Buddy McLain** served in Afghanistan as a member of the U.S. Army.  PFC McLain was injured in the November 29, 2010 Attack.  PFC McLain died on November 29, 2010 as a result of injuries sustained during the November 29, 2010 Attack.  PFC McLain was a U.S. national at the time of the attack and his death.

523.    Plaintiff Chelsea McLain is the widow of PFC McLain and a U.S. national.

524.    Plaintiff Patti Shannon is the mother of PFC McLain and a U.S. national.

525.    As a result of the November 29, 2010 Attack and PFC McLain's injuries and death, each member of the McLain Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC McLain's society, companionship, and counsel.

526.    As a result of the November 29, 2010 Attack, PFC McLain was injured in his person and/or property.  The Plaintiff members of the McLain Family are the survivors and/or heirs of PFC McLain and are entitled to recover for the damages PFC McLain sustained.

527.    **Private First Class Austin Staggs** served in Afghanistan as a member of the U.S. Army.  PFC Staggs was injured in the November 29, 2010 Attack.  PFC Staggs died on November 29, 2010 as a result of injuries sustained during the November 29, 2010 Attack.  PFC Staggs was a U.S. national at the time of the attack and his death.

528.    Plaintiff Byram Staggs is the father of PFC Staggs and a U.S. national.

529.    Plaintiff Emily Staggs is the sister of PFC Staggs and a U.S. national.

530.    Plaintiff Sarah Staggs is the sister of PFC Staggs and a U.S. national.

531.    Plaintiff Bobby Staggs is the brother of PFC Staggs and a U.S. national.

532.    As a result of the November 29, 2010 Attack and PFC Staggs's injuries and death, each member of the Staggs Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Staggs's society, companionship, and counsel.

533.    As a result of the November 29, 2010 Attack, PFC Staggs was injured in his person and/or property.  The Plaintiff members of the Staggs Family are the survivors and/or heirs of PFC Staggs and are entitled to recover for the damages PFC Staggs sustained.

**The January 12, 2011 IED Attack in Ghazni (Jarrid King and Benjamin Moore Families)**

534.    On January 12, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack), acting together in a joint al-Qaeda-Taliban cell, committed an IED attack in Ghazni Province, Afghanistan (the "January 12, 2011 Ghazni Attack").  The January 12, 2011 Ghazni Attack constituted an extrajudicial killing.

535.    **Corporal Jarrid King** served in Afghanistan as a member of the U.S. Army. CPL King was injured in the January 12, 2011 Ghazni Attack. CPL King died on January 12, 2011 as a result of injuries sustained during the January 12, 2011 Ghazni Attack. CPL King was a U.S. national at the time of the attack and his death.

536.    Plaintiff Donald King Jr. is the father of CPL King and a U.S. national.

537.    As a result of the January 12, 2011 Ghazni Attack and CPL King's injuries and death, Plaintiff Donald King Jr. has experienced severe mental anguish, emotional pain and suffering, and the loss of CPL King's society, companionship, and counsel.

538.    As a result of the January 12, 2011 Ghazni Attack, CPL King was injured in his person and/or property. Plaintiff Donald King Jr. is a survivor and/or heir of CPL King and is entitled to recover for the damages CPL King sustained.

539.    **Specialist Benjamin Moore** served in Afghanistan as a member of the U.S. Army. SPC Moore was injured in the January 12, 2011 Ghazni Attack. SPC Moore died on January 12, 2011 as a result of injuries sustained during the January 12, 2011 Ghazni Attack. SPC Moore was a U.S. national at the time of the attack and his death.

540.    Plaintiff Amy Moore is the mother of SPC Moore and a U.S. national.

541.    Plaintiff Patrick Moore is the father of SPC Moore and a U.S. national.

542.    Plaintiff Patrick Moore II is the brother of SPC Moore and a U.S. national.

543.    As a result of the January 12, 2011 Ghazni Attack and SPC Moore's injuries and death, each member of the Moore Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Moore's society, companionship, and counsel.

544.    As a result of the January 12, 2011 Ghazni Attack, SPC Moore was injured in his person and/or property.  The Plaintiff members of the Moore Family are the survivors and/or heirs of SPC Moore and are entitled to recover for the damages SPC Moore sustained.

**The January 12, 2011 Small Arms Attack in Kunar (Zachary Salmon Family)**

545.    On January 12, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "January 12, 2011 Kunar Attack").  The January 12, 2011 Kunar Attack constituted an extrajudicial killing.

546.    **Private First Class Zachary Salmon** served in Afghanistan as a member of the U.S. Army.  PFC Salmon was injured in the January 12, 2011 Kunar Attack.  PFC Salmon died on January 12, 2011 as a result of injuries sustained during the January 12, 2011 Kunar Attack.  PFC Salmon was a U.S. national at the time of the attack and his death.

547.    Plaintiff Steven Salmon Sr. is the father of PFC Salmon and a U.S. national.

548.    Plaintiff Steven Salmon Jr. is the brother of PFC Salmon and a U.S. national.

549.    As a result of the January 12, 2011 Kunar Attack and PFC Salmon's injuries and death, each member of the Salmon Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Salmon's society, companionship, and counsel.

550.    As a result of the January 12, 2011 Kunar Attack, PFC Salmon was injured in his person and/or property.  The Plaintiff members of the Salmon Family are the survivors and/or heirs of PFC Salmon and are entitled to recover for the damages PFC Salmon sustained.

**The February 17, 2011 IED Attack in Helmand (Matthew DeYoung Family)**

551.     On February 17, 2011, the Taliban committed an IED attack in Helmand Province, Afghanistan (the "February 17, 2011 Attack").  The February 17, 2011 Attack constituted an extrajudicial killing.

552.     **Sergeant Matthew DeYoung** served in Afghanistan as a member of the U.S. Marine Corps.  Sgt DeYoung was injured in the February 17, 2011 Attack.  Sgt DeYoung died on February 17, 2011 as a result of injuries sustained during the February 17, 2011 Attack.  Sgt DeYoung was a U.S. national at the time of the attack and his death.

553.     Plaintiff Aisha DeYoung is the widow of Sgt DeYoung and a U.S. national.

554.     Plaintiff M.D., by and through her next friend Aisha DeYoung, is the minor daughter of Sgt DeYoung.  She is a U.S. national.

555.     As a result of the February 17, 2011 Attack and Sgt DeYoung's injuries and death, each member of the DeYoung Family has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt DeYoung's society, companionship, and counsel.

556.     As a result of the February 17, 2011 Attack, Sgt DeYoung was injured in his person and/or property.  The Plaintiff members of the DeYoung Family are the survivors and/or heirs of Sgt DeYoung and are entitled to recover for the damages Sgt DeYoung sustained.

**The February 28, 2011 IED Attack in Wardak (Chauncy Mays Family)**

557.     On February 28, 2011, the Taliban (including its Haqqani Network) committed an IED attack in Wardak Province, Afghanistan (the "February 28, 2011 Attack").  The February 28, 2011 Attack constituted an extrajudicial killing.

558.     **Staff Sergeant Chauncy Mays** served in Afghanistan as a member of the U.S. Army.  SSG Mays was injured in the February 28, 2011 Attack.  SSG Mays died on February 28,

2011 as a result of injuries sustained during the February 28, 2011 Attack. SSG Mays was a U.S. national at the time of the attack and his death.

559.    Plaintiff Katherine Mays is the widow of SSG Mays and a U.S. national.

560.    Plaintiff K.M., by and through her next friend Katherine Mays, is the minor daughter of SSG Mays. She is a U.S. national.

561.    Plaintiff C.M., by and through her next friend Katherine Mays, is the minor daughter of SSG Mays. She is a U.S. national.

562.    As a result of the February 28, 2011 Attack and SSG Mays's injuries and death, each member of the Mays Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Mays's society, companionship, and counsel.

563.    As a result of the February 28, 2011 Attack, SSG Mays was injured in his person and/or property. The Plaintiff members of the Mays Family are the survivors and/or heirs of SSG Mays and are entitled to recover for the damages SSG Mays sustained.

**The March 19, 2011 Small Arms Attack in Kandahar (Donald Mickler Jr. Family)**

564.    On March 19, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "March 19, 2011 Attack"). The March 19, 2011 Attack constituted an extrajudicial killing.

565.    **Sergeant Donald Mickler Jr.** served in Afghanistan as a member of the U.S. Army. SGT Mickler was injured in the March 19, 2011 Attack. SGT Mickler died on March 19, 2011 as a result of injuries sustained during the March 19, 2011 Attack. SGT Mickler was a U.S. national at the time of the attack and his death.

566.    Plaintiff Gloria Mickler is the mother of SGT Mickler and a U.S. national.

567.    Plaintiff Trina Moore is the sister of SGT Mickler and a U.S. national.

568.    Plaintiff Dominic Anderson is the sister of SGT Mickler and a U.S. national.

569.    Plaintiff Janis Anderson is the sister of SGT Mickler and a U.S. national.

570.    Plaintiff Gloria A. Mickler is the sister of SGT Mickler and a U.S. national.

571.    Plaintiff Danielle Mickler is the sister of SGT Mickler and a U.S. national.

572.    As a result of the March 19, 2011 Attack and SGT Mickler's injuries and death, each member of the Mickler Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Mickler's society, companionship, and counsel.

573.    As a result of the March 19, 2011 Attack, SGT Mickler was injured in his person and/or property.  The Plaintiff members of the Mickler Family are the survivors and/or heirs of SGT Mickler and are entitled to recover for the damages SGT Mickler sustained.

**The March 22, 2011 Complex Attack in Logar (Joshua Gire Family)**

574.    On March 22, 2011, the Taliban (including its Haqqani Network) committed a complex attack involving IED, small arms fire, and rocket propelled grenades attack in Logar Province, Afghanistan (the "March 22, 2011 Attack").  The March 22, 2011 Attack constituted an extrajudicial killing.

575.    **Staff Sergeant Joshua Gire** served in Afghanistan as a member of the U.S. Army.  SSG Gire was injured in the March 22, 2011 Attack.  SSG Gire died on March 22, 2011 as a result of injuries sustained during the March 22, 2011 Attack.  SSG Gire was a U.S. national at the time of the attack and his death.

576.    Plaintiff Jacqueline Gire is the widow of SSG Gire and a U.S. national.

577.    Plaintiff Nicholas Gire is the son of SSG Gire and a U.S. national.

578.    Plaintiff R.G., by and through her next friend Jacqueline Gire, is the minor daughter of SSG Gire.  She is a U.S. national.

579.    Plaintiff Paul Gire III is the brother of SSG Gire and a U.S. national.

580.    As a result of the March 22, 2011 Attack and SSG Gire's injuries and death, each member of the Gire Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Gire's society, companionship, and counsel.

581.    As a result of the March 22, 2011 Attack, SSG Gire was injured in his person and/or property.  The Plaintiff members of the Gire Family are the survivors and/or heirs of SSG Gire and are entitled to recover for the damages SSG Gire sustained.

### The March 29, 2011 Small Arms Attack in Kunar (Frank Adamski III and Jameson Lindskog Families)

582.    On March 29, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "March 29, 2011 Attack").  The March 29, 2011 Attack constituted an extrajudicial killing.

583.    **Staff Sergeant Frank Adamski III** served in Afghanistan as a member of the U.S. Army.  SSG Adamski was injured in the March 29, 2011 Attack.  SSG Adamski died on March 29, 2011 as a result of injuries sustained during the March 29, 2011 Attack.  SSG Adamski was a U.S. national at the time of the attack and his death.

584.    Plaintiff Carolanne Rowe is the stepmother of SSG Adamski and a U.S. national. Ms. Rowe lived in the same household as SSG Adamski for a substantial period of time and considered SSG Adamski the functional equivalent of a biological son.

585.    As a result of the March 29, 2011 Attack and SSG Adamski's injuries and death, Plaintiff Carolanne Rowe has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Adamski's society, companionship, and counsel.

586.    As a result of the March 29, 2011 Attack, SSG Adamski was injured in his person and/or property.  Plaintiff Carolanne Rowe is a survivor and/or heir of SSG Adamski and is entitled to recover for the damages SSG Adamski sustained.

587.    **Specialist Jameson Lindskog** served in Afghanistan as a member of the U.S. Army.  SPC Lindskog was injured in the March 29, 2011 Attack.  SPC Lindskog died on March 29, 2011 as a result of injuries sustained during the March 29, 2011 Attack.  SPC Lindskog was a U.S. national at the time of the attack and his death.

588.    Plaintiff Donna Walker is the mother of SPC Lindskog and a U.S. national.

589.    Plaintiff Matthew Walker is the stepfather of SPC Lindskog and a U.S. national. Mr. Walker lived in the same household as SPC Lindskog for a substantial period of time and considered SPC Lindskog the functional equivalent of a biological son.

590.    Plaintiff Kenneth Nekotani is the brother of SPC Lindskog and a U.S. national.

591.    As a result of the March 29, 2011 Attack and SPC Lindskog's injuries and death, each member of the Lindskog Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Lindskog's society, companionship, and counsel.

592.    As a result of the March 29, 2011 Attack, SPC Lindskog was injured in his person and/or property.  The Plaintiff members of the Lindskog Family are the survivors and/or heirs of SPC Lindskog and are entitled to recover for the damages SPC Lindskog sustained.

**The April 7, 2011 Small Arms Attack in Logar (Keith Buzinski Family)**

593.    On April 7, 2011, the Taliban (including its Haqqani Network) committed a small arms attack in Logar Province, Afghanistan (the "April 7, 2011 Attack").  The April 7, 2011 Attack constituted an extrajudicial killing.

594.    **Sergeant Keith Buzinski** served in Afghanistan as a member of the U.S. Army. SGT Buzinski was injured in the April 7, 2011 Attack. SGT Buzinski died on April 7, 2011 as a result of injuries sustained during the April 7, 2011 Attack. SGT Buzinski was a U.S. national at the time of the attack and his death.

595.    Plaintiff Andrea Kalbrunner is the widow of SGT Buzinski and a U.S. national.

596.    As a result of the April 7, 2011 Attack and SGT Buzinski's injuries and death, Plaintiff Andrea Kalbrunner has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Buzinski's society, companionship, and counsel.

597.    As a result of the April 7, 2011 Attack, SGT Buzinski was injured in his person and/or property. Plaintiff Andrea Kalbrunner is a survivor and/or heir of SGT Buzinski and is entitled to recover for the damages SGT Buzinski sustained.

**The April 10, 2011 Small Arms Attack in Kandahar (Jamie Jarboe Family)**

598.    On April 10, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "April 10, 2011 Attack"). The April 10, 2011 Attack constituted an extrajudicial killing.

599.    **Staff Sergeant Jamie Jarboe** served in Afghanistan as a member of the U.S. Army. SSG Jarboe was injured in the April 10, 2011 Attack. SSG Jarboe died on March 21, 2012 as a result of injuries sustained during the April 10, 2011 Attack. SSG Jarboe was a U.S. national at the time of the attack and his death.

600.    Plaintiff Melissa Jarboe is the widow of SSG Jarboe and a U.S. national.

601.    Plaintiff Andrew Jarboe is the father of SSG Jarboe and a U.S. national.

602.    As a result of the April 10, 2011 Attack and SSG Jarboe's injuries and death, each member of the Jarboe Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Jarboe's society, companionship, and counsel.

603.    As a result of the April 10, 2011 Attack, SSG Jarboe was injured in his person and/or property.  The Plaintiff members of the Jarboe Family are the survivors and/or heirs of SSG Jarboe and are entitled to recover for the damages SSG Jarboe sustained.

**The April 16, 2011 Insider Attack in Laghman (Charles Adkins Family)**

604.    On April 16, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed an insider attack (suicide bombing) in Laghman Province, Afghanistan (the "April 16, 2011 Attack").  The April 16, 2011 Attack constituted an extrajudicial killing.

605.    **Sergeant First Class Charles Adkins** served in Afghanistan as a member of the U.S. Army.  SFC Adkins was injured in the April 16, 2011 Attack.  SFC Adkins died on April 16, 2011 as a result of injuries sustained during the April 16, 2011 Attack.  SFC Adkins was a U.S. national at the time of the attack and his death.

606.    Plaintiff Sarah Adkins is the widow of SFC Adkins and a U.S. national.

607.    Plaintiff Garrhett Adkins is the son of SFC Adkins and a U.S. national.

608.    Plaintiff G.A., by and through his next friend Sarah Adkins, is the minor son of SFC Adkins.  He is a U.S. national.

609.    Plaintiff Gabriella Adkins is the daughter of SFC Adkins and a U.S. national.

610.    Plaintiff Makayla Adkins is the daughter of SFC Adkins and a U.S. national.

611.    Plaintiff Mackenzie Adkins is the daughter of SFC Adkins and a U.S. national.

612.    As a result of the April 16, 2011 Attack and SFC Adkins's injuries and death, each member of the Adkins Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Adkins's society, companionship, and counsel.

613.    As a result of the April 16, 2011 Attack, SFC Adkins was injured in his person and/or property.  The Plaintiff members of the Adkins Family are the survivors and/or heirs of SFC Adkins and are entitled to recover for the damages SFC Adkins sustained.

**The April 23, 2011 Small Arms Attack in Kapisa (James Justice Family)**

614.    On April 23, 2011, the Taliban committed a small arms attack in Kapisa Province, Afghanistan (the "April 23, 2011 Attack").  The April 23, 2011 Attack constituted an extrajudicial killing.

615.    **Staff Sergeant James Justice** served in Afghanistan as a member of the U.S. Army National Guard.  SSG Justice was injured in the April 23, 2011 Attack.  SSG Justice died on April 23, 2011 as a result of injuries sustained during the April 23, 2011 Attack.  SSG Justice was a U.S. national at the time of the attack and his death.

616.    Plaintiff Amanda Justice-Petersen is the widow of SSG Justice and a U.S. national.

617.    Plaintiff C.J., by and through her next friend Amanda Justice-Petersen, is the minor daughter of SSG Justice.  She is a U.S. national.

618.    As a result of the April 23, 2011 Attack and SSG Justice's injuries and death, each member of the Justice Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Justice's society, companionship, and counsel.

619.    As a result of the April 23, 2011 Attack, SSG Justice was injured in his person and/or property.  The Plaintiff members of the Justice Family are the survivors and/or heirs of SSG Justice and are entitled to recover for the damages SSG Justice sustained.

**The April 27, 2011 Insider Attack in Kabul (Philip Ambard Family)**

620.    On April 27, 2011, the Taliban (including its Haqqani Network), and al-Qaeda (a designated FTO at the time of the attack), acting together as part of the Taliban-led syndicate, committed an insider attack in Kabul Province, Afghanistan (the "April 27, 2011 Attack").  The April 27, 2011 Attack constituted an extrajudicial killing.

621.    **Major Philip Ambard** served in Afghanistan as a member of the U.S. Air Force. Maj Ambard was injured in the April 27, 2011 Attack.  Maj Ambard died on April 27, 2011 as a result of injuries sustained during the April 27, 2011 Attack.  Maj Ambard was a U.S. national at the time of the attack and his death.

622.    Plaintiff Linda Ambard is the widow of Maj Ambard and a U.S. national.

623.    Plaintiff Timothy Ambard is the son of Maj Ambard and a U.S. national.

624.    Plaintiff Alexander Ambard is the son of Maj Ambard and a U.S. national.

625.    Plaintiff Joshua Short is the stepson of Maj Ambard and a U.S. national.  Mr. Short lived in the same household as Maj Ambard for a substantial period of time and considered Maj Ambard the functional equivalent of a biological father.

626.    Plaintiff Patrick Short is the stepson of Maj Ambard and a U.S. national.  Mr. Short lived in the same household as Maj Ambard for a substantial period of time and considered Maj Ambard the functional equivalent of a biological father.

627. Plaintiff Emily Short is the stepdaughter of Maj Ambard and a U.S. national. Ms. Short lived in the same household as Maj Ambard for a substantial period of time and considered Maj Ambard the functional equivalent of a biological father.

628. As a result of the April 27, 2011 Attack and Maj Ambard's injuries and death, each member of the Ambard Family has experienced severe mental anguish, emotional pain and suffering, and the loss of Maj Ambard's society, companionship, and counsel.

629. As a result of the April 27, 2011 Attack, Maj Ambard was injured in his person and/or property. The Plaintiff members of the Ambard Family are the survivors and/or heirs of Maj Ambard and are entitled to recover for the damages Maj Ambard sustained.

### The May 18, 2011 Complex Attack in Kandahar (Brandon Kirton Family)

630. On May 18, 2011, the Taliban committed a complex attack involving small arms fire and mortars in Kandahar Province, Afghanistan (the "May 18, 2011 Attack"). The May 18, 2011 Attack constituted an extrajudicial killing.

631. **Corporal Brandon Kirton** served in Afghanistan as a member of the U.S. Army. CPL Kirton was injured in the May 18, 2011 Attack. CPL Kirton died on May 18, 2011 as a result of injuries sustained during the May 18, 2011 Attack. CPL Kirton was a U.S. national at the time of the attack and his death.

632. Plaintiff Robert Kirton is the father of CPL Kirton and a U.S. national.

633. As a result of the May 18, 2011 Attack and CPL Kirton's injuries and death, Plaintiff Robert Kirton has experienced severe mental anguish, emotional pain and suffering, and the loss of CPL Kirton's society, companionship, and counsel.

634.    As a result of the May 18, 2011 Attack, CPL Kirton was injured in his person and/or property.  Plaintiff Robert Kirton is a survivor and/or heir of CPL Kirton and is entitled to recover for the damages CPL Kirton sustained.

**The May 27, 2011 Small Arms Attack in Kandahar (John Johnson Family)**

635.    On May 27, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "May 27, 2011 Attack").  The May 27, 2011 Attack constituted an extrajudicial killing.

636.    **Private First Class John Johnson** served in Afghanistan as a member of the U.S. Army.  PFC Johnson was injured in the May 27, 2011 Attack.  PFC Johnson died on May 27, 2011 as a result of injuries sustained during the May 27, 2011 Attack.  PFC Johnson was a U.S. national at the time of the attack and his death.

637.    Plaintiff Vicki Dryer is the mother of PFC Johnson and a U.S. national.

638.    Plaintiff John Johnson is the father of PFC Johnson and a U.S. national.

639.    Plaintiff Nickolle Johnson is the sister of PFC Johnson and a U.S. national.

640.    As a result of the May 27, 2011 Attack and PFC Johnson's injuries and death, each member of the Johnson Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Johnson's society, companionship, and counsel.

641.    As a result of the May 27, 2011 Attack, PFC Johnson was injured in his person and/or property.  The Plaintiff members of the Johnson Family are the survivors and/or heirs of PFC Johnson and are entitled to recover for the damages PFC Johnson sustained.

**The June 20, 2011 Small Arms Attack in Ghazni (James Harvey II Family)**

642.    On June 20, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack), acting together in a joint al-Qaeda-Taliban cell, committed a small arms attack in Ghazni

Province, Afghanistan (the "June 20, 2011 Attack"). The June 20, 2011 Attack constituted an extrajudicial killing.

643.   **Sergeant James Harvey II** served in Afghanistan as a member of the U.S. Army. SGT Harvey was injured in the June 20, 2011 Attack. SGT Harvey died on June 20, 2011 as a result of injuries sustained during the June 20, 2011 Attack. SGT Harvey was a U.S. national at the time of the attack and his death.

644.   Plaintiff James Harvey is the father of SGT Harvey and a U.S. national.

645.   As a result of the June 20, 2011 Attack and SGT Harvey's injuries and death, Plaintiff James Harvey has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Harvey's society, companionship, and counsel.

646.   As a result of the June 20, 2011 Attack, SGT Harvey was injured in his person and/or property. Plaintiff James Harvey is a survivor and/or heir of SGT Harvey and is entitled to recover for the damages SGT Harvey sustained.

**The June 22, 2011 Small Arms Attack in Logar (Nicholas Bernier Family)**

647.   On June 22, 2011, the Taliban (including its Haqqani Network) committed a small arms attack in Logar Province, Afghanistan (the "June 22, 2011 Logar Attack"). The June 22, 2011 Logar Attack constituted an extrajudicial killing.

648.   **Specialist Nicholas Bernier** served in Afghanistan as a member of the U.S. Army. SPC Bernier was injured in the June 22, 2011 Logar Attack. SPC Bernier died on June 25, 2011 as a result of injuries sustained during the June 22, 2011 Logar Attack. SPC Bernier was a U.S. national at the time of the attack and his death.

649.   Plaintiff Tina Bances is the mother of SPC Bernier and a U.S. national.

650.   Plaintiff Paul Bernier is the father of SPC Bernier and a U.S. national.

651.    Plaintiff Christopher Bernier is the brother of SPC Bernier and a U.S. national.

652.    Plaintiff Bradley Bernier is the brother of SPC Bernier and a U.S. national.

653.    As a result of the June 22, 2011 Logar Attack and SPC Bernier's injuries and death, each member of the Bernier Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Bernier's society, companionship, and counsel.

654.    As a result of the June 22, 2011 Logar Attack, SPC Bernier was injured in his person and/or property.  The Plaintiff members of the Bernier Family are the survivors and/or heirs of SPC Bernier and are entitled to recover for the damages SPC Bernier sustained.

**The June 22, 2011 Small Arms Attack in Kunar (Levi Nuncio Family)**

655.    On June 22, 2011, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Kunar Province, Afghanistan (the "June 22, 2011 Kunar Attack").  The June 22, 2011 Kunar Attack constituted an extrajudicial killing.

656.    **Specialist Levi Nuncio** served in Afghanistan as a member of the U.S. Army. SPC Nuncio was injured in the June 22, 2011 Kunar Attack.  SPC Nuncio died on June 22, 2011 as a result of injuries sustained during the June 22, 2011 Kunar Attack.  SPC Nuncio was a U.S. national at the time of the attack and his death.

657.    Plaintiff Ismael Nuncio is the brother of SPC Nuncio and a U.S. national.

658.    As a result of the June 22, 2011 Kunar Attack and SPC Nuncio's injuries and death, Plaintiff Ismael Nuncio has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Nuncio's society, companionship, and counsel.

659.    As a result of the June 22, 2011 Kunar Attack, SPC Nuncio was injured in his person and/or property.  Plaintiff Ismael Nuncio is a survivor and/or heir of SPC Nuncio and is entitled to recover for the damages SPC Nuncio sustained.

**The August 4, 2011 Small Arms Attack in Paktia (Anthony Peterson Family)**

660.    On August 4, 2011, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Paktia Province, Afghanistan (the "August 4, 2011 Attack"). The August 4, 2011 Attack constituted an extrajudicial killing.

661.    **Sergeant Anthony Peterson** served in Afghanistan as a member of the U.S. Army National Guard.  SGT Peterson was injured in the August 4, 2011 Attack.  SGT Peterson died on August 4, 2011 as a result of injuries sustained during the August 4, 2011 Attack.  SGT Peterson was a U.S. national at the time of the attack and his death.

662.    Plaintiff Terra Peterson is the mother of SGT Peterson and a U.S. national.

663.    Plaintiff D.P., by and through his next friend Terra Peterson, is the minor son of SGT Peterson.  He is a U.S. national.

664.    Plaintiff Garth Peterson is the father of SGT Peterson and a U.S. national.

665.    As a result of the August 4, 2011 Attack and SGT Peterson's injuries and death, each member of the Peterson Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Peterson's society, companionship, and counsel.

666.    As a result of the August 4, 2011 Attack, SGT Peterson was injured in his person and/or property.  The Plaintiff members of the Peterson Family are the survivors and/or heirs of SGT Peterson and are entitled to recover for the damages SGT Peterson sustained.

**The August 6, 2011 Attack on Helicopter in Wardak (Darrik Benson, Michael Strange, and Aaron Vaughn Families)**

667.    On August 6, 2011, the Taliban (including its Haqqani Network) committed an attack on a helicopter in Wardak Province, Afghanistan (the "August 6, 2011 Attack").  The August 6, 2011 Attack constituted an extrajudicial killing.[158]

668.    **Chief Petty Officer Darrik Benson** served in Afghanistan as a member of the U.S. Navy.  SOC (SEAL) Benson was injured in the August 6, 2011 Attack.  SOC (SEAL) Benson died on August 6, 2011 as a result of injuries sustained during the August 6, 2011 Attack.  SOC (SEAL) Benson was a U.S. national at the time of the attack and his death.

669.    Plaintiff L.B., by and through his next friend Kara Dulhanty, is the minor son of SOC (SEAL) Benson.  He is a U.S. national.

670.    Plaintiff Brianna Benson is the sister of SOC (SEAL) Benson and a U.S. national.

---

[158] The Honorable John D. Bates attributed this attack to the Taliban.  *See Cabrera v. Islamic Republic of Iran*, 2022 WL 2817730, at *20 (D.D.C. July 19, 2022).  Notwithstanding this attribution, Plaintiffs believe Al-Qaeda and the Haqqani Network also helped commit this attack because, *inter alia*, Sirajuddin Haqqani – who was a dual-hatted member of both organizations, as a sworn al-Qaeda brother who served on al-Qaeda's military council (al-Qaeda's attack planning committee), as well as the Deputy Emir of the Taliban and the leader of its Haqqani Network – also helped commit the August 6, 2011 Attack.  That is so because Sirajuddin played a direct and critical role in sponsoring all syndicate attacks in Wardak in 2011, because Wardak, along with Ghazni, were the two most important provinces helping connect Sirajuddin's strongholds in eastern Afghanistan and Pakistan with Afghanistan's capital in Kabul.  That mattered because Sirajuddin prioritized, above nearly all else, the syndicate's (and his, personally) ability to conduct "spectacular" attacks in Kabul, via the syndicate's Kabul Attack Network, and to do so required Sirajuddin have a reinforced logistical ratline between Kabul and the Haqqani Network's Afghanistan/Pakistan strongholds from which Sirajuddin directed such attacks.  Consequently, Sirajuddin was, effectively, the syndicate's global commander responsible for Ghazni and Wardak, like Sirajuddin's responsibility for the Kabul Attack Network (because, functionally, they were one and the same).  In this context, Sirajuddin's substantial role in supporting syndicate attacks in Wardak was causal, meaning Sirajuddin provided funds, weapons, and training to syndicate terrorists in Wardak, including weapons and training relevant for the syndicate terrorists who committed the August 6, 2011 Attack.

671.    As a result of the August 6, 2011 Attack and SOC (SEAL) Benson's injuries and death, each member of the Benson Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SOC (SEAL) Benson's society, companionship, and counsel.

672.    As a result of the August 6, 2011 Attack, SOC (SEAL) Benson was injured in his person and/or property. The Plaintiff members of the Benson Family are the survivors and/or heirs of SOC (SEAL) Benson and are entitled to recover for the damages SOC (SEAL) Benson sustained.

673.    **Petty Officer First Class Michael Strange** served in Afghanistan as a member of the U.S. Navy. PO1 Strange was injured in the August 6, 2011 Attack. PO1 Strange died on August 6, 2011 as a result of injuries sustained during the August 6, 2011 Attack. PO1 Strange was a U.S. national at the time of the attack and his death.

674.    Plaintiff Elizabeth Strange is the mother of PO1 Strange and a U.S. national.

675.    As a result of the August 6, 2011 Attack and PO1 Strange's injuries and death, Plaintiff Elizabeth Strange has experienced severe mental anguish, emotional pain and suffering, and the loss of PO1 Strange's society, companionship, and counsel.

676.    As a result of the August 6, 2011 Attack, PO1 Strange was injured in his person and/or property. Plaintiff Elizabeth Strange is a survivor and/or heir of PO1 Strange and is entitled to recover for the damages PO1 Strange sustained.

677.    **Chief Petty Officer Aaron Vaughn** served in Afghanistan as a member of the U.S. Navy. CPO Vaughn was injured in the August 6, 2011 Attack. CPO Vaughn died on August 6, 2011 as a result of injuries sustained during the August 6, 2011 Attack. CPO Vaughn was a U.S. national at the time of the attack and his death.

678.    Plaintiff Karen Vaughn is the mother of CPO Vaughn and a U.S. national.

679.    Plaintiff Billy Vaughn Jr. is the father of CPO Vaughn and a U.S. national.

680.    Plaintiff Tara Baldwin is the sister of CPO Vaughn and a U.S. national.

681.    Plaintiff Ana Pooler is the sister of CPO Vaughn and a U.S. national.

682.    As a result of the August 6, 2011 Attack and CPO Vaughn's injuries and death, each member of the Vaughn Family has experienced severe mental anguish, emotional pain and suffering, and the loss of CPO Vaughn's society, companionship, and counsel.

683.    As a result of the August 6, 2011 Attack, CPO Vaughn was injured in his person and/or property.  The Plaintiff members of the Vaughn Family are the survivors and/or heirs of CPO Vaughn and are entitled to recover for the damages CPO Vaughn sustained.

**The August 24, 2011 Small Arms Attack in Kandahar (Andrew Tobin Family)**

684.    On August 24, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "August 24, 2011 Attack").  The August 24, 2011 Attack constituted an extrajudicial killing.

685.    **Sergeant Andrew Tobin** served in Afghanistan as a member of the U.S. Army. SGT Tobin was injured in the August 24, 2011 Attack.  SGT Tobin died on August 24, 2011 as a result of injuries sustained during the August 24, 2011 Attack.  SGT Tobin was a U.S. national at the time of the attack and his death.

686.    Plaintiff Katie Tobin is the widow of SGT Tobin and a U.S. national.

687.    Plaintiff Lee Ann Smith is the mother of SGT Tobin and a U.S. national.

688.    Plaintiff Nicholas Tobin Jr. is the brother of SGT Tobin and a U.S. national.

689.    As a result of the August 24, 2011 Attack and SGT Tobin's injuries and death, each member of the Tobin Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Tobin's society, companionship, and counsel.

690.    As a result of the August 24, 2011 Attack, SGT Tobin was injured in his person and/or property.  The Plaintiff members of the Tobin Family are the survivors and/or heirs of SGT Tobin and are entitled to recover for the damages SGT Tobin sustained.

**The August 25, 2011 Small Arms Attack in Kandahar (Jesse Dietrich Family)**

691.    On August 25, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "August 25, 2011 Attack").  The August 25, 2011 Attack constituted an extrajudicial killing.

692.    **Specialist Jesse Dietrich** served in Afghanistan as a member of the U.S. Army. SPC Dietrich was injured in the August 25, 2011 Attack.  SPC Dietrich died on August 25, 2011 as a result of injuries sustained during the August 25, 2011 Attack.  SPC Dietrich was a U.S. national at the time of the attack and his death.

693.    Plaintiff Paul Dietrich is the father of SPC Dietrich and a U.S. national.

694.    As a result of the August 25, 2011 Attack and SPC Dietrich's injuries and death, Plaintiff Paul Dietrich has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Dietrich's society, companionship, and counsel.

695.    As a result of the August 25, 2011 Attack, SPC Dietrich was injured in his person and/or property.  Plaintiff Paul Dietrich is a survivor and/or heir of SPC Dietrich and is entitled to recover for the damages SPC Dietrich sustained.

**The September 10, 2011 Small Arms Attack in Paktika (Daniel Quintana Family)**

696.    On September 10, 2011, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Paktika Province, Afghanistan (the "September 10, 2011 Attack").  The September 10, 2011 Attack constituted an extrajudicial killing.

697.    **Staff Sergeant Daniel Quintana** served in Afghanistan as a member of the U.S. Army.  SSG Quintana was injured in the September 10, 2011 Attack.  SSG Quintana died on September 10, 2011 as a result of injuries sustained during the September 10, 2011 Attack.  SSG Quintana was a U.S. national at the time of the attack and his death.

698.    Plaintiff Daniel Quintana is the father of SSG Quintana and a U.S. national.

699.    As a result of the September 10, 2011 Attack and SSG Quintana's injuries and death, Plaintiff Daniel Quintana has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Quintana's society, companionship, and counsel.

700.    As a result of the September 10, 2011 Attack, SSG Quintana was injured in his person and/or property.  Plaintiff Daniel Quintana is a survivor and/or heir of SSG Quintana and is entitled to recover for the damages SSG Quintana sustained.

**The September 17, 2011 Complex Attack in Nuristan (Donald Bleyl)**

701.    On September 17, 2011, al-Qaeda (a designated FTO at the time of the attack) and the Taliban, operating together as a joint cell, committed a complex ambush style attack involving a grenade launcher in Nuristan Province, Afghanistan (the "September 17, 2011 Attack").  The September 17, 2011 Attack constituted an extrajudicial killing.

702.    **Sergeant First Class Donald Bleyl** served in Afghanistan as a member of the U.S. Army.  SFC Bleyl was injured in the September 17, 2011 Attack.  The attack severely wounded SFC Bleyl, who suffers from shrapnel in his left arm, hearing loss, tinnitus, migraines, traumatic brain injury, post-traumatic stress disorder, and the total loss of the ACL in his left knee.

703.    Plaintiff SFC Bleyl was a U.S. national at the time of the attack and remains one today.

704.    As a result of the September 17, 2011 Attack and SFC Bleyl's injuries, SFC Bleyl has experienced severe mental anguish and physical and emotional pain and suffering.

**The September 18, 2011 IED Attack in Kandahar (Kevin Trimble Family)**

705.    On September 18, 2011, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "September 18, 2011 Attack"). The September 18, 2011 Attack constituted an extrajudicial killing.

706.    **Private First Class Kevin Trimble** served in Afghanistan as a member of the U.S. Army. PFC Trimble was injured in the September 18, 2011 Attack. The attack severely wounded PFC Trimble, who lost both legs above the knee, lost his left arm above the elbow, and suffers from post-traumatic stress disorder and partial hearing loss. As a result of the September 18, 2011 Attack and his injuries, PFC Trimble has experienced severe physical and emotional pain and suffering. PFC Trimble was U.S. national at the time of the attack and remains one today.

707.    Plaintiff Anthony Trimble is the brother of PFC Trimble and a U.S. national.

708.    Plaintiff Deborah Trimble is the sister of PFC Trimble and a U.S. national.

709.    As a result of the September 18, 2011 Attack and PFC Trimble's injuries, each member of the Trimble Family has experienced severe mental anguish, emotional pain, and suffering.

**The September 21, 2011 Small Arms Attack in Kandahar (Robert Dyas Jr. Family)**

710.    On September 21, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "September 21, 2011 Attack"). The September 21, 2011 Attack constituted an extrajudicial killing.

711.    **Specialist Robert Dyas Jr.** served in Afghanistan as a member of the U.S. Army. SPC Dyas was injured in the September 21, 2011 Attack.  SPC Dyas died on September 21, 2011 as a result of injuries sustained during the September 21, 2011 Attack.  SPC Dyas was a U.S. national at the time of the attack and his death.

712.    Plaintiff Melissa Nowland is the mother of SPC Dyas and a U.S. national.

713.    Plaintiff Victoria Lewis is the sister of SPC Dyas and a U.S. national.

714.    Plaintiff Jerry Nowland Sr. is the stepfather of SPC Dyas and a U.S. national.  Mr. Nowland lived in the same household as SPC Dyas for a substantial period of time and considered SPC Dyas the functional equivalent of a biological son.

715.    As a result of the September 21, 2011 Attack and SPC Dyas's injuries and death, each member of the Dyas Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Dyas's society, companionship, and counsel.

716.    As a result of the September 21, 2011 Attack, SPC Dyas was injured in his person and/or property.  The Plaintiff members of the Dyas Family are the survivors and/or heirs of SPC Dyas and are entitled to recover for the damages SPC Dyas sustained.

**The September 25, 2011 IED Attack in Laghman (Francisco Briseño-Alvarez Jr. Family)**

717.    On September 25, 2011, the Taliban committed an IED attack in Laghman Province, Afghanistan (the "September 25, 2011 Attack").  The September 25, 2011 Attack constituted an extrajudicial killing.

718.    **Specialist Francisco Briseño-Alvarez Jr.** served in Afghanistan as a member of the U.S. Army National Guard.  SPC Briseño-Alvarez was injured in the September 25, 2011 Attack.  SPC Briseño-Alvarez died on September 25, 2011 as a result of injuries sustained during

the September 25, 2011 Attack.  SPC Briseño-Alvarez was a member of the armed forces at the time of the attack and his death.

719.    Plaintiff Diana Briseño is the sister of SPC Briseño-Alvarez and a U.S. national.

720.    As a result of the September 25, 2011 Attack and SPC Briseño-Alvarez's injuries and death, Plaintiff Diana Briseño has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Briseño-Alvarez's society, companionship, and counsel.

721.    As a result of the September 25, 2011 Attack, SPC Briseño-Alvarez was injured in his person and/or property.  Plaintiff Diana Briseño is a survivor and/or heir of SPC Briseño-Alvarez and is entitled to recover for the damages SPC Briseño-Alvarez sustained.

**The October 29, 2011 Suicide Attack in Kabul (James Darrough Family)**

722.    On October 29, 2011, the Taliban (including its Haqqani Network), and al-Qaeda (a designated FTO at the time of the attack) acting together in the Kabul Attack Network committed a suicide bombing attack in Kabul Province, Afghanistan (the "October 29, 2011 Attack").  The October 29, 2011 Attack constituted an extrajudicial killing.

723.    **Sergeant James Darrough** served in Afghanistan as a member of the U.S. Army. SGT Darrough was injured in the October 29, 2011 Attack.  SGT Darrough died on October 29, 2011 as a result of injuries sustained during the October 29, 2011 Attack.  SGT Darrough was a U.S. national at the time of the attack and his death.

724.    Plaintiff Isaura Darrough is the widow of SGT Darrough and a U.S. national.

725.    Plaintiff Justin Darrough is the son of SGT Darrough and a U.S. national.

726.    Plaintiff Jared Darrough is the son of SGT Darrough and a U.S. national.

727.    Plaintiff Julianna Darrough is the daughter of SGT Darrough and a U.S. national.

728.    Plaintiff Jenna Falbe is the daughter of SGT Darrough and a U.S. national.

729.    As a result of the October 29, 2011 Attack and SGT Darrough's injuries and death, each member of the Darrough Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Darrough's society, companionship, and counsel.

730.    As a result of the October 29, 2011 Attack, SGT Darrough was injured in his person and/or property.  The Plaintiff members of the Darrough Family are the survivors and/or heirs of SGT Darrough and are entitled to recover for the damages SGT Darrough sustained.

**The November 21, 2011 Small Arms Attack in Kandahar (Jackie Diener II Family)**

731.    On November 21, 2011, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "November 21, 2011 Attack").  The November 21, 2011 Attack constituted an extrajudicial killing.

732.    **Private First Class Jackie Diener II** served in Afghanistan as a member of the U.S. Army.  PFC Diener was injured in the November 21, 2011 Attack.  PFC Diener died on November 21, 2011 as a result of injuries sustained during the November 21, 2011 Attack.  PFC Diener was a U.S. national at the time of the attack and his death.

733.    Plaintiff Valerie Diener is the mother of PFC Diener and a U.S. national.

734.    As a result of the November 21, 2011 Attack and PFC Diener's injuries and death, Plaintiff Valerie Diener has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Diener's society, companionship, and counsel.

735.    As a result of the November 21, 2011 Attack, PFC Diener was injured in his person and/or property.  Plaintiff Valerie Diener is a survivor and/or heir of PFC Diener and is entitled to recover for the damages PFC Diener sustained.

**The December 13, 2011 Small Arms Attack in Logar (Jalfred Vaquerano Family)**

736.    On December 13, 2011, the Taliban (including its Haqqani Network) committed a small arms attack in Logar Province, Afghanistan (the "December 13, 2011 Attack").  The December 13, 2011 Attack constituted an extrajudicial killing.

737.    **Private First Class Jalfred Vaquerano** served in Afghanistan as a member of the U.S. Army.  PFC Vaquerano was injured in the December 13, 2011 Attack.  PFC Vaquerano died on December 13, 2011 as a result of injuries sustained during the December 13, 2011 Attack.  PFC Vaquerano was a U.S. national at the time of the attack and his death.

738.    Plaintiff Carlos Vaquerano is the father of PFC Vaquerano and a U.S. national.

739.    As a result of the December 13, 2011 Attack and PFC Vaquerano's injuries and death, Plaintiff Carlos Vaquerano has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC Vaquerano's society, companionship, and counsel.

740.    As a result of the December 13, 2011 Attack, PFC Vaquerano was injured in his person and/or property.  Plaintiff Carlos Vaquerano is a survivor and/or heir of PFC Vaquerano and is entitled to recover for the damages PFC Vaquerano sustained.

**The January 9, 2012 Small Arms Attack in Balkh (Benjamin Wise Family)**

741.    On January 9, 2012, the Taliban committed a small arms attack in Balkh Province, Afghanistan (the "January 9, 2012 Attack").  The January 9, 2012 Attack constituted an extrajudicial killing.

742.    **Sergeant First Class Benjamin Wise** served in Afghanistan as a member of the U.S. Army.  SFC Wise was injured in the January 9, 2012 Attack.  SFC Wise died on January 15, 2012 as a result of injuries sustained during the January 9, 2012 Attack.  SFC Wise was a U.S. national at the time of the attack and his death.

743.    Plaintiff Traci Wise is the widow of SFC Wise and a U.S. national.

744.    As a result of the January 9, 2012 Attack and SFC Wise's injuries and death, Plaintiff Traci Wise has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Wise's society, companionship, and counsel.

745.    As a result of the January 9, 2012 Attack, SFC Wise was injured in his person and/or property.  Plaintiff Traci Wise is a survivor and/or heir of SFC Wise and is entitled to recover for the damages SFC Wise sustained.

**The April 30, 2012 Small Arms Attack in Kandahar (Nicholas Dickhut Family)**

746.    On April 30, 2012, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "April 30, 2012 Attack").  The April 30, 2012 Attack constituted an extrajudicial killing.

747.    **Sergeant Nicholas Dickhut** served in Afghanistan as a member of the U.S. Army.  SGT Dickhut was injured in the April 30, 2012 Attack.  SGT Dickhut died on April 30, 2012 as a result of injuries sustained during the April 30, 2012 Attack.  SGT Dickhut was a U.S. national at the time of the attack and his death.

748.    Plaintiff Aliesha Glidden is the widow of SGT Dickhut and a U.S. national.

749.    Plaintiff Jacqueline Carson is the mother of SGT Dickhut and a U.S. national.

750.    Plaintiff Randall Carson is the stepfather of SGT Dickhut and a U.S. national. Mr. Carson lived in the same household as SGT Dickhut for a substantial period of time and considered SGT Dickhut the functional equivalent of a biological son.

751.    As a result of the April 30, 2012 Attack and SGT Dickhut's injuries and death, each member of the Dickhut Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Dickhut's society, companionship, and counsel.

752.    As a result of the April 30, 2012 Attack, SGT Dickhut was injured in his person and/or property.  The Plaintiff members of the Dickhut Family are the survivors and/or heirs of SGT Dickhut and are entitled to recover for the damages SGT Dickhut sustained.

**The May 6, 2012 Insider Attack in Helmand (John Huling Family)**

753.    On May 6, 2012, the Taliban committed an insider attack in Helmand Province, Afghanistan (the "May 6, 2012 Attack").  The May 6, 2012 Attack constituted an extrajudicial killing.

754.    **Sergeant John Huling** served in Afghanistan as a member of the U.S. Marine Corps.  Sgt Huling was injured in the May 6, 2012 Attack.  Sgt Huling died on May 6, 2012 as a result of injuries sustained during the May 6, 2012 Attack.  Sgt Huling was a U.S. national at the time of the attack and his death.

755.    Plaintiff Deborah Scott is the mother of Sgt Huling and a U.S. national.

756.    As a result of the May 6, 2012 Attack and Sgt Huling's injuries and death, Plaintiff Deborah Scott has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt Huling's society, companionship, and counsel.

757.    As a result of the May 6, 2012 Attack, Sgt Huling was injured in his person and/or property.  Plaintiff Deborah Scott is a survivor and/or heir of Sgt Huling and is entitled to recover for the damages Sgt Huling sustained.

**The May 13, 2012 IED Attack in Khost (Richard McNulty III Family)**

758.    On May 13, 2012, the Haqqani Network (a part of the Taliban) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell, committed an IED attack in Khost Province, Afghanistan (the "May 13, 2012 Attack").  The May 13, 2012 Attack constituted an extrajudicial killing.

759.    **Private First Class Richard McNulty III** served in Afghanistan as a member of the U.S. Army.  PFC McNulty was injured in the May 13, 2012 Attack.  PFC McNulty died on May 13, 2012 as a result of injuries sustained during the May 13, 2012 Attack.  PFC McNulty was a U.S. national at the time of the attack and his death.

760.    Plaintiff Hannah McNulty is the widow of PFC McNulty and a U.S. national.

761.    Plaintiff E.M., by and through her next friend Hannah McNulty, is the minor daughter of PFC McNulty.  She is a U.S. national.

762.    As a result of the May 13, 2012 Attack and PFC McNulty's injuries and death, each member of the McNulty Family has experienced severe mental anguish, emotional pain and suffering, and the loss of PFC McNulty's society, companionship, and counsel.

763.    As a result of the May 13, 2012 Attack, PFC McNulty was injured in his person and/or property.  The Plaintiff members of the McNulty Family are the survivors and/or heirs of PFC McNulty and are entitled to recover for the damages PFC McNulty sustained.

**The May 23, 2012 IED Attack in Kandahar (Travis Morgado Family)**

764.    On May 23, 2012, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "May 23, 2012 Attack").  The May 23, 2012 Attack constituted an extrajudicial killing.

765.    **Second Lieutenant Travis Morgado** served in Afghanistan as a member of the U.S. Army.  2LT Morgado was injured in the May 23, 2012 Attack.  2LT Morgado died on May 23, 2012 as a result of injuries sustained during the May 23, 2012 Attack.  2LT Morgado was a U.S. national at the time of the attack and his death.

766.     Plaintiff Nancy Morgado is the stepmother of 2LT Morgado and a U.S. national. Ms. Morgado lived in the same household as 2LT Morgado for a substantial period of time and considered 2LT Morgado the functional equivalent of a biological son.

767.     As a result of the May 23, 2012 Attack and 2LT Morgado's injuries and death, Plaintiff Nancy Morgado has experienced severe mental anguish, emotional pain and suffering, and the loss of 2LT Morgado's society, companionship, and counsel.

768.     As a result of the May 23, 2012 Attack, 2LT Morgado was injured in his person and/or property.  Plaintiff Nancy Morgado is a survivor and/or heir of 2LT Morgado and is entitled to recover for the damages 2LT Morgado sustained.

**The June 18, 2012 Insider Attack in Kandahar (Jarrod Lallier Family)**

769.     On June 18, 2012, the Taliban committed an insider attack in Kandahar Province, Afghanistan (the "June 18, 2012 Attack").  The June 18, 2012 Attack constituted an extrajudicial killing.

770.     **Specialist Jarrod Lallier** served in Afghanistan as a member of the U.S. Army. SPC Lallier was injured in the June 18, 2012 Attack.  SPC Lallier died on June 18, 2012 as a result of injuries sustained during the June 18, 2012 Attack.  SPC Lallier was a U.S. national at the time of the attack and his death.

771.     Plaintiff Kimberly Lallier is the mother of SPC Lallier and a U.S. national.

772.     Plaintiff Gary Lallier is the father of SPC Lallier and a U.S. national.

773.     Plaintiff Jordan Lallier is the brother of SPC Lallier and a U.S. national.

774.     Plaintiff Jessica Watts-Messick is the sister of SPC Lallier and a U.S. national.

775.    As a result of the June 18, 2012 Attack and SPC Lallier's injuries and death, each member of the Lallier Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Lallier's society, companionship, and counsel.

776.    As a result of the June 18, 2012 Attack, SPC Lallier was injured in his person and/or property.  The Plaintiff members of the Lallier Family are the survivors and/or heirs of SPC Lallier and are entitled to recover for the damages SPC Lallier sustained.

**The August 8, 2012 Suicide Attack in Kunar (Kevin Griffin Family)**

777.    On August 8, 2012, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a suicide bombing attack in Kunar Province, Afghanistan (the "August 8, 2012 Attack").  The August 8, 2012 Attack constituted an extrajudicial killing.

778.    **Command Sergeant Major Kevin Griffin** served in Afghanistan as a member of the U.S. Army.  CSM Griffin was injured in the August 8, 2012 Attack.  CSM Griffin died on August 8, 2012 as a result of injuries sustained during the August 8, 2012 Attack.  CSM Griffin was a U.S. national at the time of the attack and his death.

779.    Plaintiff Pamela Griffin is the widow of CSM Griffin and a U.S. national.

780.    Plaintiff Kylie Griffin is the daughter of CSM Griffin and a U.S. national.

781.    Plaintiff Patrick Griffin is the son of CSM Griffin and a U.S. national.

782.    As a result of the August 8, 2012 Attack and CSM Griffin's injuries and death, each member of the Griffin Family has experienced severe mental anguish, emotional pain and suffering, and the loss of CSM Griffin's society, companionship, and counsel.

783.    As a result of the August 8, 2012 Attack, CSM Griffin was injured in his person and/or property. The Plaintiff members of the Griffin Family are the survivors and/or heirs of CSM Griffin and are entitled to recover for the damages CSM Griffin sustained.

**The August 16, 2012 Attack on Helicopter in Kandahar (David Warsen Family)**

784.    On August 16, 2012, the Taliban committed an attack on a helicopter in Kandahar Province, Afghanistan (the "August 16, 2012 Attack"). The August 16, 2012 Attack constituted an extrajudicial killing.

785.    **Special Warfare Operator 2nd Class David Warsen** served in Afghanistan as a member of the U.S. Navy. SO2 Warsen was injured in the August 16, 2012 Attack. SO2 Warsen died on August 16, 2012 as a result of injuries sustained during the August 16, 2012 Attack. SO2 Warsen was a U.S. national at the time of the attack and his death.

786.    Plaintiff David Warsen is the father of SO2 Warsen and a U.S. national.

787.    Plaintiff Aaron Warsen is the brother of SO2 Warsen and a U.S. national.

788.    Plaintiff Ryan Warsen is the brother of SO2 Warsen and a U.S. national.

789.    Plaintiff Kyle Warsen is the brother of SO2 Warsen and a U.S. national.

790.    As a result of the August 16, 2012 Attack and SO2 Warsen's injuries and death, each member of the Warsen Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SO2 Warsen's society, companionship, and counsel.

791.    As a result of the August 16, 2012 Attack, SO2 Warsen was injured in his person and/or property. The Plaintiff members of the Warsen Family are the survivors and/or heirs of SO2 Warsen and are entitled to recover for the damages SO2 Warsen sustained.

**The September 15, 2012 Complex Attack in Helmand (Bradley Atwell Family)**

792.    On September 15, 2012, the Taliban committed a complex attack involving small arms fire and rocket propelled grenades in Helmand Province, Afghanistan (the "September 15, 2012 Attack"). The September 15, 2012 Attack constituted an extrajudicial killing.

793.    **Sergeant Bradley Atwell** served in Afghanistan as a member of the U.S. Marine Corps. Sgt Atwell was injured in the September 15, 2012 Attack. Sgt Atwell died on September 15, 2012 as a result of injuries sustained during the September 15, 2012 Attack. Sgt Atwell was a U.S. national at the time of the attack and his death.

794.    Plaintiff Dustin Atwell is the brother of Sgt Atwell and a U.S. national.

795.    As a result of the September 15, 2012 Attack and Sgt Atwell's injuries and death, Plaintiff Dustin Atwell has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt Atwell's society, companionship, and counsel.

796.    As a result of the September 15, 2012 Attack, Sgt Atwell was injured in his person and/or property. Plaintiff Dustin Atwell is a survivor and/or heir of Sgt Atwell and is entitled to recover for the damages Sgt Atwell sustained.

**The October 13, 2012 Small Arms Attack in Kunduz (Ryan Savard Family)**

797.    On October 13, 2012, the Taliban committed a small arms attack in Kunduz Province, Afghanistan (the "October 13, 2012 Attack"). The October 13, 2012 Attack constituted an extrajudicial killing.

798.    **Sergeant First Class Ryan Savard** served in Afghanistan as a member of the U.S. Army. SFC Savard was injured in the October 13, 2012 Attack. SFC Savard died on October 13, 2012 as a result of injuries sustained during the October 13, 2012 Attack. SFC Savard was a U.S. national at the time of the attack and his death.

799.    Plaintiff Kayla Savard is the widow of SFC Savard and a U.S. national.

800.    Plaintiff Marie Savard is the mother of SFC Savard and a U.S. national.

801.    Plaintiff Garett Savard is the father of SFC Savard and a U.S. national.

802.    As a result of the October 13, 2012 Attack and SFC Savard's injuries and death, each member of the Savard Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Savard's society, companionship, and counsel.

803.    As a result of the October 13, 2012 Attack, SFC Savard was injured in his person and/or property.  The Plaintiff members of the Savard Family are the survivors and/or heirs of SFC Savard and are entitled to recover for the damages SFC Savard sustained.

**The December 24, 2012 Small Arms Attack in Logar (Enrique Mondragon Family)**

804.    On December 24, 2012, the Taliban, including its Haqqani Network (a designated FTO at the time of the attack), committed a small arms attack in Logar Province, Afghanistan (the "December 24, 2012 Attack").  The December 24, 2012 Attack constituted an extrajudicial killing.

805.    **Sergeant Enrique Mondragon** served in Afghanistan as a member of the U.S. Army.  SGT Mondragon was injured in the December 24, 2012 Attack.  SGT Mondragon died on December 24, 2012 as a result of injuries sustained during the December 24, 2012 Attack. SGT Mondragon was a U.S. national at the time of the attack and his death.

806.    Plaintiff Katie Mondragon is the widow of SGT Mondragon and a U.S. national.

807.    Plaintiff B.M., by and through her next friend Katie Mondragon, is the minor daughter of SGT Mondragon.  She is a U.S. national.

808.    As a result of the December 24, 2012 Attack and SGT Mondragon's injuries and death, each member of the Mondragon Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGT Mondragon's society, companionship, and counsel.

809.    As a result of the December 24, 2012 Attack, SGT Mondragon was injured in his person and/or property.  The Plaintiff members of the Mondragon Family are the survivors and/or heirs of SGT Mondragon and are entitled to recover for the damages SGT Mondragon sustained.

**The May 4, 2013 IED Attack in Kandahar (Kevin Cardoza Family)**

810.    On May 4, 2013, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "May 4, 2013 Attack").  The May 4, 2013 Attack constituted an extrajudicial killing.

811.    **Specialist Kevin Cardoza** served in Afghanistan as a member of the U.S. Army. SPC Cardoza was injured in the May 4, 2013 Attack.  SPC Cardoza died on May 4, 2013 as a result of injuries sustained during the May 4, 2013 Attack.  SPC Cardoza was a U.S. national at the time of the attack and his death.

812.    Plaintiff D.C., by and through her next friend Clarissa Martinez, is the minor daughter of SPC Cardoza.  She is a U.S. national.

813.    Plaintiff M.C., by and through her next friend Clarissa Martinez, is the minor daughter of SPC Cardoza.  She is a U.S. national.

814.    As a result of the May 4, 2013 Attack and SPC Cardoza's injuries and death, each member of the Cardoza Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Cardoza's society, companionship, and counsel.

815.    As a result of the May 4, 2013 Attack, SPC Cardoza was injured in his person and/or property.  The Plaintiff members of the Cardoza Family are the survivors and/or heirs of SPC Cardoza and are entitled to recover for the damages SPC Cardoza sustained.

**The July 23, 2013 IED Attack in Wardak (Nickolas Welch Estate)**

816.    On July 23, 2013, the Taliban, including its Haqqani Network (a designated FTO at the time of the attack), committed an IED attack in Wardak Province, Afghanistan (the "July 23, 2013 Attack").  The July 23, 2013 Attack constituted an extrajudicial killing.

817.    **Specialist Nickolas Welch** served in Afghanistan as a member of the U.S. Army. SPC Welch was injured in the July 23, 2013 Attack.  SPC Welch sustained critical injuries as a result of the IED blast to include multiple contusions from the ball bearings (intended for maximum damage), TBI, and two brain shunts causing SPC Welch to be placed on life support. Approximately two weeks later the decision was made to remove SPC Welch from life support.  SPC Welch died on August 6, 2013 as a result of injuries sustained during the July 23, 2013 Attack.  SPC Welch was a U.S. national at the time of the attack and his death.

818.    Barry Welch is the father of SPC Welch and a U.S. national.  He brings claims solely in a representative capacity on behalf of SPC Welch's estate.

819.    As a result of the July 23, 2013 Attack, SPC Welch was injured in his person and/or property.  SPC Welch's estate is entitled to recover for the economic and non-economic damages he sustained.

**The August 12, 2013 IED Attack in Logar (James Wickliff Chacin Estate)**

820.    On August 12, 2013, the Taliban, including its Haqqani Network (a designated FTO at the time of the attack), committed an IED attack in Logar Province, Afghanistan (the "August 12, 2013 Attack").  The August 12, 2013 Attack constituted an extrajudicial killing.

821.    **Specialist James Wickliff Chacin** served in Afghanistan as a member of the U.S. Army.  SPC Wickliff Chacin was injured in the August 12, 2013 Attack.  SPC Wickliff Chacin sustained a right tibia and fibula fracture, a left femur fracture, second degree burns, pelvic fracture, and significant soft tissue damage to both legs.  He died a month and a half later from a rare fungal infection in the hospital after having most of the lower half of his body amputated to try and stop the spread of the fungus and save his life.  SPC Wickliff Chacin died on September 20, 2013 as a result of injuries sustained during the August 12, 2013 Attack.  SPC Wickliff Chacin was a U.S. national at the time of the attack and his death.

822.    Martha Smith is the mother of SPC Wickliff Chacin and a U.S. national.  She brings claims solely in a representative capacity on behalf of SPC Wickliff Chacin's estate.

823.    As a result of the August 12, 2013, SPC Wickliff Chacin was injured in his person and/or property.  SPC Wickliff Chacin's estate is entitled to recover for the economic and non-economic damages he sustained.

**The August 20, 2013 Small Arms Attack in Wardak (George Bannar Jr. Family)**

824.    On August 20, 2013, the Taliban, including its Haqqani Network (a designated FTO at the time of the attack), committed a small arms attack in Wardak Province, Afghanistan (the "August 20, 2013 Attack").  The August 20, 2013 Attack constituted an extrajudicial killing.

825.    **Master Sergeant George Bannar Jr.** served in Afghanistan as a member of the U.S. Army.  MSG Bannar was injured in the August 20, 2013 Attack.  MSG Bannar died on August 20, 2013 as a result of injuries sustained during the August 20, 2013 Attack.  MSG Bannar was a U.S. national at the time of the attack and his death.

826.    Plaintiff Sheila Long is the mother of MSG Bannar and a U.S. national.

827.    As a result of the August 20, 2013 Attack and MSG Bannar's injuries and death, Plaintiff Sheila Long has experienced severe mental anguish, emotional pain and suffering, and the loss of MSG Bannar's society, companionship, and counsel.

828.    As a result of the August 20, 2013 Attack, MSG Bannar was injured in his person and/or property.  Plaintiff Sheila Long is a survivor and/or heir of MSG Bannar and is entitled to recover for the damages MSG Bannar sustained.

**The September 26, 2013 Insider Attack in Paktia (Thomas Baysore Jr. Family)**

829.    On September 26, 2013, the Haqqani Network (a part of the Taliban and a designated FTO at the time of the attack) and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell, committed an insider attack in Paktia Province, Afghanistan (the "September 26, 2013 Attack").  The September 26, 2013 Attack constituted an extrajudicial killing.

830.    **Staff Sergeant Thomas Baysore Jr.** served in Afghanistan as a member of the U.S. Army.  SSG Baysore was injured in the September 26, 2013 Attack.  SSG Baysore died on September 26, 2013 as a result of injuries sustained during the September 26, 2013 Attack.  SSG Baysore was a U.S. national at the time of the attack and his death.

831.    Plaintiff Sandra Hackenberg is the mother of SSG Baysore and a U.S. national.

832.    Plaintiff Jennifer Mabus is the sister of SSG Baysore and a U.S. national.

833.    As a result of the September 26, 2013 Attack and SSG Baysore's injuries and death, each member of the Baysore Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Baysore's society, companionship, and counsel.

834.    As a result of the September 26, 2013 Attack, SSG Baysore was injured in his person and/or property.  The Plaintiff members of the Baysore Family are the survivors and/or heirs of SSG Baysore and are entitled to recover for the damages SSG Baysore sustained.

**The October 5, 2013 IED Attack in Kandahar (Cody Patterson Family)**

835.    On October 5, 2013, the Taliban committed an IED attack in Kandahar Province, Afghanistan (the "October 5, 2013 Attack").  The October 5, 2013 Attack constituted an extrajudicial killing.

836.    **Specialist Cody Patterson** served in Afghanistan as a member of the U.S. Army. SPC Patterson was injured in the October 5, 2013 Attack.  SPC Patterson died on October 5, 2013 as a result of injuries sustained during the October 5, 2013 Attack.  SPC Patterson was a U.S. national at the time of the attack and his death.

837.    Plaintiff Kapriel Wilson is the brother of SPC Patterson and a U.S. national.

838.    Plaintiff Mara Wilson is the sister of SPC Patterson and a U.S. national.

839.    As a result of the October 5, 2013 Attack and SPC Patterson's injuries and death, each member of the Patterson Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Patterson's society, companionship, and counsel.

840.    As a result of the October 5, 2013 Attack, SPC Patterson was injured in his person and/or property.  The Plaintiff members of the Patterson Family are the survivors and/or heirs of SPC Patterson and are entitled to recover for the damages SPC Patterson sustained.

**The January 20, 2014 Small Arms Attack in Kandahar (Edward Balli Family)**

841.    On January 20, 2014, the Taliban committed a small arms attack in Kandahar Province, Afghanistan (the "January 20, 2014 Attack").  The January 20, 2014 Attack constituted an extrajudicial killing.

842.    **Chief Warrant Officer 2 Edward Balli** served in Afghanistan as a member of the U.S. Army.  CW2 Balli was injured in the January 20, 2014 Attack.  CW2 Balli died on January 20, 2014 as a result of injuries sustained during the January 20, 2014 Attack.  CW2 Balli was a U.S. national at the time of the attack and his death.

843.    Plaintiff Michael Donios is the stepson of CW2 Balli and a U.S. national.  Mr. Donios lived in the same household as CW2 Balli for a substantial period of time and considered CW2 Balli the functional equivalent of a biological father.

844.    As a result of the January 20, 2014 Attack and CW2 Balli's injuries and death, Plaintiff Michael Donios has experienced severe mental anguish, emotional pain and suffering, and the loss of CW2 Balli's society, companionship, and counsel.

845.    As a result of the January 20, 2014 Attack, CW2 Balli was injured in his person and/or property.  Plaintiff Michael Donios is a survivor and/or heir of CW2 Balli and is entitled to recover for the damages CW2 Balli sustained.

**The February 10, 2014 Suicide Attack in Kabul (Michael Hughes Family)**

846.    On February 10, 2014, the Kabul Attack Network committed a suicide bombing attack in Kabul Province, Afghanistan (the "February 10, 2014 Attack").  The February 10, 2014 Attack constituted an extrajudicial killing.

847.    **Mr. Michael Hughes** worked in Afghanistan as a civilian government contractor working for DynCorp, International.  Mr. Hughes was injured in the February 10, 2014 Attack.  Mr. Hughes died on February 10, 2014 as a result of injuries sustained during the February 10, 2014 Attack.  Mr. Hughes was a U.S. national at the time of the attack and his death.

848.    Plaintiff Linda Mundale is the mother of Mr. Hughes and a U.S. national.

849.    As a result of the February 10, 2014 Attack and Mr. Hughes's injuries and death, Plaintiff Linda Mundale has experienced severe mental anguish, emotional pain and suffering, and the loss of Mr. Hughes's society, companionship, and counsel.

850.    As a result of the February 10, 2014 Attack, Mr. Hughes was injured in his person and/or property.  Plaintiff Linda Mundale is a survivor and/or heir of Mr. Hughes and is entitled to recover for the damages Mr. Hughes sustained.

**The February 15, 2014 Complex Attack Helmand (Aaron Torian Family)**

851.    On February 15, 2014, the Taliban committed a complex attack involving IED and small arms fire attack in Helmand Province, Afghanistan (the "February 15, 2014 Attack"). The February 15, 2014 Attack constituted an extrajudicial killing.

852.    **Master Sergeant Aaron Torian** served in Afghanistan as a member of the U.S. Marine Corps.  MSgt Torian was injured in the February 15, 2014 Attack.  MSgt Torian died on February 15, 2014 as a result of injuries sustained during the February 15, 2014 Attack.  MSgt Torian was a U.S. national at the time of the attack and his death.

853.    Plaintiff Jurley Pomeroy-Torian is the widow of Sgt Torian and a U.S. national.

854.    Plaintiff Elijah Torian is the son of MSgt Torian and a U.S. national.

855.    Plaintiff A.T., by and through his next friend Jurley Pomeroy-Torian, is the minor son of MSgt Torian.  He is a U.S. national.

856.    Plaintiff L.T., by and through her next friend Jurley Pomeroy-Torian, is the minor daughter of MSgt Torian.  She is a U.S. national.

857.    As a result of the February 15, 2014 Attack and MSgt Torian's injuries and death, each member of the Torian Family has experienced severe mental anguish, emotional pain and suffering, and the loss of MSgt Torian's society, companionship, and counsel.

858.    As a result of the February 15, 2014 Attack, MSgt Torian was injured in his person and/or property.  The Plaintiff members of the Torian Family are the survivors and/or heirs of MSgt Torian and are entitled to recover for the damages MSgt Torian sustained.

**The April 12, 2014 Small Arms Attack in Logar (Kerry Danyluk Family)**

859.    On April 12, 2014, the Taliban, including its Haqqani Network (a designated FTO at the time of the attack), committed a small arms attack in Logar Province, Afghanistan (the "April 12, 2014 Attack").  The April 12, 2014 Attack constituted an extrajudicial killing.

860.    **Specialist Kerry Danyluk** served in Afghanistan as a member of the U.S. Army. SPC Danyluk was injured in the April 12, 2014 Attack.  SPC Danyluk died on April 15, 2014 as a result of injuries sustained during the April 12, 2014 Attack.  SPC Danyluk was a U.S. national at the time of the attack and his death.

861.    Plaintiff Diane Danyluk is the mother of SPC Danyluk and a U.S. national.

862.    As a result of the April 12, 2014 Attack and SPC Danyluk's injuries and death, Plaintiff Diane Danyluk has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Danyluk's society, companionship, and counsel.

863.    As a result of the April 12, 2014 Attack, SPC Danyluk was injured in his person and/or property.  Plaintiff Diane Danyluk is a survivor and/or heir of SPC Danyluk and is entitled to recover for the damages SPC Danyluk sustained.

**The June 2, 2014 Small Arms Attack in Nangarhar (Jason Jones Family)**

864.    On June 2, 2014, the Taliban and al-Qaeda (a designated FTO at the time of the attack) acting together in a joint al-Qaeda-Taliban cell committed a small arms attack in Nangarhar Province, Afghanistan (the "June 2, 2014 Attack").  The June 2, 2014 Attack constituted an extrajudicial killing.

865.    **Captain Jason Jones** served in Afghanistan as a member of the U.S. Army.  CPT Jones was injured in the June 2, 2014 Attack.  CPT Jones died on June 2, 2014 as a result of injuries sustained during the June 2, 2014 Attack.  CPT Jones was a U.S. national at the time of the attack and his death.

866.    Plaintiff Joseph Jones Jr. is the father of CPT Jones and a U.S. national.

867.    As a result of the June 2, 2014 Attack and CPT Jones's injuries and death, Plaintiff Joseph Jones Jr. has experienced severe mental anguish, emotional pain and suffering, and the loss of CPT Jones's society, companionship, and counsel.

868.    As a result of the June 2, 2014 Attack, CPT Jones was injured in his person and/or property.  Plaintiff Joseph Jones Jr. is a survivor and/or heir of CPT Jones and is entitled to recover for the damages CPT Jones sustained.

**The August 22, 2015 Suicide Attack in Kabul (Corey Dodge Family)**

869.    On August 22, 2015, the Kabul Attack Network committed a suicide bombing attack in Kabul Province, Afghanistan (the "August 22, 2015 Attack").  The August 22, 2015 Attack constituted an extrajudicial killing.

870.    **Mr. Corey Dodge** worked in Afghanistan as a civilian government contractor working for DynCorp Free Zone.  Mr. Dodge was injured in the August 22, 2015 Attack.  Mr. Dodge died on August 22, 2015 as a result of injuries sustained during the August 22, 2015 Attack.  Mr. Dodge was a U.S. national at the time of the attack and his death.

871.    Plaintiff Samantha Ulrich is the daughter of Mr. Dodge and a U.S. national.

872.    Plaintiff Letha Dodge is the mother of Mr. Dodge and a U.S. national.

873.    Plaintiff Ronnie Dodge is the father of Mr. Dodge and a U.S. national.

874.    Plaintiff Tammy Bowden is the sister of Mr. Dodge and a U.S. national.

875.    Plaintiff Hollie Towle is the sister of Mr. Dodge and a U.S. national.

876.    Plaintiff Ronnie Dodge Jr. is the brother of Mr. Dodge and a U.S. national.

877.    Plaintiff Connor Larson is the stepson of Mr. Dodge and a U.S. national.  Mr. Larson lived in the same household as Mr. Dodge for a substantial period of time and considered Mr. Dodge the functional equivalent of a biological father.

878.    As a result of the August 22, 2015 Attack, Mr. Dodge was injured in his person and/or property.  The Plaintiff members of the Dodge Family are the survivors and/or heirs of Mr. Dodge and are entitled to recover for the damages Mr. Dodge sustained.

**The December 21, 2015 Suicide Attack in Parwan (Joseph Lemm Family)**

879.    On December 21, 2015, the Taliban committed a suicide bombing attack in Parwan Province, Afghanistan (the "December 21, 2015 Attack").  The December 21, 2015 Attack constituted an extrajudicial killing.

880.    **Technical Sergeant Joseph Lemm** served in Afghanistan as a member of the U.S. Air Force.  TSgt Lemm was injured in the December 21, 2015 Attack.  TSgt Lemm died on December 21, 2015 as a result of injuries sustained during the December 21, 2015 Attack.  TSgt Lemm was a U.S. national at the time of the attack and his death.

881.    Plaintiff Shirley Lemm is the mother of TSgt Lemm and a U.S. national.

882.    As a result of the December 21, 2015 Attack and TSgt Lemm's injuries and death, Plaintiff Shirley Lemm has experienced severe mental anguish, emotional pain and suffering, and the loss of TSgt Lemm's society, companionship, and counsel.

883.    As a result of the December 21, 2015 Attack, TSgt Lemm was injured in his person and/or property.  Plaintiff Shirley Lemm is a survivor and/or heir of TSgt Lemm and is entitled to recover for the damages TSgt Lemm sustained.

**The August 23, 2016 IED Attack in Helmand (Matthew Thompson Family)**

884.   On August 23, 2016, the Taliban committed an IED attack in Helmand Province, Afghanistan (the "August 23, 2016 Attack").  The August 23, 2016 Attack constituted an extrajudicial killing.

885.   **Staff Sergeant Matthew Thompson** worked in Afghanistan as a member of the U.S. Army.  SSG Thompson was injured in the August 23, 2016 Attack.  SSG Thompson died on August 23, 2016 as a result of injuries sustained during the August 23, 2016 Attack.  SSG Thompson was a U.S. national at the time of the attack and his death.

886.   Plaintiff Rachel Thompson is the widow of SSG Thompson and a U.S. national.

887.   As a result of the August 23, 2016 Attack and SSG Thompson's injuries and death, Plaintiff Rachel Thompson has experienced severe mental anguish, emotional pain and suffering, and the loss of SSG Thompson's society, companionship, and counsel.

888.   As a result of the August 23, 2016 Attack, SSG Thompson was injured in his person and/or property.  Plaintiff Rachel Thompson is a survivor and/or heir of SSG Thompson and is entitled to recover for the damages SSG Thompson sustained.

**The November 12, 2016 Suicide Attack in Parwan (Allan Brown Family)**

889.   On November 12, 2016, the Taliban committed a suicide bombing attack in Parwan Province, Afghanistan (the "November 12, 2016 Attack").  The November 12, 2016 Attack constituted an extrajudicial killing.

890.   **Sergeant First Class Allan Brown** served in Afghanistan as a member of the U.S. Army.  SFC Brown was injured in the November 12, 2016 Attack.  SFC Brown died on December 6, 2016 as a result of injuries sustained during the November 12, 2016 Attack.  SFC Brown was a U.S. national at the time of the attack and his death.

891.    Plaintiff Marissa Brown is the widow of SFC Brown and a U.S. national.

892.    As a result of the November 12, 2016 Attack and SFC Brown's injuries and death, Plaintiff Marissa Brown has experienced severe mental anguish, emotional pain and suffering, and the loss of SFC Brown's society, companionship, and counsel.

893.    As a result of the November 12, 2016 Attack, SFC Brown was injured in his person and/or property.  Plaintiff Marissa Brown is a survivor and/or heir of SFC Brown and is entitled to recover for the damages SFC Brown sustained.

**The August 2, 2017 Suicide Attack in Kandahar (Christopher Harris Family)**

894.    On August 2, 2017, the Haqqani Network, a designated FTO at the time of the attack and part of the Taliban, committed a suicide IED (vehicle borne) attack in Kandahar Province, Afghanistan (the "August 2, 2017 Attack").  The August 2, 2017 Attack constituted an extrajudicial killing.

895.    **Specialist Christopher Harris** served in Afghanistan as a member of the U.S. Army.  SPC Harris was injured in the August 2, 2017 Attack.  SPC Harris died on August 2, 2017 as a result of injuries sustained during the August 2, 2017 Attack.  SPC Harris was a U.S. national at the time of the attack and his death.

896.    Plaintiff Brittany Harris is the widow of SPC Harris and a U.S. national.

897.    Plaintiff Susan Kolean is the mother of SPC Harris and a U.S. national.

898.    As a result of the August 2, 2017 Attack and SPC Harris's injuries and death, each member of the Harris Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SPC Harris's society, companionship, and counsel.

899.    As a result of the August 2, 2017 Attack, SPC Harris was injured in his person and/or property.  The Plaintiff members of the Harris Family are the survivors and/or heirs of SPC Harris and are entitled to recover for the damages SPC Harris sustained.

**The July 13, 2019 Small Arms Attack in Faryab (James Sartor Family)**

900.    On July 13, 2019, a joint cell comprised of an FTO, al-Qaeda, and the Taliban, as directly assisted by the IRGC, including the Qods Force, combined together to commit a small arms fire attack in Faryab Province, Afghanistan (the "July 13, 2019 Attack").  The July 13, 2019 Attack constituted an extrajudicial killing.

901.    The July 13, 2019 Attack was jointly committed by: (i) an al-Qaeda-Taliban cell; and (ii) the IRGC and its subordinate unit, the Qods Force (both FTOs).  On information and belief, the Haqqani Network participated in the July 13, 2019 Attack on behalf of the Taliban. On information and belief, the joint al-Qaeda-Taliban (Haqqani Network) cell supplied the terrorist who fired the weapon in the July 13, 2019 Attack, and the IRGC and Qods Force provided specific intelligence about American activities in Faryab that facilitated the July 13, 2019 Attack.[159]

---

[159] In 2019, the IRGC and Qods Force were active in Faryab, where this Attack occurred, and operated a broad network of Qods Force terrorists who sought to facilitate the syndicate's expulsion of the United States from Afghanistan as well as the movement of al-Qaeda operatives between Afghanistan/Pakistan and Iraq through the land bridge provided by the IRGC, for which Faryab was a key stop along the way.  Consequently, the IRGC and Qods Force worked closely with al-Qaeda and the Taliban in Faryab throughout 2019.

Plaintiffs believe that the July 13, 2019 Attack bears substantial indicia of an attack that was directly aided by substantial, pre-attack intelligence planning and coordination of a nature consistent with the intelligence information that FTOs could usually only secure in 2019 through terrorists directly supported by a nation-state sponsor of terrorism, e.g., sophisticated intelligence operations involving a range of data sources designed to tracking movements of U.S. personnel.

Plaintiffs believe that the Haqqani Network likely participated in the July 13, 2019 Attack because, *inter alia*, substantial indicia of nation-state intelligence support behind the July 13, 2019 Attack also suggests that the Taliban's participation in the Attack would have most likely included, in substantial part, the Haqqani Network because the Haqqani Network was the

902.  **Sergeant Major James Sartor** served in Afghanistan as a member of the U.S. Army.  SGM Sartor was injured in the July 13, 2019 Attack.  SGM Sartor died on July 13, 2019 as a result of injuries sustained during the July 13, 2019 Attack.  SGM Sartor was a U.S. national at the time of the attack and his death.

903.  Plaintiff Deanna Sartor is the widow of SGM Sartor and a U.S. national.

904.  Plaintiff G.S., by and through his next friend Deanna Sartor, is the minor son of SGM Sartor.  He is a U.S. national.

905.  Plaintiff G.S., by and through her next friend Deanna Sartor, is the minor daughter of SGM Sartor.  She is a U.S. national.

906.  Plaintiff Stryder Sartor is the son of SGM Sartor and a U.S. national.

907.  Plaintiff Mary Pryor-Patterson is the mother of SGM Sartor and a U.S. national.

908.  Plaintiff James Sartor is the father of SGM Sartor and a U.S. national.

909.  Plaintiff Crista Brooner is the sister of SGM Sartor and a U.S. national.

910.  Plaintiff Shae Sartor is the half sister of SGM Sartor and a U.S. national.

911.  As a result of the July 13, 2019 Attack and SGM Sartor's injuries and death, each member of the Sartor Family has experienced severe mental anguish, emotional pain and suffering, and the loss of SGM Sartor's society, companionship, and counsel.

---

Taliban's most "elite" terrorist force, and the Taliban primarily relied upon the Haqqani Network to represent the Taliban in transnational terrorist attacks involving other groups outside the Taliban.  For example, on December 30, 2009, al-Qaeda and the Taliban, acting jointly with the Pakistani Taliban, conducted a combined suicide attack on Forward Operating Base Chapman that killed seven Americans on December 30, 2009.  With respect to that 2009 attack, the Defense Intelligence Agency determined the Taliban's participation in the attack was comprised of the Haqqani Network's substantial and direct participation in the financial, logistical, and operational details of the attack itself.

912.    As a result of the July 13, 2019 Attack, SGM Sartor was injured in his person and/or property.  The Plaintiff members of the Sartor Family are the survivors and/or heirs of SGM Sartor and are entitled to recover for the damages SGM Sartor sustained.

**The January 31, 2020 Kidnapping Attack in Kabul (Mark Frerichs)**

913.    On January 31, 2020, al-Qaeda and the Taliban, acting through its Haqqani Network (a designated FTO at the time of the attack), jointly committed a kidnapping attack in Kabul Province, Afghanistan (the "Frerichs Attack").  The Frerichs Attack constituted a hostage taking.

914.    **Mr. Mark Frerichs** worked in Afghanistan as a civilian civil engineer.  Mr. Frerichs was injured in the Frerichs Attack.  Al-Qaeda and the Taliban, acting through its Haqqani Network, held Mr. Frerichs hostage from January 31, 2020 until on or about September 19, 2022, when the terrorists released Mr. Frerichs.  The attack severely wounded Mr. Frerichs, who suffers from post-traumatic stress disorder, anxiety, trouble sleeping, cold sweats, and appetite issues.

915.    Plaintiff Mr. Frerichs was a U.S. national at the time of the attack and remains one today.

916.    As a result of the Frerichs Attack and Mr. Frerichs's injuries, Mr. Frerichs has experienced severe mental anguish and emotional pain and suffering.

**The August 26, 2021 Suicide Attack in Kabul (Nicole Gee and Jared Schmitz Families)**

917.    On August 26, 2021, ISIS and the Haqqani Network jointly committed a suicide bombing attack in Kabul Province, Afghanistan for which the Islamic State of Iraq and Syria ("ISIS") played the role of triggerman and the Haqqani Network played the role of logistician (the "August 26, 2021 Attack").  The August 26, 2021 Attack constituted an extrajudicial killing.

918.    The Haqqani Network (an FTO and part of the Taliban) also jointly committed the August 26, 2021 Attack alongside ISIS.  The August 26, 2021 Attack was part of a broader Haqqani Network terrorist attack campaign that specifically intended for the Haqqani Network, acting on the syndicate's behalf, to facilitate ISIS attacks against Americans by freeing ISIS prisoners in Afghanistan so long as they vowed to kill Americans.  As set forth below, the Haqqani Network committed the Attack by releasing the ISIS terrorist from prison, and then redirecting the ISIS terrorist towards Americans in Afghanistan by forcing such person to either join the Taliban or, alternatively, to go out on their own pursuant to a pledge to kill Americans.

919.    Before the August 26, 2021 Attack, the Haqqani Network conducted a wave of terrorist attacks against the Afghan governmental prisons and detention facilities that housed al-Qaeda, Taliban, and ISIS terrorists, which the syndicate described as its "Breaking the Walls" campaign, the stated purpose of which was to unleash anti-American terrorists who were detained at the time by the government of Afghanistan with the support of the United States.

920.    Pursuant to its "Breaking the Walls" campaign, the Haqqani Network attacked an Afghan government detention facility and released all the terrorists who were detained inside. When the Haqqani Network did so, it required that each terrorist pledge to either support the Taliban or, if they were unwilling to do so, at least vow to join up with ISIS or another terrorist group in order to attack their shared enemy in Afghanistan, the Americans.  On information and belief, the Haqqani Network did not permit any peaceful "option C" in this equation—the only acceptable option for fighting age males was to join and fight.

921.    When the Haqqani Network conducted its "Breaking the Walls" campaign, it specifically intended to cause the release of ISIS terrorists who would then target the United States and Afghan governments.

922.    The Haqqani Network helped ISIS through its "Breaking the Walls" campaign notwithstanding certain disagreements between al-Qaeda and the Taliban, on one hand, and ISIS, on the other.  Indeed, the Haqqani Network and ISIS shared many common networks and relationships in Afghanistan, and it was not uncommon for Afghan terrorist operatives or supporters to support both FTOs or for their fighters to collaborate with both FTOs to further the shared cause of killing Americans to drive the United States out of Afghanistan.  Whatever differences may exist between the Taliban and ISIS, such disagreements did not deprive the Haqqani Network of its specific intent to unleash ISIS terrorists on Americans in Afghanistan through its "Breaking the Walls" campaign.  This reflected Sirajuddin Haqqani's long-standing "enemy of my enemy is my friend" pragmatism, combined with his overriding hatred of the American presence in Afghanistan above all else.

923.    Accordingly, the Haqqani Network's attacks during its "Breaking the Walls" campaign were designed to, and did in fact, cause waves of additional terrorist attacks by ISIS, al-Qaeda, and the Taliban by flooding Afghanistan with thousands of hardened, anti-American jihadists just as the United States was beginning to wind down its presence.

924.    The Haqqani Network's "Breaking the Walls" campaign was a direct, but-for cause of the August 26, 2021 Attack because the Haqqani Network freed the individual ISIS terrorist who detonated the bomb during the August 26, 2021 Attack.

925.    The August 26, 2021 Attack was part and parcel of the Haqqani Network's "Breaking the Walls" campaign and was the intended consequence of such campaign.  The August 26, 201 Attack accomplished the objective of the Haqqani Network's "Breaking the Walls" campaign by causing ISIS terrorists who were released by the Taliban to inflict catastrophic terrorist violence upon Americans in Afghanistan.

926.     **Sergeant Nicole Gee** served in Afghanistan as a member of the U.S. Marine Corps.  Sgt Gee was injured in the August 26, 2021 Attack.  Sgt Gee died on August 26, 2021 as a result of injuries sustained during the August 26, 2021 Attack.  Sgt Gee was a U.S. national at the time of the attack and her death.

927.     Plaintiff Richard Herrera is the father of Sgt Gee and a U.S. national.

928.     As a result of the August 26, 2021 Attack and Sgt Gee's injuries and death, Plaintiff Richard Herrera has experienced severe mental anguish, emotional pain and suffering, and the loss of Sgt Gee's society, companionship, and counsel.

929.     As a result of the August 26, 2021 Attack, Sgt Gee was injured in her person and/or property.  Plaintiff Richard Herrera is a survivor and/or heir of Sgt Gee and is entitled to recover for the damages Sgt Gee sustained.

930.     **Lance Corporal Jared Schmitz** served in Afghanistan as a member of the U.S. Marine Corps.  LCpl Schmitz was injured in the August 26, 2021 Attack.  LCpl Schmitz died on August 26, 2021 as a result of injuries sustained during the August 26, 2021 Attack.  LCpl Schmitz was a U.S. national at the time of the attack and his death.

931.     Plaintiff Mark Schmitz is the father of LCpl Schmitz and a U.S. national.

932.     Plaintiff Suzanne Schmitz is the mother of LCpl Schmitz and a U.S. national.

933.     Plaintiff Jaclyn Schmitz is the stepmother of LCpl Schmitz and a U.S. national. Ms. Schmitz lived in the same household as LCpl Schmitz for a substantial period of time and considered LCpl Schmitz the functional equivalent of a biological son.

934.     Plaintiff E.S., by and through her next friend Mark Schmitz, is the minor sister of LCpl Schmitz.  She is a U.S. national.

935.    Plaintiff A.S., by and through her next friend Mark Schmitz, is the minor sister of LCpl Schmitz.  She is a U.S. national.

936.    Plaintiff Cameron Schmitz is the brother of LCpl Schmitz and a U.S. national.

937.    Plaintiff Travis Avenvili-Frkovic is the stepbrother of LCpl Schmitz and a U.S. national.  Mr. Avenvili-Frkovic lived in the same household as LCpl Schmitz for a substantial period of time and considered LCpl Schmitz the functional equivalent of a biological brother.

938.    As a result of the August 26, 2021 Attack and LCpl Schmitz's injuries and death, each member of the Schmitz Family has experienced severe mental anguish, emotional pain and suffering, and the loss of LCpl Schmitz's society, companionship, and counsel.

939.    As a result of the August 26, 2021 Attack, LCpl Schmitz was injured in his person and/or property.  The Plaintiff members of the Schmitz Family are the survivors and/or heirs of LCpl Schmitz and are entitled to recover for the damages LCpl Schmitz sustained.

**The December 18, 2021 Kidnapping Attack in Kabul (Safiullah Rauf Family)**

940.    On December 18, 2021, the Taliban committed an unlawful capture, imprisonment, and torture attack in Kabul Province, Afghanistan (the "December 18, 2021 Attack").  The December 18, 2021 Attack constituted a hostage taking.

941.    Mr. Safiullah Rauf worked as a civilian humanitarian evacuating locals from war-torn Afghanistan.  Mr. Rauf was injured in the December 18, 2021 Attack.  During the December 18, 2021 Attack, Mr. Rauf was held hostage by the Taliban in an eight-foot by eight-foot cell with no blankets, mattress, or sunlight and tortured over the course of 105 days.  As a result of the December 18, 2021 Attack and his torture, Mr. Rauf has experienced severe physical and emotional pain and suffering.

942.    Plaintiff Mr. Rauf was a naturalized national of the United States at the time of the attack and remains one today.

943.    Plaintiff Abdul Rauf is the father of Mr. Rauf and a naturalized U.S. national.

944.    Plaintiff Halima Rauf is the mother of Mr. Rauf and a naturalized U.S. national.

945.    As a result of the December 18, 2021 Attack and Mr. Rauf's injuries, each member of the Rauf Family experienced severe mental anguish and emotional pain and suffering.

## CLAIM FOR RELIEF

## COUNT ONE:  PERSONAL INJURY OR DEATH UNDER 28 U.S.C. § 1605A(c)

946.    Plaintiffs incorporate the allegations above.

947.    Plaintiffs or their family members were killed or injured by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts, and such acts or provision of material support or resources were committed by officials, employees, or agents of Iran while acting within the scope of their office, employment, or agency.

948.    The terrorist attacks that killed or injured Plaintiffs or their family members occurred in Afghanistan.

949.    Iran was designated as a State Sponsor of Terrorism at the time of the terrorist acts that killed or injured Plaintiffs or their family members and remains so today.

950.    At the time of the attacks in which they or their family members were killed or injured, Plaintiffs or their attacked family members were U.S. nationals, members of the U.S. armed forces, and/or employees or contractors of the U.S. government acting within the scope of their employment.

951.    Plaintiffs are currently nationals of the United States, members of the U.S. armed forces, employees or contractors of the United States government acting within the scope of their employment, or the legal representatives of one of the foregoing.

952.    Iran's conduct was criminal, outrageous, extreme, wanton, willful, malicious, and a threat to the public, warranting an award of punitive damages against Iran pursuant to 28 U.S.C. § 1605A(c).

953.    As a result of Defendant's liability under 28 U.S.C. § 1605A(c), Plaintiffs are entitled to recover compensatory damages, including, but not limited to, damages for their severe physical injuries, extreme mental anguish, pain and suffering, economic damages, solatium damages, and punitive damages as determined by the trier of fact.

## PRAYER FOR RELIEF

954.    Plaintiffs request that the Court:

    a.    Enter judgment against Iran finding it liable under 28 U.S.C. § 1605A(c);

    b.    Award Plaintiffs compensatory and punitive damages to the maximum extent permitted by law, 28 U.S.C. § 1605A(c), including but not limited to pain and suffering, economic damages, solatium damages, and punitive damages;

    c.    Award Plaintiffs prejudgment interest;

    d.    Award Plaintiffs costs, expenses, and attorneys' fees; and

    e.    Award Plaintiffs any such further relief the Court deems just and proper.

Dated:  November 30, 2023

Respectfully submitted,

/s/ Joshua D. Branson

Joshua D. Branson (D.C. Bar No. 981623)
Andrew E. Goldsmith (D.C. Bar No. 1007074)
Grace W. Knofczynski (D.C. Bar No. 1500407)
James A. Ruck (D.C. Bar No. 1739309)
Chase H. Robinett (D.C. Bar No. 90008072)
Kellogg, Hansen, Todd,
  Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  (202) 326-7900
Fax:  (202) 326-7999
jbranson@kellogghansen.com
agoldsmith@kellogghansen.com
gknofczynski@kellogghansen.com
jruck@kellogghansen.com
crobinett@kellogghansen.com

Ryan R. Sparacino (D.C. Bar No. 493700)
Sparacino PLLC
1920 L Street, NW, Suite 835
Washington, D.C. 20036
Tel:  (202) 629-3530
ryan.sparacino@sparacinopllc.com

Andrew R. Dunlap, *pro hac vice* forthcoming
Will Rathgeber, *pro hac vice* forthcoming
Esther D. Ness, *pro hac vice* forthcoming
Selendy Gay Elsberg PLLC
1290 Avenue of the Americas
New York, N.Y. 10104
Tel:  (212) 390-9363
adunlap@selendygay.com
wrathgeber@selendygay.com
eness@selendygay.com

*Counsel for Plaintiffs*